L. TRACEE LORENS (SBN 150138) (tracee@lorenslaw.com)
WAYNE ALAN HUGHES (SBN 48038) (waynecloud@aol.com)
**LORENS & ASSOCIATES, APLC**
701 "B" Street, Suite 1400
San Diego, CA 92101
Telephone: 619.239.1233
Facsimile:  619.239.1178

RAUL CADENA (SBN 185787) (rcadena@cadenachurchill.com)
NICOLE R. ROYSDON (SBN 262237) (nroysdon@cadenachurchill.com)
**CADENA CHURCHILL, LLP**
701 "B" Street, Suite 1400
San Diego, CA 92101
Telephone: 619.546.0888
Facsimile:  619.923.3208

Attorneys for Plaintiff and all others similarly situated

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SABRINA LAGUNA, an individual; and ROES 1-50 on behalf of themselves and in a representative capacity for all others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>COVERALL NORTH AMERICA, INC., a Delaware Corporation, ALLIED CAPITAL CORPORATION, a Maryland Corporation, and DOES 1 through 50 inclusive<br><br>Defendants. | Case No.: 09-cv-02131-JM-RBB<br><br>**PLAINTIFF SABRINA LAGUNA'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO ALLIED CAPITAL CORPORATION'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**<br><br>Date: December 11, 2009<br>Time: 1:30 p.m.<br>District Judge: Hon. Jeffrey T. Miller<br>Courtroom: 16 |

## **TABLE OF CONTENTS**

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. STANDARDS ON A RULE 12(b)(6) MOTION TO DISMISS . . . . . . . . . . . . . . . . . . 4

IV. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    A. The Second Amended Complaint Properly States a Claim Against Allied. . . . . . 6

        1. Plaintiff has Demonstrated a Plausible Entitlement to Relief under California Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        2. Plaintiff has Demonstrated a Plausible Entitlement to Relief under Delaware Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    B. Should the Court grant Allied's Motion to Dismiss, Plaintiff is Entitled to Amend Her SAC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

V. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

# TABLE OF AUTHORITIES

**Supreme Court Cases**

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 10, 13

**Federal Cases**

*Balistreri v. Pacifica Police Dept.*,
  901 F.2d 696, 699 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 570 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Branch v. Tunnell*,
  14 F.3d 449, 453-54 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Cahill v. Liberty Mutual Ins. Co.*,
  80 F.3d 336, 337-38 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9

*Galbraith v. County of Santa Clara*,
  307 F.3d 1119 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Knievel v. ESPN*,
  393 F.3d 1068, 1076 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Nat'l Org. for Women v. Scheidler*,
  510 U.S. 249, 256 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Navarro v. Block*,
  250 F.3d 729, 731 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Schreiber Distributing Co. v. Serv-Well Furniture, Inc.*,
  806 F.2d 1393, 1401 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Swartz v. KPMG LLP*,
  476 F.3d 756, 763 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Trans-World International, Inc. v. Jackson Communications, Inc.*,
  972 F. Supp. 1275, 1291 (C.D. Cal. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

1  *Trevino v. Merscorp, Inc.*,
2        583 F. Supp. 2d 521, 528 (D. Del. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
3  *United States v. Redwood City*,
4        640 F.2d 963, 966 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

5  **State Cases**

6  *Associated Vendors, Inc. v. Oakland Meat Co., Inc.*,
7        210 Cal. App. 2d 825, 836-37 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7
8  *Automotriz Del Golfo De Cal. S.A. de C.V. v. Resnick*,
9        47 Ca.2d 792, 796 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
10 *Minifie v. Rowley,*
11       187 Cal. 481, 487 (1921) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
12 *Roman Catholic Archbishop v. Superior Court*,
13       15 Cal. App. 3d 405, 406 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
14 *Sonora Diamond Corp. v. Superior Court*,
15       83 Cal. App. 4th 523, 538-39 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7
16 *Stark v. Coker*,
17       20 Cal. 2d 839, 846 (1942) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

18 **Rules**

19 Federal Rule of Civil Procedure 8(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
20 Federal Rule of Civil Procedure 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 5, 13
21 Federal Rule of Civil Procedure 15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

