**DLA PIPER LLP (US)**
JEFFREY A. ROSENFELD (Bar No. 136896)
NANCY NGUYEN SIMS (Bar No. 215869)
1999 Avenue of the Stars, Suite 400
Los Angeles, CA 90067-6023
Tel: 310.595.3000
Fax: 310.595.3300

Attorneys for Defendant
COVERALL NORTH AMERICA, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SABRINA LAGUNA, an individual; and ROES 1-50 on behalf of themselves and in a representative capacity for all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COVERALL NORTH AMERICA, INC., a Delaware corporation; ALLIED CAPITAL CORPORATION, a Maryland corporation; DOES 1-50 inclusive,<br><br>Defendants. | CASE NO. 3:09-CV-02131-JM (BGS)<br><br>*(Assigned to Hon. Jeffrey T. Miller and Hon. Bernard G. Skomal)*<br><br>**DEFENDANT COVERALL NORTH AMERICA, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT**<br><br>*[Filed concurrently with Evidentiary Objections to Declaration of Raul Cadena and Declaration of Nancy Nguyen Sims in Support of Defendant Coverall North America, Inc.'s Opposition to Plaintiff's Motion for Leave to File Third Amended Complaint]*<br><br>Hearing<br>Date: September 17, 2010<br>Time: 1:30 p.m.<br>Judge: Hon. Jeffrey T. Miller<br>Courtroom: 16<br><br>Complaint Filed: August 8, 2008<br>Discovery Cut-Off: Not Set<br>Trial Date: Not Set |

EAST\43240653.2

Defendant Coverall North America, Inc. ("Coverall") hereby submits the following Opposition to Plaintiff Sabrina Laguna's ("Plaintiff") Motion for Leave to File Third Amended Complaint ("TAC") ("Motion for Leave").

## I. INTRODUCTION

Two years after this action was commenced, and having already filed several amended complaints, Plaintiff now seeks leave to file a Third Amended Complaint that will alter significantly the nature of this lawsuit and the parties involved. In this proposed new complaint, which will be her fourth, Plaintiff seeks to add several new defendants (including the CEO of Coverall), two new plaintiffs, a new theory of liability, and two new causes of action. Her request for leave should be summarily denied.

First, while Plaintiff's Motion for Leave contends that the need for an amendment derives from newly discovered facts, the documents and evidence tell a remarkably different story. In fact, her counsel's declaration notwithstanding, the evidence shows that Plaintiff has been in possession and aware of the very information that supposedly necessitates this latest amended complaint *for over a year*. Plaintiff's counsel claims, for example, that he just learned that CNA Holding Corporation wholly owns Coverall. However, that very fact was made known to Plaintiff as early as November 2008, when Coverall produced its franchise disclosure documents for various years. The *first page* of each one of those franchise disclosure documents unequivocally states that CNA "**Holding . . . owns 100% of the stock of Coverall.**" Those same documents identified Ted Elliott – whom Plaintiff claims she now needs to add as a defendant – as an officer of Coverall. Similarly, Plaintiff admits being on notice of the facts surrounding the two new proposed causes of action (failure to reimburse reasonable business expenses under California Labor Code section 2802 and unlawful deductions from wages under Labor Code sections 221 and 223) since the inception of this action. Yet, she offers no excuse whatsoever for her failure to raise those claims earlier in the proceedings.

Plaintiff's attempt to insert new plaintiffs into this case is likewise untimely, as Plaintiff has been on notice of the existence of the new proposed plaintiffs, Teresa Salas and Carlos Acevedo, for over two years. The franchise disclosure documents that Coverall produced in

-1-

1  November 2008 contain a list of all past and current franchisees, including Ms. Salas and Mr.
2  Acevedo. However, despite being aware of their existence, and despite having two years to
3  conduct investigations relating to them, Plaintiff took no action to seek leave to add them as
4  parties until now – the eleventh hour before briefing the Motion for Class Certification.

5  Plaintiff has been aware of every claim she now wishes to assert and every party she now
6  seeks to bring before the Court for over a year. Yet they did absolutely nothing until the eve of
7  class certification briefing. Granting Plaintiff leave to add these new individuals at this late date
8  would be unfair and prejudicial to defendants, as it will deprive them of a fair and adequate
9  opportunity to conduct discovery regarding: (i) these new claims, and (ii) the adequacy and
10 typicality of the claims of these new proposed plaintiffs. This delay rests with Plaintiff, not
11 defendants. If anyone needs to bear the consequences of that delay, it should be Plaintiff, not
12 defendants. Her motion to amend should be denied for this reason alone.

13 Second, even if it had been timely sought, there is no substantive basis for Plaintiff's
14 attempt to add CNA Holding Corporation or Mr. Elliott as defendants. In fact, aside from their
15 bare legal conclusions, the Third Amended Complaint does not set forth a single factual
16 allegation that supports any claim against either of these proposed defendants. This is particularly
17 true with respect to Coverall's Chief Executive Officer. To warrant naming Mr. Elliott as an
18 individual defendant, Plaintiff would need, at minimum, to allege that he engaged in wrongful
19 acts that were outside the scope of his employment. There are no such allegations in the proposed
20 amended complaint. Likewise, while Plaintiff now seeks to assert a variety of fraud-based claims
21 against these proposed defendants, the proposed amendment does not contain a single who, what,
22 when or where that relates to either CNA Holding Corporation or Mr. Elliott.