22 **Statutes**

23 Class Action Fairness Act of 2005 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

24 **Other Authority**

25 *Harding v. Time Warner, Inc.*,
26       2009 U.S. Dist. LEXIS 97615, at *2-3 (S.D. Cal. Oct. 21, 2009) . . . . . . . . . . . . . . . . 12
27 *Harco Nat'l Ins. Co.*,
28       1989 Del. Ch. LEXIS 114, 1989 WL 110537, at *4. . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Plaintiff SABRINA LAGUNA (hereinafter referred to as "Plaintiff") respectfully submits the following Memorandum of Points and Authorities in Opposition to Allied Capital Corporation's Motion to Dismiss the Second Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I. INTRODUCTION

Plaintiff initially filed her wage and hour class action complaint in San Diego County Superior Court on August 8, 2008. In that complaint, Plaintiff exposed the nefarious nature of Coverall North America, Inc.'s (hereinafter referred to as "Coverall") janitorial service system, which is a franchise operation in name only. Coverall professes to assist individuals in establishing "independent businesses" to provide janitorial services to its commercial clients. However, in reality Coverall is running a state-wide ponzi scheme orchestrated to exploit unsophisticated cleaning workers, a majority of whom are Latino and Spanish-speaking, and many of them functionally illiterate.

At the time Plaintiff filed her complaint, the only defendant of which she was aware was Coverall. During Plaintiff's depositions of Coverall's Person(s) Most Qualified (hereinafter referred to as "PMQs"), however, Plaintiff learned that Coverall's executive officers report directly to defendant Allied Capital Corporation (hereinafter referred to as "Allied") and are required to prepare data and reports regarding Coverall's cleaning workers. Based upon this information, on August 20, 2009, Plaintiff filed her Second Amended Complaint (hereinafter referred to as "SAC") in San Diego County Superior Court, alleging that Coverall is an alter ego of Allied. Allied removed this action to this Court on September 29, 2009, based on diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"). Allied's removal to this Court appears to have been motivated by Allied's hope that this Court would dismiss the matter under *Federal Rule of Civil Procedure 12(b)(6)*, based upon the United States Supreme Court's recent decision in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). Unfortunately for Allied, at this stage, Plaintiff is not required to demonstrate that she will prevail on the merits of her claim against Allied; rather, she is only required to demonstrate factual allegations that "plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1950. As such, despite the new standard as articulated in *Iqbal*, Plaintiff has pled sufficient

-1-

factual allegations to state a claim for relief against Allied.

## II. FACTUAL BACKGROUND

Plaintiff brought this action on behalf of herself and in a representative capacity against defendants based on the allegation that Coverall purported to sell to Plaintiff and the putative class cleaning "franchises" for substantial sums of money and promises that they will earn a specified amount of money on a monthly basis. However, Plaintiff and the putative class are not "franchisees," but in fact employees of Coverall, improperly classified as independent contractors. Coverall has intentionally misclassified these workers for the purpose of denying them the various benefits to which they are entitled as employees, including minimum wage, overtime compensation, rest and meal periods, other wage protections, and eligibility for unemployment and workers' compensation. By failing to properly categorize its janitorial cleaning workers as employees, Coverall illegally shifts the burden to the State to provide support services to those who are injured on the job, become disabled, or for some other reason cannot obtain sufficient work through Coverall. Coverall is also able to avoid obtaining group health insurance for its cleaning workers, who are forced to go without health coverage and otherwise seek State assistance.

On May 5, 2009, the Plaintiff in this action appeared before the California Unemployment Insurance Appeals Board (hereinafter referred to as "CUIAB") for a hearing on whether she qualified for disability income, which was determined based on whether or not she was an independent contractor when working for Coverall (the defendant's position herein) or was an employee when she was working for Coverall (the Plaintiff's position in this case). After a full trial on the matter, including opening and closing statements, the presentation of witnesses and evidence, cross examination, rulings on objections to evidence, etc., the Honorable Thomas F. Engel, Administrative Law Judge, found the Plaintiff to be an employee and ruled in her favor. [CUIAB Decision, 6/01/09, **Exhibit "1"** to Plaintiff's Request for Judicial Notice]. On information and belief, the State of California has launched a state-wide audit of Coverall regarding its illegal scheme of misclassifying the cleaning workers as independent contractors rather than employees. The financial impact of such an audit on Coverall could be catastrophic and effectively wipe out the entire company, thereby making it unable to satisfy a judgment in this case.