23 Plaintiff's request to new raise a new legal theory – a joint employer theory – should be
24 denied for this same reason. A prerequisite of any such claim are allegations concerning the level
25 of control exerted by the defendant. Yet Plaintiff has failed to assert any such allegations.

26 For these and the additional reasons set forth below, Plaintiff's Motion for Leave should
27 be denied in its entirety.

28

DLA PIPER LLP (US)
LOS ANGELES

-2-
DEFENDANT COVERALL NORTH AMERICA, INC.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR LEAVE TO AMEND THIRD AMENDED COMPLAINT 3:09-CV-02131-JM (BGS)

## II. STATEMENT OF RELEVANT FACTS

Plaintiff initiated this action on or around August 4, 2008. Relevant to this Motion are two pieces of discovery that Coverall produced to Plaintiff: (1) Coverall's franchise disclosure documents, which explain the nature of its parent and related companies, identify its officers, and list its past and current franchisees, and (2) the list of Coverall franchisees.

Coverall produced documents responsive to Plaintiff's First Set of Request for Production of Documents on November 8, 2008. (Declaration of Nancy Nguyen Sims ("Sims Decl."), Exhibit A, Letter from Yvette Neukian to Plaintiff's Counsel dated November 4, 2008 enclosing Coverall's document production in response to Plaintiff's First Set of Requests for Production of Documents.) Among other things, Coverall produced multiple versions of its franchise disclosure documents for various years. (*See e.g.*, Sims Decl., Exhibit B, Excerpts of Franchise Disclosure Documents produced on November 4, 2008 at CAN 00070-00078 and CNA 01922-01926.) Page *one* of the franchise disclosure document from 2008 clearly states:

> "On February 4, 2005, Acquisition merged with CNA Holding Corporation ("Holding"), a Delaware corporation incorporated on February 4, 2005. **Holding is the surviving corporation, which owns 100% of the stock of Coverall and Coverall Hospitality Services, Inc. ("Hospitality")**, a Delaware Corporation incorporated on December 14, 2004."

(*See id.* at CNA 00074) (emphasis added). This same information is repeated multiple times in the various versions of the franchise disclosure documents produced by Coverall. (*See id.* at CNA 01926, CNA 02193.) The franchise disclosure documents also contain information concerning past and present franchise owners. Carlos Acevedo and Teresa Salas are identified in the list of franchisees attached to a number of the Franchise Disclosure Documents. (*See* Sims Decl., Exhibit C, Excerpts of Franchise Disclosure Documents Produced on November 4, 2008.)

Since that time, Plaintiff has had multiple opportunities to amend her complaint. After the San Diego Superior Court sustained in part Coverall's Demurrer in this action, Plaintiff filed a First Amended Complaint on or around January 9, 2009. (*See* First Amended Complaint, in the Court's files) Plaintiff subsequently sought leave to amend in July 2009 to add Allied as a Doe defendant. (*See* Plaintiff's *Ex Parte* Application for an Order Allowing for Leave to Amend

-3-

DLA PIPER LLP (US)
LOS ANGELES

DEFENDANT COVERALL NORTH AMERICA, INC.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR LEAVE TO AMEND THIRD AMENDED COMPLAINT 3:09-CV-02131-JM (BGS)

1  Complaint dated July 16, 2009.) Then, in August 2009, Plaintiff again sought leave to amend.
2  Coverall stipulated to leave, which resulted in Plaintiff's Second Amended Complaint deemed
3  filed on or around August 20, 2009. (*See* Joint Stipulation and Order Re: Filing of Plaintiff's
4  Second Amended Complaint dated August 20, 2009; *see also* Second Amended Complaint, both
5  in the Court's files.) Despite these multiple amendments, Plaintiff failed to add CNA Holding
6  Corporation ("CNA") or Mr. Elliott as a defendant or Mr. Acevedo and Ms. Salas as new
7  plaintiffs.

8      In August 2010, almost exactly one year since its last amendment, Plaintiff filed the
9  instant Motion for Leave, seeking leave to amend a *third* time, claiming that she only "recently"
10 discovered that CNA was Coverall's parent corporation and the suitability of Mr. Acevedo and
11 Ms. Salas as plaintiffs. (Motion for Leave, p. 4, 6.). In addition, Plaintiff also seeks leave to add
12 a new joint employer/ joint scheme of liability based on the "recently" discovered fact that CNA
13 is Coverall's parent corporation, as well as two causes of action the basis of which Plaintiff
14 admits knowing since the filing of the original complaint in 2008.