-2-
**Pltf's Memo Of Points And Authorities In Opposition To Allied's MTD The SAC**
**Case No.: 09-cv-02131-JM-RBB**

After learning in the PMQ depositions that Allied owns 100% of Coverall and is involved in the management of Coverall, Plaintiff propounded Alter Ego Discovery on Coverall in written format. Coverall responded to Plaintiff's discovery requests by objecting to nearly each and every question posed which related to Plaintiff's alter ego inquiry. Yet two of Coverall's executive officers, Dominique March and Laura Lynn Bach, a regional vice president, have testified regarding the ownership of Coverall by Allied, as well as the facts that Allied is involved in the operation of Coverall's cleaning business and organizes retreat-style annual meetings for Coverall's executive team. (*See* Deposition of Dominique March (hereinafter referred to as "March Depo.," pp. 107:13-109:9; Deposition of Laura Lynn Bach (hereinafter referred to as "Bach Depo.," pp. 157:2-158:23). For instance, Ms. Bach, the Regional V.P. of Coverall, testified that she has, on multiple occasions, prepared data and reports regarding Coverall's cleaning workers; reports which were made at the behest of and given to Allied for review. (*See* Bach Depo., pp. 157-158). These facts, coupled with the questions the two witnesses either could not answer or were directed by counsel not to answer during the depositions, provide the basis for Plaintiff's theory of alter-ego liability.

Following the discovery of Allied's role in Coverall, as well as Coverall's refusal to respond to any alter-ego discovery regarding Allied, Plaintiff filed an *ex parte* application in July of 2009 in San Diego County Superior Court for an order allowing for leave to amend Plaintiff's complaint to add Allied as DOE 1. During the hearing on the *ex parte* application, Coverall <u>did not object</u> to Plaintiff bringing Allied into this litigation based on Plaintiff's assertions and evidence. Furthermore, upon considering Plaintiff's assertions, evidence and a lack of objection by Coverall, the Superior Court Judge granted Plaintiff's *ex parte* request and issued an order allowing Plaintiff leave to amend her complaint to add Allied as an additional defendant.

Allied is the parent company of Coverall, owning 100% of Coverall's stock, and exerts control over Coverall's daily operations.[1] Based upon the deposition testimony of Coverall's PMQs, Allied requires that Coverall executive officers report directly to it regarding Coverall's cleaning

---

[1] Plaintiff believes that if she is allowed the opportunity to obtain discovery from Allied, the control exerted by Allied over Coverall's daily operations may alternatively support a co-employer relationship between the two entities as to the cleaning workers.

-3-

workers, as well as prepare data and reports regarding the cleaning workers. (SAC ¶ 52). Essentially, Allied uses Coverall's employees and offices to prepare these reports. In its Motion to Dismiss the Second Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) (hereinafter referred to as "Motion"), Allied attempts to cloud its relationship with Coverall by maintaining that it simply invests in Coverall. Allied supports this contention by requesting that the Court take judicial notice of an Allied Capital Press Release, dated August 24, 2006 (hereinafter referred to as the "Press Release), and by directing the Court to Allied's website. As Plaintiff argues in her Objection to Allied's Request for Judicial Notice, the Court <u>must</u> disregard the Press Release because it is material outside the pleadings and is not proper for judicial notice. Similarly, the Court <u>must</u> also disregard those portions of Allied's Motion in which it references and directs the Court to its website.

Significantly, prior to bringing its Motion to Dismiss, Allied agreed to produce the data and reports regarding the cleaning workers which Coverall's PMQs referenced in their depositions. In fact, Plaintiff's counsel agreed to review the information subject to an "attorneys eyes only" protective order. However, at the last minute, Allied refused to produce the data and reports as agreed and instead demanded Plaintiff dismiss Allied without allowing Plaintiff the opportunity to review those items.