15 **III.  APPLICABLE LEGAL STANDARD**

16     Although "leave to amend shall be given freely when justice so requires," (Federal Rule of
17 Civil Procedure 15(a)), "a court **need not** grant leave to amend where the amendment:
18 (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces undue delay in
19 litigation; or (4) is futile." *Scongnamillo v. Credit Suisse First Boston, LLC*, 587 F. Supp. 2d
20 1149, 1151 (N.D. Cal. 2008) (emphasis added). The factors listed above are not of equal weight.
21 *Id.* Prejudice to the opposing party is typically considered the "most important" factor. *Id.*

22     Other facts, however, may also serve as the basis for denial of leave. For instance, a
23 motion for leave to amend may be denied on the <u>sole</u> basis that the amendment appears to be
24 futile. *Deveraturda v. Globe Aviation Securities Services*, 454 F.3d 1043, 1049-50 (9th Cir.
25 2006); *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("[f]utility of amendment can, by
26 itself, justify the denial of a motion for leave to amend"); *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d
27 209, 214 (9th Cir. 1988). An "amendment is futile only if no set of facts can be proved under the
28 amendment to the pleadings that would constitute a valid and sufficient claim or defense."

-4-

DLA PIPER LLP (US)
LOS ANGELES

DEFENDANT COVERALL NORTH AMERICA, INC.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR LEAVE TO AMEND THIRD AMENDED COMPLAINT 3:09-CV-02131-JM (BGS)

*Miller*, 845 F.2d at 214. The proper standard to be applied when determining the legal sufficiency of a proposed amendment is identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6). *Id*; *see also Ashcroft v. Iqbal*, 56 U.S. __, 129 S.Ct. 1937, 1949 (2009) (under Rule 12(b)(6), a sufficient complaint "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (a court does not need to accept a plaintiff's unwarranted conclusions in reviewing a motion to dismiss).

In addition, late amendments asserting new theories, even without bad faith or dilatory gamesmanship, are not viewed favorably when the relevant facts and theories have been known to the party seeking amendment since the inception of the cause of action. *Williams v. UGM Recordings, Inc.*, 281 F. Supp. 2d. 1177, 1186 (C.D. Cal. 2003).

### IV. PLAINTIFF'S MOTION FOR LEAVE TO ADD CNA HOLDING CORPORATION SHOULD BE DENIED

#### A. No Set of Facts Can Establish Liability Against CNA Holding Corporation

Any amendment to add CNA as a defendant in this matter would be futile. Under both California and federal law, an employee who seeks to hold a parent corporation liable for the acts of its subsidiary on the theory that the two corporate entities constitute a single employer faces a "heavy burden." *Maddock v. KB Homes, Inc.*, 631 F. Supp. 2d 1226, 1239 (C.D. Cal. 2007) (*citing Laird v. Capital Cities/ABC, Inc.*, 68 Cal. App. 4th 727, 737-38 (1998) (*declined to follow on other grounds by Reid v. Google, Inc.*, 50 Cal. 4th 512 (2010)). "Corporate entities are presumed to have separate existences, and the corporate form will be disregarded only where the ends of justice require this result. In particular, there is a strong presumption that a parent company is not the employer of its subsidiary's employees." *Id*. In order for CNA to be liable for Coverall's acts, the Court must determine that CNA and Coverall constitute a single entity. *Id*. The test used in determining whether entities are liable as a single entity or an "integrated enterprise" is known as the "integrated enterprise test." *Id*. The same test has been applied in the employment context to determine whether parties are a single entity for purposes of California Labor Code violations. *See, e.g., Maddock v. KB Homes, Inc.*, 631 F. Supp. 2d 1226, 1238 (C.D.

Cal. 2007) (*citing Huse v. Auburn Honda*, No. Civ. S-04-0227, 2005 WL 1398521, *3 (E.D. Cal., June 10, 2005)). Under the test, the following four factors are considered: (1) interrelation of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership or financial control. *Id.* The third factor, centralized control of labor relations is of most importance. *See, e.g., Kenny v. Regis Corp.*, No. C06-07521, 2008 WL 686710, at * 3 (N.D. Cal., Mar. 10, 2008) (to show interrelation of operations, plaintiff must show parent corporation has exercised control to a degree that exceeds the control normally exercised by a parent corporation); *Laird*, 68 Cal. App. 4th at 738. Conversely, common ownership or control (the second and fourth factors) alone is never enough to establish parent liability. *Id.*

Alternatively, to establish liability, Plaintiff must show that CNA and Coverall are "joint employers." Whether two companies may be considered joint employers depends on the following factors: (1) the nature and degree of control over employees; (2) the day-to-day supervision of employees, including discipline; (3) the authority to hire and fire employees and set conditions of employment; (4) the power to set pay rates or payment methods; and (5) control of employee records, including payroll. *Wynn v. Nat'l Broad. Co.*, 234 F. Supp. 2d 1067, 1093 (C.D. Cal 2002); *Jones v. County of Los Angeles*, 99 Cal. App. 4th 1039, 1045-46 (2002). Generally, the day-to-day supervision of employees is the most important factor in the joint employer test. *See, e.g., Huse*, 2005 WL 1398521, at *3.