Contrary to Allied's contentions in its Motion, Plaintiff has alleged several facts in her SAC that support Allied's alter ego liability for Coverall's wage and hour violations. As such, Plaintiff has properly stated a claim for relief under *Federal Rule of Civil Procedure 8(a)*.

**III.   <u>STANDARDS ON A RULE 12(b)(6) MOTION TO DISMISS</u>**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Fed. R. Civ. P. 8(a)*. The function of this pleading requirement is to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A motion to dismiss pursuant to *Federal Rule of Civil Procedure 12(b)(6)* tests the legal sufficiency of the claims asserted in the complaint. *Fed. R. Civ. P. 12(b)(6)*; *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001). A court must accept all factual allegations pled in the complaint as true, and must construe them and draw all reasonable inferences

from them in favor of the nonmoving party. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). A court is to presume that a complaint's general allegations include the specific facts necessary to support the allegations. *Nat'l Org. for Women v. Scheidler*, 510 U.S. 249, 256 (1994). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 *citing Twombly*, 550 U.S. at 556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* This standard is not a "heightened fact pleading" requirement; it "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

Generally, the scope of review on Rule 12(b)(6) motion is limited to "allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). A court may consider additional documents under the "incorporation by reference" doctrine as long as "the plaintiff's claim depends on the contents of the document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

Dismissal of a case pursuant to *Federal Rule of Civil Procedure 12(b)(6)* is proper only in "extraordinary" cases. *United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981). A court should grant 12(b)(6) relief only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699.

## IV. ARGUMENT

### A. The Second Amended Complaint Properly States a Claim Against Allied.

In its Motion to Dismiss, Allied focuses primarily on attacking the veracity of Plaintiff's allegations, rather than proving to the Court how Plaintiff's factual allegations do not support a plausible entitlement to relief. Plaintiff's SAC supports the alter-ego theory of liability against Allied with sufficient factual allegations, including the PMQ deposition transcripts that are referenced in the SAC and of which Allied requests the Court take judicial notice. As such, Plaintiff has properly stated a claim against Allied.

#### 1. Plaintiff has Demonstrated a Plausible Entitlement to Relief under California Law.

Under California law, Plaintiff has made a showing that Coverall is the alter ego of Allied. "It is a fundamental rule that '[the] conditions under which the corporate entity may be disregarded, or the corporation be regarded as the *alter ego* of the stockholders, necessarily vary according to the circumstances in each case inasmuch as the doctrine is essentially an equitable one and for that reason is particularly within the province of the trial court. Only general rules may be laid down for guidance.'" *Associated Vendors, Inc. v. Oakland Meat Co., Inc.*, 210 Cal. App. 2d 825, 836-37 (1962) *citing Stark v. Coker*, 20 Cal. 2d 839, 846 (1942). This general rule acts "as a guide in the application of [the alter ego] doctrine ... as follows: The two requirements are (1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." *Associated Vendors*, 210 Cal. App. 2d at 837.

"'Among the factors to be considered in applying the [alter ego] doctrine are commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, and use of one as a mere shell or conduit for the affairs of the other.'" *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 538-39 (2000) *citing Roman Catholic Archbishop v. Superior Court*, 15 Cal. App. 3d 405, 406 (1971). "Other factors which have been described in the case law include inadequate capitalization, disregard of corporate formalities, lack of segregation

-6-

of corporate records, and identical directors and officers." *Sonora Diamond*, 83 Cal. App. 4th at 539. Also important is whether the parent company controls the subsidiary's day-to-day operations. *Associated Vendors*, 210 Cal. App. 2d at 837. A plaintiff need not demonstrate that all of these factors are present in order to make a showing of alter-ego liability; rather, these factors simply guide a court in determining whether it should disregard a corporate entity. *See Sonora Diamond*, 83 Cal. App. 4th at 539.