Plaintiff has failed to sufficiently allege **any** of the elements required for either the integrated enterprise or the joint employer test. The TAC does not and, indeed, could not truthfully contain any allegations that would address the two most important factors of the integrated enterprise test – interrelation of operations and centralized labor relations. Plaintiff has not alleged any interrelatedness of operations, nor could she. At best, Plaintiff could show that CNA is Coverall's parent company, which is insufficient to confer liability. *See Laird*, 68. Cal. App. 4th at 739 (interrelation of operations prong not satisfied where plaintiff failed to show that defendant parent corporation exercised greater control over the subsidiary's operations than that which a parent would normally exercise over its subsidiary). Similarly, Plaintiff has failed to allege that the two entities shared any centralized control of labor relations. *See generally* TAC.

-6-

DLA PIPER LLP (US)
LOS ANGELES

DEFENDANT COVERALL NORTH AMERICA, INC.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR LEAVE TO AMEND THIRD AMENDED COMPLAINT 3:09-CV-02131-JM (BGS)

Nor are there any allegations that support any of the required elements of the joint enterprise test. In particular, the TAC is devoid of any allegations that CNA was somehow involved in the day-to-day operations of Coverall or the daily supervision of its operations, including its employees and franchisees. *See Maddock*, 631 F. Supp. 2d at 1234-35 (no "joint employer" relationship between parent and subsidiary despite parent's maintenance of employee record database, use of shared payroll services, and distribution of training materials and guidelines, because parent did not supervise or control subsidiary's employees' daily work). Likewise, there is no contention that CNA had the authority to control, supervise, hire, fire, pay or keep Coverall's employment records. *See id.* As explained previously, CNA is a holding company. The mere fact CNA wholly owns Coverall is not enough as a matter of law to find CNA liable for Coverall's alleged Labor Code violations or any other allegations in the TAC. *See, e.g., Laird*, 68 Cal. App. 4th at 738. Plaintiff's reasoning, if taken to its logical conclusion, would render every parent company liable for the acts of its subsidiaries and permit plaintiffs in every case to add parent companies as defendants to lawsuits. That is not the law. *See, e.g., Maddock*, 631 F. Supp. 2d at 1239. Such a result is absurd and would frustrate the policy and presumption of corporate separateness.

### B. Plaintiff Has Been On Notice Since November 2008 That CNA Holding Corporation Is the Parent Company of Coverall

The Court should still further deny Plaintiff's Motion for Leave because the amendment sought is unduly dilatory. In evaluating "undue delay," the Court also inquires "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *Amerisourcebergen Corp., Dialysist West, Inc.*, 465 F. 3d 946, 953 (9th Cir. 2006) (emphasis added). In her Motion for Leave, Plaintiff alleges that Coverall's counsel told Plaintiff's counsel sometime in late July, *for the first time*, that Coverall was wholly owned by CNA. (Motion for Leave, p. 4.) This contention is false. For almost two years, Plaintiff has been in possession of documents identifying CNA and disclosing its relationship to Coverall. There is no excuse for Plaintiff's delay in seeking to add CNA. (Sims Decl., Exhibit A.) *See Americoursebergen Corp.*, 465 F.3d at 955 (stating that an eight month delay between the time of obtaining a relevant fact and seeking leave to amend is unreasonable). Plaintiff either is

-7-

DLA PIPER LLP (US)
LOS ANGELES

DEFENDANT COVERALL NORTH AMERICA, INC.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR LEAVE TO AMEND THIRD AMENDED COMPLAINT 3:09-CV-02131-JM (BGS)

attempting to game the system by adding a known defendant late in the litigation, or she has simply failed to review the franchise disclosure documents produced years ago in this litigation which clearly disclose that CNA is the parent corporation of Coverall. (*See, e.g.,* Sims Decl., Exhibit B.) Under either scenario, the Court should deny Plaintiff's Motion for Leave to add CNA as unduly dilatory.

## V. PLAINTIFF'S MOTION FOR LEAVE TO ADD TED ELLIOTT SHOULD BE DENIED

As with CNA, Plaintiff cannot allege (and has not alleged) any set of facts that would support holding Ted Elliott liable for anything. Thus, any amendment adding Mr. Elliott as an individual defendant should be denied as futile. As a preliminary matter, it is important to note that the TAC contains no allegations whatsoever about any specific wrongful acts by Mr. Elliott. The closest Plaintiff gets to identifying specific wrongdoing by Mr. Elliott is when she alleges that he:

> was intimately involved in the day-to-day decisions at Coverall, which included the decision leading to the misclassification of its employees as independent contractors and the decision to allow "churning," i.e., the sale of alleged "franchises" when there was insufficient business with which to provide the alleged "franchisees" as they were promised in the franchise agreements.

(TAC ¶ 59.)

As discussed herein, these conclusory allegations fall woefully short of the details required to state a claim against Mr. Elliott. *See Ashcroft*, 56 U.S. __, 129 S.Ct. at 1949 (plaintiff must state more than mere conclusory allegations in order to comply with Rule 12 pleading requirements).