Allied argues that even if the Court accepts Plaintiff's factual allegations – that Coverall's executive officers report directly to Allied and are required to prepare data and reports regarding Coverall's cleaning workers – as true, which the Court must, they do not provide any basis for alter ego liability. (Motion, pp. 6:22-23). On the contrary, Plaintiff has provided evidence that Allied is involved in Coverall's internal operations such that there is unity of interest and ownership between the two companies.

In her SAC, Plaintiff pleads the following factual allegation in support of her alter-ego theory that Allied is liable for Coverall's wage and hour violations:

> Plaintiff now has an understanding from the deposition testimony of Defendants' executive officers, Dominique March, and Laura Lynn Bach, that they report directly to ALLIED CAPITAL CORPORATION and in fact prepare data and reports regarding Coverall's cleaning workers for ALLIED CAPITAL CORPORATION because they were required to do so by ALLIED CAPITAL CORPORATION. These facts, coupled with the questions the two witnesses would not answer and the discovery requests Defendants refused to answer, along with the clear evidence that Coverall is not adequately capitalized, provides the basis for Plaintiff's alter ego allegations.

(SAC ¶ 52). This factual allegation meets the unity of interest and ownership prong because it shows that Allied was integrally involved in Coverall's internal operations. Moreover, the complaint alleges that Coverall is not adequately capitalized.

In addition to the factual allegation in Plaintiff's SAC, the Court may properly look to the deposition transcript excerpts of Coverall's PMQs because they are referenced in Plaintiff's SAC and Allied attached them to its Motion. *See Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). These excerpts lend further credence to Plaintiff's contention that Allied controls Coverall's internal

operations. With regard to ownership of Coverall, Ms. Bach testified as follows:

Q: Do you know how Coverall Cleaning Concepts is owned? Is it owned by stockholders, or what?

A: There is another owner...

Q: Who is the owner, as you understand?

A: I believe that Allied has a [sic] interest in our company.

(Bach Depo., pp. 157:2-8). As to her understanding that Allied has some interest in Coverall, Ms. Bach testified:

Q: You weren't sure which Allied it was, but that you had an understanding. I'm asking you what that understanding's based upon?

A: From communications with my boss, Patrick Joyce, from recent board meetings that they've had.

(Bach Depo., pp. 157:18-22).

With regard to Coverall's ownership, Dominique March testified as follows:

Q: Do you know who owns Coverall?

A: Yes.

Q: Who?

A: Allied Capital.

Q: And do you know who Allied Capital is?

A: It's a company – it's a company I believe that's based out of Washington, D.C.

Q: And they own 100 percent of Coverall?

A: Correct.

(March Depo., pp.107:13-21).

In addition to the aforementioned factual allegations supporting the unity of interest and ownership prong, Plaintiff has also pled sufficient factual allegations from which the Court can infer that an inequitable result would occur if alter-ego liability is not imposed upon Allied. Paragraphs 18 through 51 of Plaintiff's SAC outline how Coverall engaged in wage and hour violations by misclassifying its "franchisees" as independent contractors and how Coverall made misrepresentations to its "franchisees" regarding the income they could expect to earn, among other

-8-

things. Coverall's executive officers report to Allied directly and prepare data and reports regarding the cleaning workers for Allied. Allied used the same offices and employees as Coverall for the preparation of the data and reports regarding the cleaning workers; reports which were prepared at the behest of Allied. Allied was at a minimum complicit in the misclassification of the cleaning workers. If Plaintiff is prevented from maintaining her theory of alter-ego liability against Allied, an inequitable result will occur in that she will be precluded from pursuing all necessary relief on behalf of herself and the putative class as against all liable parties.