With respect to misclassification claims, a basic premise under the California Labor Code is that one must be an employer in order to be liable for any alleged wage and hour violations. *See, e.g., Martinez v. Combs*, 49 Cal. 4th 35, 49 (2010). The California Supreme Court in *Martinez v. Combs* changed the landscape of California labor law by holding that applicable wage orders of the Industrial Welfare Commission ("IWC"), not the common law, defines the employment relationship and thus, who may be liable in actions to recover unpaid wages. The *Martinez* Court clearly stated that the IWC's definition of employer "does not impose liability on

-8-

DLA PIPER LLP (US)
LOS ANGELES

DEFENDANT COVERALL NORTH AMERICA, INC.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR LEAVE TO AMEND THIRD AMENDED COMPLAINT 3:09-CV-02131-JM (BGS)

individual corporate agents acting within the scope of their agency." *Id.* at 66 (finding no individual liability for a produce manager who allegedly exercised personal control over plaintiffs' wages and hours by telling plaintiffs to go back to work because there is no liability for corporate agents acting within the scope of their employment). Here, Plaintiff has not and cannot allege any facts that indicate Mr. Elliott was acting outside the scope of his agency as CEO. Plaintiff merely alleges that he was "intimately involved in the day-to-day control and decision-making at Coverall"—an allegation that would likely apply to every CEO of every corporation in the country. (Motion for Leave, p. 2.) Absent some allegation that Mr. Elliott's conduct was improper and outside the scope of his employment (and the TAC can be searched in vain for any such claim), the mere fact that Mr. Elliot performed his duties as CEO does not open Mr. Elliott up to personal liability. *See, e.g., Martinez*, 49 Cal. 4th at 66.

Plaintiff's tort and Business & Professions Code section 17200 claims similarly fail. It is well-established that corporate officers and directors are not merely liable by virtue of their office for fraud or other tortuous wrongdoing committed by the corporation or its officers. *L.B. Indus., Inc. v. Smith*, 817 F.2d 69 (9th Cir. 1987.) Instead, to be personally liable the director and/or officer must "specifically direct, actively participate in, or knowingly acquiesce" in the fraud or wrongdoing. *Id.* at 71 (no personal liability for corporation's director for fraudulent misrepresentations made by corporation's president despite claims that as a director he had some degree of knowledge of president's wrongdoing, because there was no evidence that director specifically directed, acquiesced or actively participated in the fraud). Here, Plaintiff pleads no allegations, nor could she, that would confer personal liability on Mr. Elliott. Plaintiff claims that the decision to add Mr. Elliott is based upon the testimony provided by Coverall's former Chief Financial Officer, Steve Cumbow.[1] (Motion for Leave, p. 1.) Plaintiff relies on several claims purportedly made by Mr. Cumbow regarding the "misclassification of Coverall's employees" and

---

[1] Plaintiff's Motion misleadingly cites to the Cadena Declaration as support concerning the nature of Mr. Cumbow's testimony. (Motion for Leave, 5:9-20.) Interestingly, however, the Cadena Declaration does not even mention the majority of purported "facts" contained in the Motion about the Cumbow testimony. For example, the Motion discusses a Deloitte and Touche opinion, which the Cadena Declaration does not even reference. In any event, as the concurrently filed Evidentiary Objections state, Mr. Cadena's is not proper evidentiary support in this case anyway.

-9-

DLA PIPER LLP (US)
LOS ANGELES

DEFENDANT COVERALL NORTH AMERICA, INC.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR LEAVE TO AMEND THIRD AMENDED COMPLAINT 3:09-CV-02131-JM (BGS)

"the decision to allow 'churning'" during a deposition testimony in another case.[2] (Motion for Leave, p. 2.) Tellingly, Plaintiff does not attach or specifically cite to any transcript of Mr. Cumbow because such testimony does not support a theory to hold Mr. Elliott individually liable. For example, with respect to Plaintiff's statement that Mr. Elliott was "intimately involved" with the "churning" of franchises in California, Mr. Cumbow's testimony in *no way* supports this claim.[3] In fact, to the contrary, Mr. Cumbow specifically testified that the only knowledge he had about "churning" was one possible instance in Atlanta and nowhere else:

>   Q: Now, you talked about Coverall having some incentive to take accounts away and resell them. **Just so we're clear, other than the possible instance in Atlanta** that you mentioned, you're not aware of any situation where Coverall did that?
>
>   A: Correct.

(Sims Decl., Exhibit D, 01/10/08 Deposition Transcript of Steven R. Cumbow ("Cumbow Dep. Tr.") at 149:1-6) (emphasis added). Therefore, this testimony has no bearing on this present lawsuit in California because, as Mr. Cumbow admits, no such conduct occurred here.