In evaluating Plaintiff's factual allegations, the Court must assume the allegations as true and draw all reasonable inferences from them. *See Cahill*, 80 F.3d at 337-38. Here, in assuming Plaintiff's factual allegations as true, the Court may draw the reasonable inference that, because Allied requires Coverall's executive officers to report to it and prepare data and reports for it regarding Coverall's workers, Allied exerts control over the internal and day-to-day operations of Coverall. Moreover, Allied uses the same offices and employees as does Coverall. In its Motion, Allied attempts to minimize its control over Coverall and its use of Coverall's employees and offices by blatantly misrepresenting to the Court a portion of Ms. Bach's deposition testimony. (Motion, pp. 4:2-4). When Plaintiff's counsel questioned Ms. Bach regarding who asked her to prepare a report for Allied, she testified, "It came from Quan Tran out of global support." Bach Depo, pp. 158:21-23. However, Allied characterized Ms. Bach's testimony as follows: "It came from Quan Tran [Coverall employee] out of global support." (Motion, pp. 4:2-4). Ms. Bach never testified that Quan Tran is a Coverall employee. In fact, Plaintiff has not seen any evidence that Quan Tran is a Coverall employee. Allied's disingenuous attempt to manufacture such evidence by inserting additional language into Ms. Bach's deposition testimony indicates that Allied is trying to cover up the fact that an <u>Allied employee</u>, *not* a Coverall employee, required Ms. Bach and other Coverall executive officers to prepare for Allied data and reports regarding Coverall's cleaning workers.

Furthermore, and as noted earlier, Allied initially promised to produce the reports and data referenced by the Coverall PMQs which it maintains support its position that it is not the alter-ego of Coverall. However, Allied reneged on this agreement. If the reports and data referenced by the Coverall PMQs establish Allied's position, then why was it unwilling to provide those?

Plaintiff is not required to demonstrate that she will prevail on the merits against Allied, nor must she demonstrate that she will probably prevail; rather, she only needs to demonstrate that relief against Allied is plausible. *See Iqbal*, 129 S.Ct. at 1949. As such, it is not necessary for Plaintiff to provide facts as to each and every factor considered by courts in evaluating whether alter-ego liability is appropriate. Plaintiff's SAC demonstrates that Allied controls the internal operations of Coverall by requiring Coverall executive officers to report directly to Allied and prepare reports and data as Allied requires. These are the same reports and data which Allied promised to produce to Plaintiff, but instead filed this Motion to Dismiss. Furthermore, Allied owns 100% of Coverall, the latter of which is not adequately capitalized. Notably, the California Supreme Court has in the past found alter-ego liability at the merits stage with evidence of the same number of factors as Plaintiff has demonstrated at the pleading stage. *See Automotriz Del Golfo De Cal. S.A. de C.V. v. Resnick*, 47 Cal.2d 792, 796 (1957) (finding unity of interest and ownership based on the failure to issue stock and inadequate capitalization); *Minifie v. Rowley*, 187 Cal. 481, 487 (1921)(establishing unity based on ownership of all stock and control of the board of directors).

Plaintiff's factual allegations adequately apprise Allied of the nature of the claims asserted against it such that Allied can prepare an adequate response to the SAC. What Allied attempts to do with its Motion to Dismiss is to discuss at length why it is not liable under an alter-ego theory for Coverall's alleged wage and hour violations. However, it would be procedurally improper for the Court to resolve Allied's assertions regarding its alter-ego liability at the pleading stage. The appropriate time for the Court to consider Allied's assertions is at the summary judgment stage of the proceedings. At that point, Plaintiff will have had a fair opportunity to conduct discovery and review the reports and data Allied initially promised to produce. At this point, Plaintiff's hands are tied as Coverall has refused to respond to alter ego discovery inquiring as to its relationship with Allied and she has not had an opportunity to conduct any discovery as to Allied's alter ego status. It would be a miscarriage of justice to dismiss Allied at this stage without allowing Plaintiff an opportunity to engage in discovery.