Further, Plaintiff also relies on Mr. Cumbow's testimony to establish that Mr. Elliott was involved in the alleged decisions to "misclassify" Coverall's franchisees as independent contractors. (Motion for Leave, p. 2.) Putting aside any decision to "misclassify" Coverall's franchisees was made in 1985, when Coverall started franchising, Mr. Cumbow's testimony directly contradicts Plaintiff's claim. Mr. Cumbow himself repeatedly acknowledges that he did not consider Coverall's franchisees to be employees:

>   Q: Mr. Cumbow, you didn't believe that Coverall's franchise owners are employees, do you?
>
>   A: No.

---

[2] Coverall has concurrently filed evidentiary objections challenging the evidence submitted in support of the Motion for Leave. While Plaintiff purports to rely on Mr. Cumbow's testimony, she failed to introduce any testimony transcripts for the Court's review and consideration. Instead, the only "evidence" Plaintiff submitted was the declaration of her attorney containing his conclusory and unsubstantiated statements by her counsel about what the transcript purportedly said. As evidenced below, these conclusory statements were inaccurate.

[3] Plaintiff's Motion relies on reports generated by Coverall's I.T. Group. (Motion for Leave, 5:15-16.) Reliance on these reports is improper because Judge Young of the United States District Court for the District of Massachusetts has already ruled that they are protected by the work product doctrine. As a result, such testimony is inadmissible here.

-10-

DLA PIPER LLP (US)
LOS ANGELES

DEFENDANT COVERALL NORTH AMERICA, INC.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR LEAVE TO AMEND THIRD AMENDED COMPLAINT 3:09-CV-02131-JM (BGS)

(*Id.* at 148:18-20.)

> Q: Is it your testimony you believe Coverall's franchisees are not independent contractors?
>
> A: They are independent contractors.

(*Id.* at 123:9-11.) Despite Plaintiff's attempts to knowingly mislead the Court, Mr. Cumbow's testimony transcript makes clear that no factual basis exists for conferring personal liability on Mr. Elliott.

Lastly, to the extent Plaintiff attempts to assert any fraud-based claims against Mr. Elliott, the conclusory allegations in the TAC are nowhere near sufficient to comply with Federal Rule of Civil Procedure 9(b). Specifically, Rule 9(b) requires that all fraud-based claims be pled with particularity. *Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 997 (N.D. Cal. 2007) (claims that are "grounded in fraud" or "sound in fraud" must comply with Rule 9(b)). To comply with this standard, a complaint must "allege the who, what, where and when of the alleged fraud." *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999). As evidenced by the excerpt cited above, Plaintiff's allegations that Mr. Elliott, for example, "was intimately involved in the day-to-day decision . . . to allow churning" is nowhere close to complying with this strict pleading requirement. As a result, allowing Plaintiff's amendment to add Mr. Elliott would be futile and Plaintiff's Motion for Leave should be denied.

## VI. PLAINTIFF'S MOTION FOR LEAVE TO ADD NEW PLAINTIFFS SHOULD BE DENIED

### A. Coverall Will Suffer Undue Prejudice If Plaintiff Is Allowed To Add New Plaintiffs Given The Impending Class Certification Deadlines

Coverall will be unduly prejudiced if Plaintiff is allowed to add Carlos Acevedo and Teresa Salas as new plaintiffs this late in the litigation process. Plaintiff's Motion for Class Certification is due to be filed on October 1, 2010.[4] Given the impending class certification briefing, Coverall would not have a full and fair opportunity to conduct discovery as to these new plaintiffs. Specifically, Coverall needs to conduct both written discovery and depositions of the

---

[4] The parties have submitted a stipulation extending Plaintiff's Motion for Class Certification deadline to October 25, 2010, which is pending before the Court.

-11-

DLA PIPER LLP (US)
LOS ANGELES

DEFENDANT COVERALL NORTH AMERICA, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND THIRD AMENDED COMPLAINT 3:09-CV-02131-JM (BGS)

1  new named plaintiffs prior to the class certification briefing in order to determine, among other
2  things, if they are adequate class representatives and whether their claims are typical. To the
3  extent any discovery disputes arise, those likely would not be resolved with supplemental
4  discovery responses provided in sufficient time prior to the deadline for Defendants' Opposition
5  to the Motion for Class Certification. Accordingly, Defendants would be severely and unduly
6  prejudiced. *See Holloway v. Best Buy Co.*, No. 05-5056, 2009 WL 1533668, at *11 (N.D. Cal.
7  May 28, 2009) (denying leave to amend to add new plaintiffs because of, among other things, the
8  proximity of the hearing on the motion for class certification).
9      The cases Plaintiff cites in support of the proposition that "[t]he naming of additional class
10 representatives is freely allowed prior to class certification" do not support an amendment to add
11 new plaintiffs in this case. The cases relied upon by Plaintiff involved leave to amend at much
12 earlier stages of litigation or considered other factors weighing in favor of amendment which are
13 not present here. For example, in *Chu v. Wells Fargo*, No. C05-04526 MPH, C06-7924 MPH,
14 2009 WL 3061974, at *2 (N.D. Cal. Sept. 24, 2009), the court allowed a late amendment that
15 added new plaintiffs because the parties were involved in extensive mediation that was ultimately
16 unsuccessful and required the parties to continue litigation. In addition, the *Chu* Court cautioned
17 that "[a]lthough plaintiff's instant motion will be granted, the court cautions that counsel for
18 plaintiff has pushed the envelope in terms of delay." *Id.* at *3 (plaintiff waited sixteen months to
19 file a motion for leave). Further, in *Palmer v. Stassinos*, 236 F.R.D. 460, 465 (N.D. Cal. 2006),
20 the court allowed a late amendment that added new plaintiffs because the original class
21 representatives did not have standing – a substantial factor in the court's decision which is not
22 present in this case. Finally, in *Gilliam v. Addicts Rehabilitation Center Fund*, No. 05 Civ. 3452,
23 2006 WL 1049352, at *3 (S.D.N.Y. Apr. 19, 2006), the court allowed the addition of new
24 plaintiffs because the motion to amend was "filed early in discovery and immediately following
25 the discovery of new information." As discussed below, Coverall identified the existence of
26 Ms. Salas and Mr. Acevedo nearly two years ago on November 4, 2008 and Plaintiff has had
27 since that time to conduct an investigation concerning them, so this factor does not come into play
28 in this case. Accordingly, Plaintiff's Motion for Leave is simply too late. Coverall will be