/ / /

### 2. **Plaintiff has Demonstrated a Plausible Entitlement to Relief under Delaware Law.**

Under Delaware law, Plaintiff has demonstrated that Coverall is the alter ego of Allied. "[I]n order to state a claim for piercing the corporate veil under an alter ego theory, [a plaintiff] must show (1) that the corporation and its shareholders operated as a single economic entity, and (2) that an overall element of injustice or unfairness is present." *Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 528 (D. Del. 2008). In applying this test, a court is to examine several factors 'which reveal how the corporation operates and the particular defendant's relationship to that operation.'" *Trans-World International, Inc. v. Jackson Communications, Inc.*, 972 F. Supp. 1275, 1291 (C.D. Cal. 1997) *citing Harco Nat'l Ins. Co.*, 1989 Del. Ch. LEXIS 114, 1989 WL 110537, at *4. "These factors include whether the corporation was adequately capitalized for the corporate undertaking; whether the corporation was solvent; whether dividends were paid, corporate records kept, officers and directors functioned properly, and other corporate formalities were observed; whether the dominant shareholder siphoned corporate funds; and whether, in general, the corporation simply functioned as a facade for the dominant shareholder." *Trans-World International*, 972 F. Supp. at 1291. While no factor is generally dispositive in California, "the last factor - whether the corporation served as a facade for the dominant shareholder – is generally dispositive" under Delaware law. *Id.* A dominant shareholder both owns a majority of stock and controls the corporation's general finances and day-to-day operations. *Id.*

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

-11-

The test for alter-ego liability under Delaware law is essentially the same as the test for alter-ego liability under California law. As such, Plaintiff hereby incorporates her discussion regarding Allied's alter-ego liability under California law. One notable difference, however, is that the dominant shareholder factor carries <u>greater weight</u> in Delaware in determining whether alter-ego liability is proper. This difference is beneficial to Plaintiff. As previously stated, Plaintiff presented factual allegations that Allied is the sole owner of Coverall and that Allied controls Coverall's internal operations. Because Plaintiff has shown that Allied is Coverall's dominant shareholder, Plaintiff has sufficiently alleged that Allied and Coverall operate as a single economic entity. Furthermore, Plaintiff has previously discussed the injustice element and how it will be unfair to Plaintiff to preclude her from asserting her alter-ego theory of liability against Allied.

**B. Should the Court grant Allied's Motion to Dismiss, Plaintiff is Entitled to Amend Her SAC.**

Federal Rule of Civil Procedure 15 "mandates that leave to amend 'be freely given when justice so requires.'" *Harding v. Time Warner, Inc.*, 2009 U.S. Dist. LEXIS 97615, at *2-3 (S.D. Cal. Oct. 21, 2009). Leave to amend should be denied only if the court determines that "allegations of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distributing Co. v. Serv-Well Furniture, Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

If the Court determines that Plaintiff has not properly stated a claim for relief and grants Allied's motion, Plaintiff requests that such dismissal be without prejudice and that she be afforded the opportunity to amend her complaint. Plaintiff has already pled factual allegations regarding Allied's alter ego liability. Should the Court find that these factual allegations do not support a plausible entitlement to relief, Plaintiff can demonstrate in an amended complaint additional factual allegations that meet this standard.

/ / /

/ / /

/ / /

/ / /

*/ / /*

## V. **CONCLUSION**

Plaintiff's SAC properly states a claim for relief against Allied based on alter-ego liability. Allied maintains at length that it is Coverall's alter-ego; however, Allied did not provide to Plaintiff, as promised, the reports and data prepared by Coverall's executive officers. The Court should order Allied to produce this discovery because Allied is hiding behind the *Iqbal* decision, hoping that the Court dismisses Plaintiff's claim before she can access these promised documents. Unfortunately for Allied, Plaintiff's SAC contains sufficient factual allegations that Allied and Coverall maintain unity of interest and ownership. Specifically, Allied controls Coverall's internal operations by requiring that Coverall's executive officers report directly to Allied and prepare data and reports regarding Coverall's cleaning workers as required by Allied. Furthermore, Plaintiff's factual allegations give rise to the reasonable inference that an inequitable result will occur if the Court does not permit Plaintiff to pursue her alter-ego theory of liability against Allied. Accordingly, because Plaintiff has sufficiently stated a claim for relief against Allied based on a theory of alter-ego liability, the Court must deny Allied's Rule 12(b)(6) Motion. Should the Court dismiss Plaintiff's SAC, Plaintiff requests that such dismissal be without prejudice and afford Plaintiff leave to amend to cure any deficiencies.

**LORENS & ASSOCIATES, APLC**

**CADENA CHURCHILL, LLP**

Dated: November 25, 2009          By: /s/ Raul Cadena
                                  Raul Cadena (185787)
                                  Attorney for Plaintiff
                                  SABRINA LAGUNA