-12-

DLA PIPER LLP (US)
LOS ANGELES

DEFENDANT COVERALL NORTH AMERICA, INC.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR LEAVE TO AMEND THIRD AMENDED COMPLAINT 3:09-CV-02131-JM (BGS)

unduly prejudiced if Plaintiff is allowed to add new class representatives this late in the game.

### B. Plaintiff Has Known About Carlos Acevedo and Teresa Salas Since November 2008

In addition to prejudice, the Court should deny Plaintiff's Motion for Leave as unduly dilatory. Plaintiff waited until the very last minute, weeks away from the Motion for Class Certification deadline, to attempt to add two new plaintiffs. As discussed above, Plaintiff has had nearly two years in which to conduct her investigation concerning other putative class members and could have sought leave to amend at any point during that timeframe. Leave to amend could arguably have been reasonable even just a few months ago when Coverall would have had more time for discovery. But now, with impending deadlines looming, such a request is undoubtedly untimely.

As previously noted, when evaluating "undue delay," the Court must also inquire "whether the moving party knew *or should have known* the facts and theories raised by the amendment in the original pleading." *Amerisourcebergen Corp.*, 465 F. 3d at 953 (emphasis added). Like the existence of CNA, Plaintiff has known about Ms. Salas and Mr. Acevedo since at least November 4, 2008. (*See* Sims Decl., Exhibit A.) Ms. Salas and Mr. Acevedo's names and information were made available to Plaintiff in Coverall's initial document production. (*See, e.g.*, Sims Decl., Exhibit C.) There is no justifiable excuse for waiting until the month before class certification briefing to first attempt to add new class representatives. *See Americoursebergen Corp.*, 465 F.3d at 955 (stating that an eight month delay between the time of obtaining a relevant fact and seeking leave to amend is unreasonable). In light of the impending class certification briefing, Coverall will be denied a full and fair opportunity to conduct discovery concerning these new parties. Plaintiff's Motion for Leave to add new class representatives should accordingly be denied.

DLA Piper LLP (US)
Los Angeles

-13-

DEFENDANT COVERALL NORTH AMERICA, INC.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR LEAVE TO AMEND THIRD AMENDED COMPLAINT 3:09-CV-02131-JM (BGS)

## VII. PLAINTIFF'S MOTION FOR LEAVE TO ADD A NEW THEORY OF LIABILITY SHOULD BE DENIED

### A. The Amendment to Add a Joint Employer/ Joint Scheme of Liability is Futile

Finally, Plaintiff wishes to amend her complaint to add a "joint employer/joint scheme" theory of liability against all defendants, including CNA and Mr. Elliott. In order to find CNA and Mr. Elliott liable in this case, Plaintiff must show that they were both her "employers." *Laird*, 68 Cal. App. 4th at 727. As discussed above, courts consider a number of factors in determining whether two corporations should be treated as joint employers: (1) the nature and degree of control over employees; (2) the day-to-day supervision of employees, including discipline; (3) the authority to hire and fire employees and set conditions of employment; (4) the power to set pay rates or payment methods; and (5) control of employee records, including payroll. *Wynn*, 234 F. Supp. 2d at 1093. Importantly, however, individual corporate agents acting within the scope of their employment are not considered a plaintiff's "employer" for purposes of individual liability. *See, e.g., Martinez*, 49 Cal. 4th at 66. As discussed above, Plaintiff has not alleged and *cannot* show, that either CNA or Mr. Elliott were her "employers" for purposes of liability under the Labor Code because the TAC contains no allegations demonstrating: (1) that either CNA or Mr. Elliott had any control over Plaintiff or other putative class members, or (2) that Mr. Elliott in any way acted outside the scope of employment.

Here, CNA and Mr. Elliott are not and could never be considered Plaintiff's "employer" under any circumstance. The TAC merely states that "Defendants, as co-employers, employed Plaintiffs and other similarly-situated persons as janitorial workers throughout California, Plaintiffs are further informed and believe that Defendants directly and indirectly exercised control over the wages, hours, and work of said employees, including Plaintiffs." TAC ¶ 10. These conclusory allegations from the TAC fail to establish that either CNA or Mr. Elliott (or Allied or Ares, for that matter) ever exerted any control over Plaintiff or the putative class, or that Mr. Elliott acted outside the scope of employment. *See Ashcroft*, 56 U.S. __, 129 S.Ct. at 1949. Without these most elementary and fundamental allegations which are the cornerstone of any joint employer claim, Plaintiff simply cannot properly state a claim as a matter of law. Such

-14-

DLA PIPER LLP (US)
LOS ANGELES

DEFENDANT COVERALL NORTH AMERICA, INC.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR LEAVE TO AMEND THIRD AMENDED COMPLAINT 3:09-CV-02131-JM (BGS)

failure renders any amendment futile. The Court, therefore, should deny Plaintiff's Motion for Leave to add a joint employer/joint scheme theory of liability.

### B. Plaintiff's Delay In Adding The Joint Employer/ Joint Scheme Theory of Liability Will Cause Undue Prejudice to Coverall

The Court should further deny Plaintiff's request to add a joint employer/joint scheme theory of liability because the amendment would cause undue prejudice to Coverall. The Ninth Circuit does not look favorably upon plaintiffs who attempt to add new theories of liability late into litigation. For example, in *Amerisourcebergen Corp.*, the Ninth Circuit upheld the denial of leave to amend to assert a new theory of liability, even though eight months of discovery were still remaining, because advancing new legal theories which require proof of different facts was prejudicial and unfairly delayed the litigation. 465 F.3d at 953-54; *see also Morongo Band of Missions Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (upholding denial of leave on the basis of dilatoriness and prejudice where plaintiffs introduced new theories of liability well into the litigation).

Here, Plaintiff is attempting to add a completely new joint employer/joint scheme theory of liability based on "recently uncovered evidence" that "Defendants all exerted the control over the putative class members that an employer would enjoy." (Motion, p. 6; Cadena Decl. ¶ 7.) Interestingly, Plaintiff and her counsel fail to identify this new purported evidence. A conclusory contention that such evidence exists is simply not enough to justify an amendment. Plaintiff must account for her failure to raise this theory earlier, in addition to explaining why an amendment now would not harm Coverall – neither of which she can do.

Moreover, Plaintiff's delay in seeking leave to amend would force Coverall to scramble to conduct discovery on this new theory of liability which requires proof of different facts. As explained above, to establish liability under a joint employer theory, Plaintiff would have to prove that CNA and Mr. Elliott were her and the putative class' "employer" – a strategy different from that which Plaintiff has employed thus far. Requiring Coverall to commence that discovery now, just a month before the class certification briefing, would be unfair and prejudicial. Because this situation is analogous to *Amerisourcebergen*, this Court should deny leave to amend.

DLA PIPER LLP (US)
LOS ANGELES

-15-

DEFENDANT COVERALL NORTH AMERICA, INC.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR LEAVE TO AMEND THIRD AMENDED COMPLAINT 3:09-CV-02131-JM (BGS)

## VIII. PLAINTIFF'S MOTION FOR LEAVE TO ADD TWO NEW CAUSES OF ACTION SHOULD BE DENIED

Plaintiff's delay in adding two new causes of action to the TAC—a cause of action for failure to reimburse for reasonable business expenses under Labor Code section 2802 and another for unlawful deductions from wages under Labor Code sections 221 and 223—is both unduly dilatory and prejudicial to Coverall. *See, e.g., Chodos v.* West, 292 F.3d 992, 1003 (9th Cir. 2002) (upholding denial of second leave to amend a fraud claim where the plaintiff knew of the relevant facts *prior* to his first amendment as both prejudicial and dilatory). Plaintiff admits that the facts underlying the two new causes of action were known at the time of the filing of the original complaint. Like *Chodos,* there is simply no justification for such an untimely amendment. Moreover, if the Court grants Plaintiff's amendment Coverall would not have a full and fair opportunity to conduct discovery as to the facts underlying the proposed new causes of action. Accordingly, Plaintiff's amendment to add two new causes of action should be denied as both prejudicial and unduly dilatory.

## IX. CONCLUSION

For the foregoing reasons, Coverall respectfully requests that Plaintiff's Motion for Leave be denied in its entirety.

Dated: September 3, 2010            DLA PIPER LLP (US)

By: /s/ Nancy Nguyen Sims
    JEFFREY A. ROSENFELD
    NANCY NGUYEN SIMS
    Attorneys for Defendant
    COVERALL NORTH AMERICA, INC.

DLA PIPER LLP (US)
LOS ANGELES

-16-

DEFENDANT COVERALL NORTH AMERICA, INC.'S OPPOSITION TO PLAINTIFF'S
MOTION FOR LEAVE TO AMEND THIRD AMENDED COMPLAINT 3:09-CV-02131-JM (BGS)