1

1          UNITED STATES DISTRICT COURT

2          SOUTHERN DISTRICT OF CALIFORNIA

3

4    SABRINA LAGUNA, AN INDIVIDUAL,  )
     ET AL.,                         )
5                                    ) CASE NO. 09CV2131-JM(BGS)
              PLAINTIFFS,            )
6                                    ) SAN DIEGO, CALIFORNIA
     VS.                             ) WEDNESDAY,
7                                    ) FEBRUARY 16, 2011
     COVERALL NORTH AMERICA, INC.,   ) 5:57 P.M.
8    ET AL.,                         )
                                     )
9              DEFENDANTS.           )
     _____)

10

11

12

      TRANSCRIPT OF HEARING TO EXTEND EXPERT WITNESS DEADLINES
13            BEFORE THE HONORABLE BERNARD G. SKOMAL
                 UNITED STATES MAGISTRATE JUDGE
14

15

16

17

18

19

20

21
     TRANSCRIPT ORDERED BY:    TRACEE LORENS, ESQ.
22
     TRANSCRIBER:              CAMERON P. KIRCHER
23

24
     PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
25   TRANSCRIPT PRODUCED BY TRANSCRIPTION.

COMPUTER-AIDED TRANSCRIPTION

2

1    APPEARANCES:

2    FOR THE PLAINTIFFS:

3                                CADENA CHURCHILL, LLP
                                 BY:   RAUL CADENA, ESQ.
4                                      LYNN M. BEEKMAN, ESQ.
                                 701 B STREET
5                                SUITE 1400
                                 SAN DIEGO, CALIFORNIA  92101

6

7    FOR DEFENDANT COVERALL:

8                                DLA PIPER (US), LLP
                                 BY:  NANCY N. SIMS ESQ.
9                                1999 AVENUE OF THE STARS
                                 SUITE 400
10                               LOS ANGELES, CALIFORNIA  90067

11

12   FOR DEFENDANT ALLIED CAPITAL AND ARES CAPITAL:

12                               COOLEY GODWARD KRONISH
13                               BY:  BENJAMIN F. CHAPMAN, ESQ.
                                 4401 EASTGATE MALL
14                               SAN DIEGO, CALIFORNIA 92121

15

16

17

18

19

20

21

22

23

24

25

COMPUTER-AIDED TRANSCRIPTION

1      SAN DIEGO, CALIFORNIA – WEDNESDAY, FEBRUARY 16, 2011

2                          5:57 P.M.

3           THE CLERK:  CALLING MATTER THREE ON CALENDAR TODAY.

4    LAGUNA VS. COVERALL, CASE NUMBER 09CV2131, ON CALENDAR FOR

5    PLAINTIFFS' EX-PARTE APPLICATION TO EXTEND EXPERT DISCOVERY.

6           WILL COUNSEL PLEASE STATE THEIR APPEARANCES FOR THE

7    RECORD, BEGINNING WITH PLAINTIFFS' COUNSEL.

8           MR. CADENA:  RAUL CADENA, APPEARING FOR THE

9    PLAINTIFFS.

10          MS. BEEKMAN:  LYNN BEEKMAN APPEARING FOR THE

11   PLAINTIFFS.

12          MS. SIMS:  THIS IS NANCY SIMS FROM DLA PIPER ON

13   BEHALF OF COVERALL NORTH AMERICA.

14          THE COURT:  OKAY.

15          MR. CHAPMAN:  BEN CHAPMAN ON BEHALF OF DEFENDANTS

16   ALLIED CAPITAL AND ARES CAPITAL.

17          THE COURT:  OKAY.  GREAT.  THANK YOU.

18          WE'RE ON THE RECORD.  THIS IS FOR DISCOVERY -- NO,

19   REQUEST TO CONTINUE OR EXTEND OUT THE EXPERT WITNESS

20   DEADLINES UNTIL AFTER THE MOTION FOR CERT IS DECIDED BY

21   JUDGE MILLER.  AND THIS IS THE PLAINTIFFS' MOTION.  I'VE READ

22   ALL THE PAPERWORK, AS BEST I COULD.  I WAS SICK THIS WEEKEND,

23   BUT I'M BETTER NOW.

24          MR. CADENA, DO YOU WANT TO ADD ANYTHING TO YOUR

25   PAPERS THAT YOU THINK I NEED TO KNOW TODAY?  AND I HAD A

4

1    COUPLE QUESTIONS AFTERWARD, BUT JUST TO GIVE YOU AN

2    OPPORTUNITY RIGHT NOW.

3         MR. CADENA:  SURE.  WELL, WHAT THE COURT SHOULD

4    KNOW, YOUR HONOR, IS THAT THE PARTIES ATTEMPTED TO MEET AND

5    CONFER, ACTUALLY HAVE MET AND CONFERRED REGARDING CONTINUING

6    THESE DATES.  AND UNFORTUNATELY WHEN IT CAME DOWN TO THE

7    WIRE, WHICH WAS I THINK LATE LAST NIGHT WAS THE LAST E-MAIL

8    THAT WAS EXCHANGED BETWEEN MS. LORENS AND DEFENSE COUNSEL,

9    THERE WAS STILL NOT AGREEMENT.

10        BUT CONCEPTUALLY FOR THE COURT, WE'RE ESSENTIALLY

11   TRYING TO MAINTAIN WHAT HAD ORIGINALLY BEEN AGREED TO BY THE

12   PARTIES, THAT THE DESIGNATIONS WOULD OCCUR AFTER A DECISION

13   WAS RENDERED ON THE MOTION FOR CERT.  SO IF THAT IS

14   ESSENTIALLY THE CASE, AND WE TRY TO DO THAT, WHICH IS WHAT WE

15   WOULD WANT, WE'D BE LOOKING AT ABOUT A 45 DAY OR SO

16   CONTINUANCE BEYOND THE APRIL 8TH DATE, WHICH IS WHEN THE

17   HEARING IS SET FOR THE MOTION FOR CERT.  AND WE SAY 45 DAYS

18   BECAUSE THAT WOULD SORT OF GIVE US A CUSHION IN THE EVENT THE

19   COURT DECIDES TO TAKE IT UNDER SUBMISSION.

20        AND FOLLOWING FROM THAT DATE, ALL OTHER DATES WOULD

21   SIMILARLY HAVE A 45-DAY CONTINUANCE FROM THAT HEARING DATE OF

22   APRIL 8.

23        THE COURT:  OKAY.  AND THAT'S THE HEARING BEFORE

24   JUDGE MILLER ON THE CERT MOTION; RIGHT?

25        MR. CADENA:  YES, SIR.

1     THE COURT:  OKAY.  AND WHAT IS THE DEFENSE POSITION?

2  AGAIN, I'VE READ YOUR PAPERS.  ANYTHING YOU WANT TO ADD OR

3  YOU WANT TO RESPOND TO MR. CADENA?

4     MS. SIMS:  YOUR HONOR, THIS IS NANCY SIMS ON BEHALF

5  OF COVERALL.

6     YOU KNOW, WE DON'T WANT TO BURDEN THE COURT BY

7  REITERATING ANYTHING THAT'S IN OUR PAPERS, SO THE ONLY THING

8  WE'D LIKE TO ADD IS JUST TO MENTION THAT THE MEET AND CONFER

9  DISCUSSIONS WERE -- OBVIOUSLY HAVE NOT BEEN SUCCESSFUL.

10     AND ONE THING THAT WE SHOULD NOTE WAS THAT THE MEET

11  AND CONFER DISCUSSIONS, I GUESS ON THE TABLE WAS SOME

12  NEGOTIATION ABOUT A SUBPOENA THAT WAS SERVED IN WHICH

13  PLAINTIFFS HAVE OBJECTED TO.  SO AS PART OF THAT DEAL, SO TO

14  SPEAK, YOU KNOW, WE WERE SEEKING WITHDRAWAL OF THE OBJECTION

15  SO THAT, YOU KNOW, THEY DON'T HAVE TO FIGHT OVER THIS, WE

16  DON'T HAVE TO FIGHT OVER THAT.  SO WE WERE TRYING TO REACH A

17  COMPROMISE IN THAT REGARD, AND, YOU KNOW, WE HAVEN'T HEARD

18  FROM PLAINTIFFS ON THAT ISSUE, EITHER.

19     BUT, UNFORTUNATELY, THE PARTIES, ALTHOUGH WE DID

20  TRY, WERE UNABLE TO REACH SOME TYPE OF A CONSENSUS WHICH

21  WOULD OBVIATE THE NEED FOR TODAY'S HEARING.

22     MR. CADENA:  WITH REGARD TO THAT SUBPOENA, YOUR

23  HONOR, OUR POSITION HAS BEEN THAT IT'S REALLY A FISHING

24  EXPEDITION AND AN ATTEMPT TO HARASS ONE OF THE CLASS REPS AND

25  ASK FOR HER PERSONNEL FILES WITH A CURRENT EMPLOYER.  WE

1   REALLY DIDN'T SEE A BASIS FOR THAT, SO WE HAVE FILED THE

2   NECESSARY MOTION TO QUASH PAPERWORK.  IT'S CURRENTLY PENDING

3   IN THE CENTRAL DISTRICT.  I JUST WANTED TO LET THE COURT KNOW

4   WHAT THE NATURE OF THAT WAS.

5          AND THAT SUBPOENA, BY THE WAY, WAS SERVED RIGHT

6   ABOUT THE TIME THAT THE DEFENDANTS WERE CONTESTING AND

7   OPPOSING THE DEPOSITION NOTICES THAT WE HAD SERVED BASED ON A

8   CONCERN OF TIMELINESS.  SO THEY ARE ESSENTIALLY SERVING A

9   SUBPOENA AT THE SAME TIME THAT THEY ARE DISPUTING AND ARGUING

10  THAT WE SHOULDN'T HAVE SERVED OUR DEPO NOTICES.

11         THE COURT:  OKAY.  WELL, LET'S NOT GET INTO THAT.

12  OBVIOUSLY JUST A NOTE TO SELF, MS. SIMS, THAT REGARDLESS OF

13  WHAT YOU AGREED ON, I REQUIRE GOOD CAUSE BEING SHOWN TO ME

14  FOR ANY CONTINUANCES, EVEN IF THE PARTIES AMONGST THEMSELVES

15  MAKE SOME DECISION THAT THEY ARE GOING TO -- THAT WE WANT TO

16  PUT THESE DATES OVER FOR A CERTAIN PERIOD OF TIME.  ALL GOES

17  THROUGH ME.  SO EVERYTHING -- YOU'D STILL HAVE TO BE HERE

18  TODAY TO JUSTIFY ANY CONTINUANCES OF MY SCHEDULING ORDER.

19  ALL RIGHT.

20         MS. SIMS:  I UNDERSTAND, YOUR HONOR.  AND WE DECIDED

21  IT MIGHT BE EASIER IF WE WERE ABLE TO REACH AN AGREEMENT

22  WHICH MIGHT HELP MAKE YOUR JOB EASIER, BUT UNFORTUNATELY WE

23  WEREN'T ABLE TO DO THAT.

24         THE COURT:  OKAY.  FROM READING THE PAPERS, I GET

25  THE CLEAR IMPRESSION THAT THE BASIS, THE PLAINTIFFS' BASIS

1  FOR WANTING TO PUT THIS OVER IS A SEVERE FINANCIAL BURDEN

2  WOULD BE PLACED ON THE PLAINTIFF.  AND I THINK --

3  MR. CADENA:  YES, YOUR HONOR.  AND WHAT THE

4  SITUATION IS, IS THAT WITH REGARDS TO THE EXPERT THAT WOULD

5  BE USED FOR PURPOSES OF PREPARING THE QUESTIONNAIRE, IT

6  REALLY IS JUST WAITING FOR THE DETERMINATION ON CERTIFICATION

7  TO THEN ALLOW THE EXPERTS TO GO FORWARD.  IN ADDITION, MOST

8  EXPERTS REQUIRE A NONREFUNDABLE AMOUNT BE PAID AT THE TIME OF

9  DESIGNATION, WHICH CLEARLY POSES A DILEMMA IN THE EVENT THAT

10  THE CASE IS NOT CERTIFIED.

11  AND ALSO WITH REGARD TO THE COURT'S DETERMINATION ON

12  CERTIFICATION, WE DON'T KNOW PRECISELY WHAT THE COURT IS

13  GOING TO BE CERTIFYING THE CASE ON, SO THAT ALSO HAS AN

14  IMPACT IN TERMS OF THE TYPE AND NUMBER OF EXPERTS THAT WE

15  WOULD TYPICALLY DESIGNATE.  SO THERE ARE ALL THESE ISSUES

16  THAT REALLY ARISE FROM THE FACT THAT THE -- THAT THE

17  DETERMINATION ON CERTIFICATION HASN'T OCCURRED YET.

18  AND SO WE WOULD SIMPLY ASK THAT WE BE ALLOWED TO

19  MAINTAIN WHAT THE PARTIES HAVE AGREED TO BEFORE, THAT THESE

20  DESIGNATIONS WOULD OCCUR POST-CERTIFICATION, WHEN WE KNOW

21  EXACTLY, OR AT LEAST POST THE DETERMINATION OF CERTIFICATION,

22  SO THAT WE CAN DETERMINE, YOU KNOW, WHAT PATH TO TAKE AT THAT

23  POINT WITH REGARD TO EXPERTS.

24  THE COURT:  ALONG THAT LINE, AND THAT WAS REALLY

25  LEADING INTO A QUESTION I HAD WAS, WHAT EXPERTS WILL YOU NOT

1    BE CALLING IF THE CLASS IS NOT CERTIFIED AND WHAT EXPERTS

2    WILL YOU BE CALLING, TO GET AN IDEA OF REALLY THE BALANCE IN

3    TERMS OF EXPERTS, IF THERE IS CERTIFICATION AND EXPERTS IF

4    THERE IS NOT CERTIFICATION AND THE COST ANALYSIS.  HOW MUCH

5    OUT OF POCKET IS IT GOING TO BE EITHER WAY?

6         WHETHER IT'S CERTIFIED OR NOT, YOU'RE GOING TO HAVE

7    TO -- I ASSUME THE CASE IS GOING TO GO FORWARD ON AN

8    INDIVIDUAL BASIS AND THERE WILL BE EXPERTS, VERSUS IF IT'S

9    CERTIFIED ON A CLASS-WIDE BASIS, WHAT EXPERTS, ADDITIONAL

10   EXPERTS ARE YOU GOING TO NEED THAT YOU'RE GOING TO NOW HAVE

11   TO HIRE WITHOUT KNOWING, KIND OF IN THE BLIND.

12        DO YOU HAVE AN IDEA AS TO THAT, MR. CADENA?

13        MR. CADENA:  WELL, WE KNOW, YOUR HONOR, THAT IF THE

14   CASE IS CERTIFIED, THEN WE'RE LOOKING AT A QUESTIONNAIRE

15   BEING PREPARED AND SENT OUT BY OUR EXPERT.  THE AMOUNTS THAT

16   WERE STATED BY MS. LORENS ARE ACCURATE.  THAT WOULD BE A VERY

17   EXPENSIVE UNDERTAKING, IN THE APPROXIMATE QUARTER

18   MILLION-DOLLAR AMOUNT; SO THAT IS A VERY SIGNIFICANT AMOUNT.

19        WITH REGARD TO THAT --

20        THE COURT:  LET ME ASK YOU ABOUT THAT PARTICULAR

21   EXPERT.  I HAD A QUESTION AS TO -- BECAUSE I READ MS. LORENS'

22   DECLARATION AND HER MOTION ABOUT THE PURPOSE OF THE SURVEY

23   WAS FOR RULE 23 PURPOSES.  AND I'M NOT TOO SURE, WHAT IS THE

24   PURPOSE OF A QUESTIONNAIRE IF THE CLASS IS THEN CERTIFIED?

25        MR. CADENA:  WELL, THE PURPOSE OF THE QUESTIONNAIRE,

1    YOUR HONOR, IS TO ELICIT INFORMATION REGARDING SOME VERY

2    MAJOR ISSUES HERE, WHICH IS PRIMARILY WITH REGARD TO THE

3    CLASSIFICATION, THE ISSUE OF CONTROL.  AND SO THERE IS ITEMS

4    THAT ARE ADDRESSED IN THESE QUESTIONNAIRES THAT GO TO THE

5    FOCUS OF CONTROL, THE NATURE OF CONTROL, THE TYPE OF CONTROL;

6    AND ALL THOSE MATTERS REALLY CAN'T BE DETERMINED UNTIL WE

7    HAVE CERTIFICATION.

8         THERE IS ALSO THE USE OF THE QUESTIONNAIRE FOR

9    PURPOSES OF DAMAGE CALCULATIONS.  SO, FOR INSTANCE,

10   DETERMINING THE NUMBER OF HOURS THAT WERE WORKED IN A DAY, TO

11   THEN ASSESS THE MEAL, REST BREAK DAMAGES, OVERTIME DAMAGES.

12   SO ALL OF THAT INFORMATION IS ELICITED VIA THIS

13   QUESTIONNAIRE.  AND, YOU KNOW, THAT'S WHAT WE ANTICIPATE WILL

14   HAPPEN, AS IS WHAT TYPICALLY HAPPENS ONCE THE CASE HAS BEEN

15   CERTIFIED.

16        THE COURT:  SO JUST SO I UNDERSTAND IT CORRECTLY.

17   IF IT'S CERTIFIED, YOU'RE GOING TO HIRE AN EXPERT WHO IS THEN

18   GOING TO PUT TOGETHER A QUESTIONNAIRE AND SEND IT TO THE

19   DIFFERENT CLASS MEMBERS AND TAKE A SURVEY AS TO ISSUES OF

20   CONTROL AND DAMAGES, IN TERMS OF NUMBER OF HOURS IN THE DAY

21   AND THAT SORT OF THING?

22        MR. CADENA:  REALLY, BUT NOT LIMITED TO THAT, YOUR

23   HONOR.  YES.

24        THE COURT:  AND WHAT -- AND IF IT'S NOT CERTIFIED,

25   THAT QUESTIONNAIRE THEN DOES NOT BECOME RELEVANT?

1          MR. CADENA:  CORRECT.

2          THE COURT:  AND OTHER THAN THAT PARTICULAR EXPERT,

3    WHAT OTHER EXPERT ARE YOU GOING TO HAVE TO HIRE THAT YOU

4    WOULDN'T HIRE IF IT'S CERTIFIED?  ANYBODY ELSE?

5          MR. CADENA:  WAIT.  WHICH EXPERTS WOULD WE HIRE IF

6    THE CASE WERE CERTIFIED?

7          THE COURT:  YEAH.  I MEAN, IF IT'S CERTIFIED, WHAT

8    ADDITIONAL EXPERTS ARE YOU GOING TO HAVE TO PAY?

9          MR. CADENA:  WELL, WE WOULD BRING ON A FORENSIC

10   PERSON TO BASICALLY DO WHAT'S CALLED THE NUMBER CRUNCHING.

11   AND THAT IS THE TYPE OF PERSON, FOR INSTANCE, THAT

12   (UNINTELLIGIBLE) WOULD THEN LOOK AT ALL THE DATA THAT'S

13   ACCUMULATED FROM THE QUESTIONNAIRE TO DETERMINE DAMAGES.

14   THAT'S ONE.

15          IN ADDITION, WE WOULD BE LOOKING AT AN EXPERT TO

16   FOCUS ON THE ISSUES OF FRANCHISE APPLICATION IN TERMS OF WHAT

17   THE FRANCHISE OR FRANCHISEE ARE REQUIRED TO DO BASED ON THIS

18   AGREEMENT AND CONTRACT THAT THEY ALLEGE WAS ENTERED INTO BY

19   ALL THE FRANCHISEES.

20          THE COURT:  LET ME STOP YOU FOR A MINUTE -- HOLD

21   ON.

22          MR. CADENA:  THE DETERMINATION OF WHETHER WE HAVE AN

23   EXPERT OR NOT IS BASED ON WHETHER THE COURT CERTIFIES ALL

24   ASPECTS OF THE CASE.  SO THAT'S ONE THAT IS POSSIBLY UP IN

25   THE AIR.

1          THE COURT:  OKAY.  AGAIN, I STILL CAN'T GET MY ARMS

2    AROUND -- THE ONLY EXPERT MENTIONED IN THE PAPERS WAS THIS

3    DR. JON KROSNICK.  I'M SPELLING THAT WRONG, BUT --

4          MR. CADENA:  THAT'S DR. JON KROSNICK, YOUR HONOR.

5          THE COURT:  KROSNICK.  TO SURVEY THE CLASS SIZE AND

6    THE QUARTER MILLION-DOLLAR COST.  AND IS THAT THE ONE YOU'RE

7    SAYING NEEDS -- THAT WILL PUT TOGETHER A QUESTIONNAIRE?

8          MR. CADENA:  YES, SIR.

9          THE COURT:  AND WHY WOULD IT COST A QUARTER MILLION

10   DOLLARS TO PUT TOGETHER A QUESTIONNAIRE?

11         MR. CADENA:  MR. -- OR DR. KROSNICK IS ONE OF THE

12   TOP EXPERTS IN THE FIELD, YOUR HONOR.  AND THESE SURVEY

13   EXPERTS JUST ARE VERY EXPENSIVE.  THE WORK THAT'S PUT INTO

14   DEVELOPING THE SURVEY, THE INSTRUMENT, IS FAIRLY COMPLICATED,

15   AND THE TIME SPENT IN SENDING OUT THIS QUESTIONNAIRE IS A

16   VERY EXPENSIVE PROCESS.  SO THAT'S NOT AN UNUSUAL AMOUNT OF

17   MONEY TO PAY FOR THESE EXPERTS.

18         THE COURT:  DOES THE DEFENSE HAVE ANYTHING TO ADD OR

19   SUBTRACT IN TERMS OF THIS SURVEY EXPERT?  FEEL FREE AT THIS

20   TIME.

21         MS. SIMS:  YOUR HONOR, I THINK OUR POSITION IS LAID

22   OUT IN THE PAPERS.  YOU KNOW, WE THINK THAT THIS IS -- YOU

23   KNOW, IT'S SOMETHING THAT SHOULD HAVE GONE TOWARDS THE CLASS

24   CERTIFICATION.

25         BUT ONE POINT THAT WE ALSO FIND INTERESTING, THOUGH,

1    IS THAT THERE WAS SOME NOTATION IN ONE OF PLAINTIFFS' BRIEFS

2    ABOUT HOW THIS WOULD HAVE TO BE LIKE A NATIONWIDE SURVEY,

3    WHICH ALSO SEEMS STRANGE GIVEN THAT THE CLASS IS LIMITED TO

4    CALIFORNIA ONLY.

5            MR. CADENA:  YEAH.  AND I CAN CLARIFY THAT FOR THE

6    COURT.  IT WAS SIMPLY THE OBSERVATION THAT WHAT COVERALL IS

7    DOING IS NATIONWIDE.  BUT THIS WOULD BE LIMITED TO

8    CALIFORNIA, YOUR HONOR.

9            THE COURT:  OKAY.  AND NOW, IS THIS DR. KROSNICK,

10   THEN, WHEN THE QUESTIONNAIRE IS SENT OUT AND THE ANSWERS COME

11   BACK, THEN DOES HIS JOB THEN CONTINUE ON TO GIVE EXPERT

12   OPINIONS AS TO I THINK WHETHER THE PERSON WAS AN INDEPENDENT

13   CONTRACTOR OR AN EMPLOYEE?

14           MR. CADENA:  WELL, HIS JOB WOULD CONTINUE THROUGH

15   TRIAL.  I MEAN, HE WOULD ESSENTIALLY ASSESS THE DATA AND THEN

16   COME UP WITH HIS CONCLUSIONS BASED ON THE DATA THAT WAS

17   OBTAINED.

18           THE COURT:  OKAY.  NOW -- AND THE OPINION AGAIN

19   WOULD BE EXPERT OPINIONS HAVING TO DO WITH THE ISSUES OF

20   CONTROL AND DAMAGE CALCULATIONS?

21           MR. CADENA:  AMONG OTHERS.

22           THE COURT:  AND SO WHY WOULD YOU THEN NEED A

23   FORENSIC NUMBER-CRUNCHING EXPERT IF YOU HAVE DR. KROSNICK TO

24   DO THAT?

25           MR. CADENA:  BECAUSE WHAT DR. KROSNICK'S JOB IS IS

1    TO BASICALLY PUT THE QUESTIONNAIRE, THE INSTRUMENT TOGETHER

2    THAT WILL ELICIT THE DATA.  THE INFORMATION REGARDING DAMAGES

3    IS THEN PROVIDED TO THE FORENSIC EXPERT TO DO COMPUTATIONS.

4    THAT'S AN ENTIRELY DIFFERENT AREA.

5            THE COURT:  AND THE COMPUTATIONS EXPERT, HOW MUCH

6    DOES HE OR SHE COST, MORE OR LESS?

7            MR. CADENA:  WELL, IN A CASE OF THIS SIZE, WE'RE

8    PROBABLY LOOKING AT ABOUT SIX FIGURES, YOUR HONOR.

9            THE COURT:  AND SO KROSNICK IS GOING TO COST

10   $250,000 TO DO THE QUESTIONNAIRE AND TESTIFY; IS THAT YOUR

11   UNDERSTANDING?

12           MR. CADENA:  THAT'S WHAT OUR UNDERSTANDING IS,

13   SIR.

14           THE COURT:  AND THEN YOU MENTIONED A FRANCHISE

15   APPLICATION EXPERT.  DID I GET THAT RIGHT?

16           MR. CADENA:  SURE.

17           THE COURT:  WHAT DOES THAT EXPERT DO?

18           MS. BEEKMAN:  WELL, YOUR HONOR, LET ME -- THIS IS

19   LYNN BEEKMAN.

20           THE COURT:  OKAY.

21           MS. BEEKMAN:  AND LET ME STATE THAT THE

22   DEFENDANTS -- YOU KNOW, WE'VE RECEIVED THEIR DESIGNATIONS.

23   THEY HAVE A FRANCHISE EXPERT THAT THEY HAVE DESIGNATED.  SO

24   BOTH PARTIES SEEM TO BE IN AGREEMENT THAT THIS TYPE OF CASE

25   NEEDS A FRANCHISE EXPERT, IN TERMS OF WHETHER OR NOT THE

1    DOCUMENTATION SUPPLIED TO THESE PURPORTED FRANCHISEES MEETS

2    ALL THE REQUIREMENTS IN CALIFORNIA FRANCHISE LAW.

3         THE COURT:  OKAY.  LET ME JUST STOP YOU A MINUTE

4    THERE.  THE QUESTION WAS TAILORED SPECIFICALLY TO WHETHER

5    THIS PARTICULAR EXPERT WOULD BE NEEDED IF THE CLASS WAS

6    CERTIFIED BUT WOULD NOT BE NEEDED IF IT WASN'T CERTIFIED.

7    BUT IT SOUNDS LIKE THIS EXPERT IS GOING TO BE NEEDED ANYWAY.

8    AM I CORRECT?

9         MS. BEEKMAN:  WELL, THAT DEPENDS, YOUR HONOR, ON A

10   COUPLE OF THINGS.  ONE OF THEM IS IF ONLY A PORTION OF THE

11   CAUSES OF ACTION ARE CERTIFIED.  IT REALLY DEPENDS ON THE

12   SCOPE OF THE CERTIFICATION.

13        BUT THERE IS A POSSIBILITY, YOU'RE RIGHT, THAT HE

14   WOULD BE JUST FOR THE INDEPENDENT CASES IF THEY WERE OF A

15   CERTAIN NATURE.

16        THE COURT:  LET'S ASSUME NONE OF THEM ARE CERTIFIED.

17   YOU'RE STILL GOING TO TAKE THESE OTHER INDEPENDENT CASES TO

18   TRIAL; RIGHT?

19        MR. CADENA:  WELL, THAT CERTAINLY IS AN OPTION THAT

20   WE HAVE, YOUR HONOR.  BUT WE'RE NOT MAKING A DECISION ON THAT

21   AT THIS POINT.

22        THE COURT:  SO YOU MIGHT DISMISS THOSE CASES?

23        MR. CADENA:  WE DON'T KNOW THAT, YOUR HONOR.

24        MS. BEEKMAN:  AND I WOULD LIKE TO SAY, TOO, THAT,

25   YOU KNOW, BASED ON -- DEPENDING ON THE DAMAGE ASPECTS, ALWAYS

1    YOU'RE LOOKING AT THE COST-BENEFIT ANALYSIS; AND SO CERTAINLY

2    A FRANCHISE EXPERT IS SOMETHING THAT BOTH PARTIES

3    CONTEMPLATED WHETHER OR NOT THE CASE IS CERTIFIED OR NOT.

4    BUT THERE IS ALWAYS THAT COST ANALYSIS THAT YOU NEED TO DO,

5    AND WE JUST HAVEN'T DONE THAT YET AT THIS POINT.

6         THE COURT:  ALL RIGHT.  AREN'T YOU GOING TO ALSO

7    NEED A FORENSIC EXPERT TO DO NUMBER CRUNCHING, EVEN IF IT'S

8    NOT CERTIFIED FOR THE INDIVIDUAL FRANCHISE OWNERS?

9         MR. CADENA:  POSSIBLY, BUT NOT CERTAIN.

10        THE COURT:  OKAY.  HOW ABOUT IF THE CASE IS NOT

11   CERTIFIED, WHAT EXPERTS ARE YOU GOING TO NEED TO PROCEED WITH

12   YOUR CASE, OR HAVE YOU THOUGHT ABOUT THOSE YET?

13        MR. CADENA:  WE HAVEN'T REALLY THOUGHT ABOUT THAT,

14   YOUR HONOR.

15        MS. BEEKMAN:  ONE OTHER THING I'D LIKE TO ADD, YOUR

16   HONOR, IS THAT WE ARE ALSO INTERESTED IN DESIGNATING AN

17   INSURANCE-RELATED ASPECT -- EXCUSE ME, AN INSURANCE-RELATED

18   EXPERT.  AND THAT KIND OF FALLS WITHIN THE SAME CATEGORY AS

19   THE FRANCHISE EXPERT, IN TERMS OF WHETHER OR NOT HE OR SHE

20   WOULD BE NECESSARY IN THE LONG RUN.

21        SO THOSE ARE THE TWO THAT WE'RE CONTEMPLATING AS

22   WELL.

23        THE COURT:  AGAIN, WHAT DOES AN INSURANCE-RELATED

24   EXPERT TESTIFY TO?

25        MS. BEEKMAN:  IN THIS CASE, COVERALL ALSO OFFERED --

1    THEY ARE GOING TO COUCH IT IN TERMS OF OFFERING INSURANCE,

2    AND WE WOULD COUCH IT DIFFERENTLY.  BUT THE PURPORTED

3    FRANCHISEES WERE REQUIRED TO OBTAIN INSURANCE, AND SO PART OF

4    THE FRANCHISE PACKAGE, PART OF THAT, WAS PROVIDING TO THEM

5    ALL KINDS OF INFORMATION TO SIGN THEM UP FOR INSURANCE.

6         AND AS IT TURNS OUT, THAT WAS THE -- I GUESS THE

7    LARGEST REVENUE FORCE OF THIS ENTIRE BUSINESS, WAS 90 PERCENT

8    OF THE PURPORTED FRANCHISEES ADOPTING THIS INSURANCE THAT WAS

9    ESSENTIALLY SOLD TO THESE PURPORTED FRANCHISEES.  AND THE

10   REVENUE GENERATED FROM THAT WAS ABOUT 70 PERCENT.

11        SO WE HAVE CONSIDERED AND EXPLORED AND ARE

12   EVALUATING AN INSURANCE EXPERT FOR THE PURPOSE OF DETERMINING

13   WHETHER THIS WAS AN IMPROPER SALE OF INSURANCE IN CALIFORNIA.

14        THE COURT:  AND IT SOUNDS LIKE THAT EXPERT WOULD

15   ALSO BE USED IF THE CASES WENT INDIVIDUALLY AS WELL?  NO?

16        MS. BEEKMAN:  I HAVE THE SAME RESPONSE AS I DID WITH

17   REGARD TO THE FRANCHISE EXPERT.  YOU KNOW, THE ANSWER IS

18   QUITE POSSIBLY, BECAUSE THOSE ISSUES STILL EXIST.  BUT, OF

19   COURSE, ON AN INDEPENDENT, INDIVIDUAL LEVEL, IT MIGHT BE

20   DIFFERENT FOR US.

21        BUT THE ISSUE IS STILL THERE.  AND ALSO DEPENDING ON

22   WHICH CAUSES OF ACTION ARE CERTIFIED AND WHICH CAUSES OF

23   ACTION ARE NOT.

24        THE COURT:  OKAY.  AND IN TERMS OF THE DR. KROSNICK,

25   IS IT AGAIN?  KROSNICK?

1              MR. CADENA:  YES, SIR.

2              THE COURT:  DO YOU PAY HIM BY AN HOURLY RATE OR DO

3      YOU PAY HIM IN A LUMP SUM?

4              MR. CADENA:  WELL, HE REQUIRES -- HE REQUIRES

5      UP-FRONT PAYMENT, BUT THEN IT'S BASED ON AN HOURLY BASIS ON

6      THE WORK THAT HE DOES.

7              THE COURT:  AND HOW MUCH DOES HE REQUIRE UP FRONT,

8      OR DO YOU KNOW?

9              MR. CADENA:  WELL, FOR THE NATURE OF THE WORK THAT'S

10     GOING TO BE DONE, WE HAVEN'T -- WE HAVEN'T FULLY DISCUSSED

11     WHAT WE HAVE TO DO UP FRONT, YOUR HONOR.  BUT WE KNOW THAT

12     BASED ON OTHER SURVEYS THAT HE'S DONE BEFORE, THIS IS THE

13     COST.

14             THE COURT:  SO YOU HAVEN'T SAT DOWN WITH HIM AND

15     ACTUALLY WORKED OUT A RETAINER AGREEMENT AS TO WHAT HE'S

16     GOING TO CHARGE IN THIS CASE?

17             MR. CADENA:  WELL, WITH REGARD TO THE QUESTIONNAIRE,

18     THAT'S SOMETHING THAT WE REALLY DON'T DO UNTIL THE CASE HAS

19     BEEN CERTIFIED.

20             THE COURT:  OKAY.  BUT IN TERMS OF THIS MOTION AND

21     IN TERMS OF THE ESTIMATE OF $250,000, THAT'S AN ESTIMATE

22     BASED ON PRIOR EXPERIENCE, NOT ON ACTUALLY SITTING DOWN WITH

23     DR. KROSNICK AND WORKING OUT A RETAINER AGREEMENT?

24             MR. CADENA:  CORRECT, YOUR HONOR.

25             THE COURT:  AND IN YOUR EXPERIENCE, WHAT IS THE

1    NORMAL UP-FRONT PAYMENT THAT IS NONREFUNDABLE?

2            MR. CADENA:  IT COULD BE ANYWHERE FROM 10 TO 40

3    THOUSAND DOLLARS.

4            THE COURT:  AND DO YOU KNOW WHAT DR. KROSNICK'S IS

5    OFFHAND?

6            MR. CADENA:  I DO NOT, YOUR HONOR.

7            THE COURT:  AND --

8            MR. CADENA:  THIS IS AS TO THE QUESTIONNAIRE.

9            THE COURT:  RIGHT.  BUT I MEAN, IN TERMS OF HIS JOB,

10   HE WOULD DO THE QUESTIONNAIRE AND THEN HE WOULD BE CONTINUING

11   TO WORK AS NEEDED UP TO TRIAL; RIGHT?

12           MR. CADENA:  YES, SIR.

13           THE COURT:  AND THEN HE WOULD BE BILLING HOURLY.

14   BUT I ASSUME HE'D ALSO -- THAT UP-FRONT MONEY IS NOT JUST,

15   YOU KNOW, FREE MONEY.  HE WOULD HAVE TO WORK THAT OFF HOURLY

16   AS WELL; RIGHT?

17           MR. CADENA:  THAT WOULD BE THE UNDERSTANDING, YES.

18           THE COURT:  NOW, THIS DR. KROSNICK, IF THE CLASS IS

19   NOT CERTIFIED, AND THERE IS NO NEED FOR A QUESTIONNAIRE, IN

20   ANY EVENT, ARE YOU GOING TO RETAIN HIM TO DO OTHER EXPERT

21   WORK IN THE CASE?

22           MR. CADENA:  PROBABLY NOT FOR QUESTIONNAIRES, YOUR

23   HONOR.

24           THE COURT:  BUT FOR OTHER WORK?

25           MR. CADENA:  PROBABLY NOT.

1    THE COURT:  OKAY.  SO HE'S NOT GOING TO BE NEEDED

2  FOR HIS OPINION ON ISSUES OF CONTROL OR DAMAGE CALCULATIONS

3  IN TERMS OF THE INDEPENDENT FRANCHISEES AND THEIR CASES?

4    MR. CADENA:  WE HAVEN'T MADE A FINAL DECISION ON

5  THAT, BUT WE DON'T FORESEE IT.

6    THE COURT:  SO HIS TESTIMONY AND EXPERTISE IS

7  COMPLETELY AND SOLELY DEDICATED TO THE QUESTIONNAIRE?

8    MR. CADENA:  YES, SIR.

9    THE COURT:  AND --

10    MR. CADENA:  WITH REGARD TO THE QUESTIONNAIRE AND

11  OPINING ABOUT THE USE OF SURVEYS, THE METHODOLOGY, THE

12  APPROPRIATENESS, THE EFFECTIVENESS OF THESE METHODOLOGIES FOR

13  TRIAL, AND ALSO PROPOSALS ABOUT HOW TO TRY THE CASE; AND THEN

14  ALSO TESTIMONY AND ALSO THE PREPARATION AND IMPLEMENTATION OF

15  THE SURVEY.

16    THE COURT:  OKAY.  DOES THE DEFENSE HAVE ANYTHING

17  ELSE THEY WANT TO ADD HERE?

18    MS. SIMS:  YOUR HONOR, THIS IS NANCY SIMS.

19    JUST THAT, YOU KNOW, WE ECHO, YOUR HONOR, WHAT WE

20  BELIEVE IS YOUR SENTIMENT THAT SOME OF THIS STUFF WOULD STILL

21  BE NECESSARY EVEN IF A CLASS IS NOT CERTIFIED.

22    BUT ONE POINT WE WANTED TO NOTE IS THAT DR. KROSNICK

23  HAS, IN FACT, ALREADY BEEN UTILIZED BY PLAINTIFFS AND A

24  DECLARATION WAS SUBMITTED BY HIM IN SUPPORT OF A MOTION FOR

25  CLASS CERTIFICATION.  SO JUST TO THE EXTENT THAT THE COURT

1  HAD QUESTIONS ABOUT WHETHER THE EXPERT WAS GOING TO BE USED

2  IN OTHER CAPACITIES, THAT IS ONE OF THEM.

3         THE COURT:  IN TERMS OF THAT DECLARATION, DID YOU

4  HAVE TO PAY HIM UP-FRONT MONEY FOR THAT OR WAS THAT SOMETHING

5  SEPARATE?

6         MR. CADENA:  WE DID HAVE TO PAY FOR THAT, YOUR

7  HONOR.

8         THE COURT:  BUT WAS THAT JUST ON A -- YOU KNOW, A

9  JOB-BY-JOB BASIS IN TERMS OF THE DECLARATION?  IS THAT

10  DIFFERENT THAN HAVING TO PAY A SUBSTANTIAL AMOUNT OF MONEY,

11  LIKE 10 TO 40 THOUSAND DOLLARS UP FRONT, NONREFUNDABLE?

12         I MEAN, WHY --

13         MR. CADENA:  YES.  WE WANTED HIM TO INFORM THE COURT

14  ABOUT THE USE OF SURVEY EXPERTS AND THE USE OF THE

15  QUESTIONNAIRE AND THE EFFICIENCY OF THE QUESTIONNAIRE.  AND

16  HE ALSO OPINED ABOUT THE NUMEROUS DECLARATIONS THAT WERE

17  OBTAINED BY COVERALL, WHICH WERE THE RESULT OF THE CURATIVE

18  NOTICE OUR ASSERTION THAT THOSE WERE IMPROPER COMMUNICATIONS;

19  AND HE ALSO OPINED ABOUT THAT.

20         THE COURT:  OKAY.  BUT DID YOU HAVE TO PAY HIM AN

21  UP-FRONT, NONREFUNDABLE RETAINER FOR HIM TO OPINE ABOUT THAT?

22         MR. CADENA:  WE DID HAVE TO PAY HIM FOR THAT ON AN

23  HOURLY BASIS, YOUR HONOR.

24         THE COURT:  OKAY.  SO THEN -- WHAT I'M TRYING TO

25  UNDERSTAND IS WHY NOW, WHEN YOU HAVE TO RETAIN HIM IN TERMS

1    OF YOUR -- THE EXPERT DISCOVERY THAT'S ABOUT TO TAKE PLACE,

2    YOU NOW HAVE TO GIVE HIM A SUBSTANTIAL UP-FRONT,

3    NONREFUNDABLE PAYMENT?  I MEAN --

4            MR. CADENA:  IT IS VERY DIFFERENT TO SPEND A COUPLE

5    OF HOURS OF TIMING ABOUT METHODOLOGY AND ABOUT THE

6    DECLARATIONS THAT WERE OBTAINED, VERSUS GETTING HIM UP AND

7    GOING ON PREPARING THE QUESTIONNAIRE FOR MAILING MASS, ON

8    PROCESSING AND THE MAILING, ON RECEIVING IT AND THEN

9    ESSENTIALLY PUTTING IT TOGETHER, IN TERMS OF WHAT THE AFTER

10   RESULTS OF THAT SURVEY IS.  THAT'S AN ENTIRELY DIFFERENT

11   TASK, YOUR HONOR.

12           THE COURT:  I SEE.  SINCE YOU'RE ASKING HIM TO

13   INVEST A LOT MORE TIME AND ENERGY INTO IT, HE'S PROBABLY

14   GOING TO WANT THAT NONREFUNDABLE RETAINER TO MAKE SURE HE

15   GETS PAID FOR ALL OF HIS WORK?

16           MR. CADENA:  YES, SIR.

17           MS. SIMS:  YOUR HONOR, JUST TO ADD ONE POINT, WHICH

18   IS THAT I'M LOOKING AT DR. KROSNICK'S DECLARATION NOW AND IT

19   WAS OVER 40 PAGES.

20           THE COURT:  OKAY.  WELL, I MEAN --

21           MR. CADENA:  WELL, A GOOD PORTION OF THAT, YOUR

22   HONOR, WAS A C.V.  HE IS A PROFESSOR AT STANFORD.

23           THE COURT:  OKAY.  AND SINCE YOU'VE HAD CONTACT WITH

24   HIM, HAS HE GIVEN YOU ANY IDEA AS TO HOW MUCH HE WOULD

25   CHARGE?  HOW MANY PEOPLE ARE IN THIS CLASS?  DO WE KNOW,

1    ABOUT A THOUSAND OR SO, OR A LITTLE BIT MORE?

2          MR. CADENA:  THAT'S ANOTHER ISSUE THAT WE'D LIKE TO

3    ADDRESS WITH THE COURT.  WE HAD FILED AN EX-PARTE REQUEST

4    ASKING FOR AN ENTIRE CLASS LIST, AND WE WEREN'T HEARD BY THE

5    COURT ON THAT ISSUE.  BECAUSE DEFENDANTS HAD REPRESENTED TO

6    US THAT THEY HAD PRODUCED A CLASS LIST.  BUT IT TOOK THEM

7    APPROXIMATELY TWO WEEKS THROUGH MAILING, AND WE UNDERSTOOD

8    THAT THAT WAS BECAUSE THEY HADN'T PUT TOGETHER THE ENTIRE

9    CLASS LIST.

10          THE COURT:  THE QUESTION I HAD WAS NOT WHAT YOU

11    WANTED ABOUT A DISCOVERY REQUEST.  IT WAS ABOUT WHAT THE

12    APPROXIMATE SIZE OF THE CLASS IS.  IS IT ABOUT A THOUSAND?

13          MR. CADENA:  I THINK THE DEFENDANTS CAN ANSWER THAT,

14    YOUR HONOR.

15          THE COURT:  WELL, EITHER PARTY.  I MEAN, MS. SIMS,

16    DO YOU HAVE AN IDEA HOW LARGE -- I MEAN, I THINK I'VE SEEN IT

17    IN THE PAPERWORK.

18          MS. SIMS:  YOUR HONOR, I WOULD SAY THAT THAT'S

19    ROUGHLY CORRECT.  I DON'T HAVE AN EXACT NUMBER, SO I WOULD

20    HATE TO MISREPRESENT TO THE COURT, YOU KNOW, UNINTENTIONALLY.

21    BUT ROUGHLY.

22          THE COURT:  SO, YOU KNOW, ROUGHLY SPEAKING THERE IS

23    A THOUSAND PEOPLE.  HE'S GOT TO SEND A QUESTIONNAIRE TO A

24    THOUSAND PEOPLE.  I ASSUME HE'S GOING TO READ THAT

25    QUESTIONNAIRE.

1      HAVE YOU ASKED HIM WHAT KIND OF UP-FRONT MONEY HE'S

2  GOING TO CHARGE YOU?

3      MR. CADENA:  WE HAVE NOT HAD THAT DISCUSSION, YOUR

4  HONOR.  BUT WHAT I SHOULD ADVISE THE COURT OF IS THAT HE HAS

5  TO PREPARE A QUESTIONNAIRE THAT'S SPECIFIC TO THE CASE.  IT'S

6  NOT A GENERIC QUESTIONNAIRE THAT THE EXPERT HAS FOR EVERY

7  CASE.  IT'S REALLY ONE THAT'S PUT TOGETHER FOR EACH CASE

8  BASED ON THE FACTS OF THE CASE, BASED ON THE NATURE OF THE

9  CASE.

10      THE COURT:  AND WHAT I'M TRYING TO UNDERSTAND IS, IF

11  YOU HAVE ALL THIS REALLY KIND OF A FINITE NUMBER OF CLASS,

12  AND THE -- AND IT'S CERTIFIED, WHAT IS THE RELEVANCE OF

13  DIFFERENT CLASS MEMBERS GIVING INFORMATION, WHICH IS

14  TECHNICALLY HEARSAY INFORMATION IN THE FORM OF A SURVEY, TO

15  THE ISSUES IN THE CASE?

16      MR. CADENA:  WELL, IN THESE TYPE OF CASES, YOUR

17  HONOR, THE SURVEY EXPERTS OFTEN ARE BROUGHT INTO THE CASE,

18  AND TRIAL COURTS WILL TYPICALLY ALLOW THEM TO TESTIFY BECAUSE

19  OF THE NATURE OF THE SURVEY.  AND THAT'S ONE OF THE ITEMS

20  THAT DR. KROSNICK TESTIFIED ABOUT IN HIS DECLARATION.  HE

21  ESSENTIALLY LAYS OUT THE METHODOLOGY AND HOW THIS OCCURS.

22  IT'S ACTUALLY THE MOST EFFICIENT WAY TO TRY THESE CASES.

23      SO WE BELIEVE, AND WE'RE CONFIDENT THAT THE

24  TESTIMONY WOULD BE ADMISSIBLE AND THE QUESTIONNAIRE WOULD BE

25  ADMISSIBLE.  IN THE VARIOUS CASES THAT WE'VE SEEN OF THIS

1   TYPE, THESE TYPE OF SURVEY EXPERTS ARE OFTEN ALLOWED TO

2   TESTIFY AND BRING IN THEIR QUESTIONNAIRES.

3       THE COURT:  IN TERMS OF WHAT RELEVANT ISSUES IN THE

4   CASE?  WHAT ARE THE RELEVANT ISSUES THAT THIS SURVEY EXPERT

5   WOULD BE TESTIFYING ABOUT?

6       MR. CADENA:  WELL, THE ISSUES THAT WE TALKED ABOUT

7   EARLIER, REGARDING THE ISSUES OF CONTROL, THE AMOUNT OF TIME

8   THAT WAS SPENT AT WORK, CERTAINLY IT WOULD ASSIST IN THE

9   DETERMINATION OF DAMAGES.

10      THE COURT:  IN TERMS OF THE CONTROL ISSUES, I ASSUME

11  THAT THE WHOLE POINT IS TO GO -- GOES TO EMPLOYEE VERSUS

12  INDEPENDENT CONTRACTOR; RIGHT?

13      MR. CADENA:  YES, SIR.

14      THE COURT:  AND SO BY GETTING THE VARIOUS RESPONSES

15  FROM THE DIFFERENT, WE'LL CALL THEM FRANCHISEES FOR THE SAKE

16  OF LABELING THEM, BASED ON THEIR REMARKS, IS HE GOING TO GIVE

17  AN OPINION AS TO WHAT STATUS THEY HOLD OR WILL YOU HAVE THE

18  FRANCHISE EXPERT GIVE THAT OPINION?

19      MR. CADENA:  WELL, WE'RE NOT CERTAIN ABOUT THAT, BUT

20  THAT IS CERTAINLY WHY WE MIGHT HAVE A FRANCHISE EXPERT AS

21  WELL.  BUT TYPICALLY THIS SURVEY EXPERT WILL OFFER TESTIMONY

22  ABOUT THE OUTCOME OF THE SURVEY.

23      THE COURT:  AND, MS. SIMS, ARE YOU GOING TO HAVE A

24  SURVEY EXPERT?

25      MS. SIMS:  YOUR HONOR, WE ARE STILL DETERMINING THAT

1   ISSUE.  BUT, YOU KNOW, I THINK IF THEY ARE DESIGNATING A

2   SURVEY EXPERT, THEN WE WILL CERTAINLY DESIGNATE ONE IN

3   REBUTTAL.  CURRENTLY AT THE TIME, ON OUR FIRST INITIAL

4   DESIGNATION, WE HAVE NOT DESIGNATED A SURVEY EXPERT.

5            THE COURT:  OKAY.  MR. CADENA, DO YOU HAVE ANYTHING

6   ELSE YOU WANT TO ADD YOUR ARGUMENT?  I THINK I'VE ASKED ALL

7   MY QUESTIONS.

8            MR. CADENA:  WELL, SIMPLY THAT WE THINK THAT THE --

9   THAT THE BEST OUTCOME WOULD BE TO JUST CONTINUE THE DATES AND

10  REALLY HAVE THE CERTIFICATION HEARING AND OUTCOME OF THAT BE

11  THE MARKER, THAT LINE IS SET, YOUR HONOR.

12           THE COURT:  OKAY.  AND THE -- FROM READING THE

13  DEFENSE PAPERS, IT SEEMS TO ME THAT THE MAJOR OBJECTION IS

14  THAT AN OPEN-ENDED DEADLINE COULD LEAD TO AN UNCERTAIN TRIAL

15  SCHEDULE.

16           MS. SIMS.

17           MS. SIMS:  THAT'S RIGHT, YOUR HONOR.  AND I THINK

18  ALSO WE -- YOU KNOW, WE WANT TO -- WE JUST DIDN'T SEE THAT

19  THE COURT, THE INTENTION WAS EVER TO TIE THE EXPERTS TO ANY

20  CROSS-CERT DEADLINE.  AND WE THINK THAT -- THERE IS OBVIOUSLY

21  AN INTEREST IN MOVING THE CASE ALONG.  SO WE JUST DIDN'T WANT

22  THE DELAY THAT WOULD RESULT FROM THAT, YOU KNOW, THAT TYPE OF

23  EXTENSION.

24           MR. CADENA:  IF I MAY, YOUR HONOR, WHEN THESE PAPERS

25  WERE FILED, WE DID NOT HAVE A CERTIFICATION HEARING DATE.  SO

1    NOW WE DO.  AND WE'RE NOT REALLY ASKING FOR AN OPEN-ENDED

2    TIME.  WE NOW KNOW WHEN THAT HEARING TAKES PLACE, WHICH IS

3    APRIL 8TH.

4            AND SO IF WE HAD A FAIRLY EQUIVALENT AMOUNT OF TIME

5    THAT WE'D BE LOOKING AT AT DESIGNATIONS OCCURRING ABOUT 45

6    DAYS AFTER.  PREVIOUSLY IT WAS ABOUT 38 DAYS, BUT GIVEN THAT

7    THE COURT MIGHT TAKE IT UNDER SUBMISSION, THE 45 DAYS WOULD

8    GIVE THE SUFFICIENT CUSHION TO HAVE THOSE DESIGNATIONS OCCUR

9    AFTER A DECISION IS MADE ON CERTIFICATION.

10           THE COURT:  OKAY.  I APPRECIATE THAT.

11           AND, MS. SIMS, I JUST WANT TO ASK YOU THIS FOR THE

12   RECORD.  IS THERE ANY OTHER PREJUDICE TO YOUR CLIENT IF I

13   WERE TO GRANT THIS CONTINUANCE?

14           MS. SIMS:  YOUR HONOR, NO.  WE JUST HAVE AN INTEREST

15   IN MOVING THE CASE FORWARD.  WE DON'T WANT THIS TO BE ANY

16   REASON TO DELAY THE CASE ANY FURTHER.  YOU KNOW, WE THINK

17   THAT -- YOU KNOW, WE WERE CONFUSED BY THE RATIONALE BECAUSE

18   IT DIDN'T SEEM TO BE EXPERTS WERE NECESSARY FOR ANYTHING

19   BEYOND CLASS CERTIFICATION.  AND EVEN AT THIS POINT, AFTER

20   THE EXPLANATION IS GIVEN, WE THINK THAT BOTH OF THESE EXPERTS

21   ARE STILL NEEDED EVEN REGARDLESS OF WHAT THE HOLDING ON

22   CERTIFICATION IS.

23           SO, YOU KNOW, WITH THAT SAID, WE THINK THAT, YOU

24   KNOW, THAT THE CASE SHOULD REALLY CONTINUE TO MOVE FORWARD

25   AND THAT THERE IS NO REASON AT THIS POINT TO CONTINUE IT,

1    CERTAINLY TO THE DEGREE THAT'S BEING REQUESTED.

2            MR. CADENA:  ONE OTHER ITEM THAT I WOULD ADDRESS,

3    YOUR HONOR, AND IT'S ONLY IN THE INTEREST OF EFFICIENCY.  ONE

4    OF THE THINGS THAT WE HAD ALSO BEEN MEETING AND CONFERRING ON

5    PRIOR TO TODAY'S HEARING WAS CONTINUING ALL THE OTHER CURRENT

6    PRE-TRIAL DATES BY AN APPROXIMATE 45 OR SO TIME PERIOD.

7            I'M WONDERING IF THE COURT WOULD ENTERTAIN HEARING

8    THAT NOW RATHER THAN US BRINGING ANOTHER EX PARTE.

9            THE CLERK:  WELL, WHICH DATES?  BECAUSE I MEAN

10   JUDGE -- I KNOW JUDGE MILLER MENTIONED IF IT'S THE TRIAL DATE

11   AND THE PRE-TRIAL CONFERENCE DATE, THOSE ARE HIS DATES.

12           ARE YOU TALKING ABOUT LIKE DISPOSITIVE MOTIONS?

13   WHICH OTHER DATES AND DEADLINES ARE YOU TALKING ABOUT?

14           MR. CADENA:  WELL, WE'RE TALKING ABOUT ALL THE DATES

15   PRIOR TO THE TRIAL AND THE PRE-TRIAL CONFERENCE, SO

16   ESSENTIALLY THE DATES PERTAINING TO MOTIONS BEING FILED,

17   PRE-TRIAL DISCLOSURES, MEMORANDUM OF CONTENTIONS AND FACT,

18   THE LOCAL RULE 16.1 REQUIREMENTS.

19           THE CLERK:  MR. CADENA --

20           MR. CADENA:  THOSE ARE THE ONES THAT WE'VE BEEN

21   MEETING AND CONFERRING ON, WITH A PROPOSAL THAT ALL THOSE

22   DATES WOULD BE CONTINUED BY ABOUT 45 DAYS.  SO WE'RE NOT

23   LOOKING FOR AN OPEN-ENDED EXTENSION.

24           THE CLERK:  SO YOU WANT TO MOVE THE PRE-TRIAL

25   CONFERENCE AND TRIAL DATE OUT AGAIN 45 DAYS?

1           MR. CADENA:  WELL, NO.  WE WOULD BE ASKING JUDGE

2    MILLER DIRECTLY ABOUT THAT WITH ALL TRIAL COUNSEL TO GATHER

3    AT ONE TIME LOOKING AT CALENDARS.  SO WE WOULDN'T BE ASKING

4    FOR JUDGE SKOMAL TO MOVE THOSE DATES.  WE WOULD ADDRESS THOSE

5    WITH JUDGE MILLER DIRECTLY.  BUT WE'RE TALKING ABOUT THE ONES

6    PRIOR TO THOSE.

7           THE CLERK:  THAT'S NOT HOW IT WORKS.  ALL THOSE

8    DATES TRACK DIRECTLY FROM THE PRE-TRIAL CONFERENCE DATES.  SO

9    WE DON'T MOVE -- THE DISPOSITIVE MOTION DEADLINE AND THE

10   MEMORANDUMS OF CONTENTIONS OF FACT AND LAW AND THE PRE-TRIAL

11   ORDER, THEY ARE ALL DIRECTLY TIED TO THE PRE-TRIAL CONFERENCE

12   AND THE TRIAL DATE.  THOSE DON'T GET --

13          MR. CADENA:  I SEE.

14          THE CLERK:  SO THEY --

15          MR. CADENA:  THEN WE WOULD HAVE TO ADDRESS THAT WITH

16   JUDGE MILLER FIRST BEFORE ANY OF THESE OTHER DATES WERE

17   MOVED?

18          THE CLERK:  YEAH.  AND THEY ALWAYS GET MOVED THE

19   SAME AMOUNT BACK.  LIKE EVERYTHING IS ON A 28-DAY FILING

20   SCHEDULE AND WE ALWAYS ALLOT FOUR MONTHS PRIOR TO YOUR

21   PRE-TRIAL CONFERENCE IS WHEN DISPOSITIVE MOTIONS HAVE TO BE

22   FILED.  IT'S WHAT THE LOCAL RULES AND THE SCHEDULING IN THIS

23   DISTRICT IS.

24          THE COURT:  IT APPEARS TO ME, AND THIS JUST MIGHT BE

25   MY EXPERIENCE OF IT, IF WE WERE TO GRANT MR. CADENA'S MOTION,

1    WOULDN'T THAT NECESSARILY MOVE ALL THESE DATES?

2         THE CLERK:  BECAUSE YOU GUYS NOW HAVE A TRIAL DATE

3    IN, WHAT, OCTOBER?

4         MS. BEEKMAN:  SEPTEMBER 26TH CURRENTLY.

5         THE CLERK:  AND WHAT'S YOUR MOTION FILING DEADLINE

6    CURRENTLY?

7         MS. BEEKMAN:  ALL MOTIONS TO BE FILED JUNE 8TH OF

8    '11.

9         THE CLERK:  SO NOT NECESSARILY, BUT --

10        THE COURT:  YEAH.  BUT JUNE 8TH OF THIS YEAR; RIGHT?

11   BUT IF WE -- IF THE HEARING IS ON APRIL 8TH AND WE PUT THAT

12   OVER 45 DAYS --

13        THE CLERK:  WELL, 45 -- YOU MEAN 45 DAYS TO

14   DESIGNATED OR 45 DAYS FOR REPORTS TO BE SUBMITTED AND

15   EXCHANGED?

16        MS. BEEKMAN:  LET ME SPEAK TO THAT.  THIS IS LYNN

17   BEEKMAN.

18        ON THE ORIGINAL ORDER, THE SCHEDULING ORDER, WE HAD,

19   LET'S SEE, AFTER THEY WERE EXCHANGED, 77 DAYS AFTER THE

20   CERTIFICATION.  AND SO, YOU KNOW, WE -- AT A MINIMUM WE'D

21   WANT THAT.  I MEAN, THAT'S WHAT WE'RE ASKING FOR.  BUT WE

22   ACTUALLY ARE ASKING FOR A LITTLE BIT MORE THAN THAT BECAUSE

23   WE'RE THINKING THERE MIGHT BE A SITUATION WHERE THE JUDGE

24   TAKES IT UNDER SUBMISSION, AND SO THAT'S WHY WE ADDED SOME

25   TIME ON TO THE ORIGINAL DATES.

1          BUT IF YOU LOOK AT THE ORIGINAL SCHEDULING ORDER,

2    YOU KNOW, THE CLASS CERT WAS JANUARY 7TH AND THE EXPERT

3    REPORTS WERE TO BE EXCHANGED MARCH 26TH.

4          THE CLERK:  YEAH.  BUT THAT'S BECAUSE WE DIDN'T

5    TRACK -- THAT'S BECAUSE THOSE THINGS WEREN'T -- WE DON'T

6    TRACK EXPERTS FROM YOUR CLASS CERT.  THEY ARE NOT LINKED IN

7    THE SCHEDULE NECESSARILY.  THEY ARE LINKED TO FACT DISCOVERY.

8    WHEN FACT DISCOVERY CONCLUDES, THAT'S HOW WE SCHEDULE OFF

9    EXPERT DISCOVERY.  IT'S NOT BASED ON CLASS CERT, AND WHEN

10   THAT MOTION WAS FILED IS WHEN THE EXPERT DESIGNATIONS AND

11   REPORTS WERE DUE.  SO WE DESIGNATE 45 DAYS AFTER FACT

12   DISCOVERY CONCLUDES.

13         THE COURT:  RIGHT.  THE TWO OF THEM HAVE NOTHING TO

14   DO WITH EACH OTHER, AND SO THAT ARBITRARY COUNTING THE DAYS

15   ISN'T GOING TO WORK.  SO THE --

16         MR. CADENA:  THE PARTIES HAVE MET AND CONFERRED ON

17   THOSE DATES, YOUR HONOR, AND WE HAD PROPOSED SOME OF THOSE

18   DATES BASED ON WHAT THE NEEDS WERE BASED ON A COMPLEX CASE.

19   THAT WAS MY RECOLLECTION.

20         ISN'T THAT RIGHT, NANCY?

21         MS. SIMS:  WE MET AND CONFERRED, YOUR HONOR, AND WE

22   DID NOT DURING THE COURSE OF THOSE DISCUSSIONS TIE THE EXPERT

23   DEADLINES AT ALL TO THE CLASS CERTIFICATION.  WHAT WE DID WAS

24   SOMEWHAT MIRROR THE ORIGINAL SCHEDULE BY THE COURT AND KIND

25   OF PLAYED AROUND WITH SOME OF THE DATES.

1          BUT I WAS INVOLVED IN THOSE DISCUSSIONS DIRECTLY

2     WITH TRACEE LORENS, AND THE CLASS CERTIFICATION WAS NEVER

3     LINKED TO THE EXPERT DESIGNATION AND OTHER DETERMINATIONS.

4          THE COURT:  WHETHER IT IS OR ISN'T, AND I'M NOT

5     PAYING ATTENTION TO IT.  I'M PAYING ATTENTION TO THIS MOTION

6     BASED ON FINANCIAL BURDEN AND THE REPRESENTATIONS MADE BY

7     MR. CADENA AND MS. LORENS.  AND I'M JUST TRYING TO BE

8     EQUITABLE AND YET NOT SEND THIS CASE INTO FOREVER EVER LAND

9     AND NEVER GET RESOLVED.

10         MS. BEEKMAN:  YOUR HONOR, I WANTED TO SPEAK TO THAT

11    FACT DISCOVERY ISSUE.  AND THIS IS LYNN BEEKMAN AGAIN.

12         I WANTED TO REPORT OR LET THE COURT KNOW THAT ON

13    JANUARY 21ST, WE REQUESTED THE RIGHT TO FILE EX-PARTE PAPERS

14    TO EXTEND THAT FACT DISCOVERY DEADLINE.  AND IF THAT'S WHAT

15    YOU'RE USING TO TIE TOGETHER THE EXPERT DESIGNATIONS, THAT'S

16    IMPORTANT TO KNOW.

17         SO THAT WAS A FRIDAY.  IT WAS DURING A CONFERENCE

18    WITH ALEXA AND MS. SIMS AND TRACEE LORENS.  AND AT THAT POINT

19    WE WERE TOLD THAT IT WAS NOT GOING TO BE HEARD BECAUSE IT

20    WASN'T EXIGENT CIRCUMSTANCES.  AND THAT WAS DURING THE SAME

21    TIME FRAME WHERE WE HAD THE PROTECTIVE ORDER DEPOSITION

22    NOTICES.  SO THAT FOLLOWING MONDAY THERE WAS THE EX PARTE ON

23    THE DEPOSITION NOTICES.  BUT WE WERE DENIED THE RIGHT TO FILE

24    EX-PARTE PAPERS RELATING TO MOVING THE FACT DISCOVERY

25    DEADLINE.

1      THE COURT:  WELL, THANK YOU FOR THAT.  BUT THAT HAD

2   NOTHING TO DO WITH THIS MOTION AS FAR AS I CAN SEE.

3      SO THAT BEING SAID, AND CONTINUING MY TRAIN OF

4   THOUGHT BEFORE I WAS INTERRUPTED, THE HEARING DATE IS

5   APRIL 8TH; AND YOU WANT 45 DAYS AFTER THAT DATE.  AND I THINK

6   ALEXA ASKED A QUESTION, TO DO WHAT?  TO EXCHANGE EXPERT

7   WITNESS LISTS OR TO EXCHANGE REPORTS?  WHAT?

8      MR. CADENA:  THAT WOULD BE 45 DAYS TO EXCHANGE -- TO

9   DESIGNATE EXPERTS, YOUR HONOR.

10     THE COURT:  OKAY.  SO YOU WANT THAT TO DESIGNATE THE

11  EXPERTS AND START THE WHOLE EXPERT DISCOVERY PROCESS?

12     MR. CADENA:  YES, SIR.

13     MS. SIMS:  YOUR HONOR, MAY I BE HEARD ON THAT POINT?

14     THE COURT:  YES.

15     MS. SIMS:  YOUR HONOR, WE'VE ALREADY DESIGNATED

16  EXPERTS.  TWO DAYS AGO, THE PARTIES SERVED THEIR

17  DESIGNATIONS.  SO TO THE EXTENT AT THAT COURT DESIRES TO

18  CONTINUE THOSE DEADLINES, WE WOULD SUGGEST THAT WE SORT OF

19  PICK UP WHERE WE ARE NOW, WHICH IS CONTINUING WITH THE REST

20  OF THE SCHEDULE, BUT NOT CONTINUE IT AND START OVER, SINCE

21  THE PARTIES AT THIS POINT HAVE ALREADY DONE THEIR

22  DESIGNATIONS.

23     MR. CADENA:  WELL, WE HAD TO DO THE DESIGNATION,

24  YOUR HONOR, BECAUSE LAST WEEK WHEN I CALLED YOUR CHAMBERS, I

25  ASKED IF, GIVEN THAT WE HAVE THIS EX PARTE, IF WE COULD EVADE

1   THE DESIGNATION.  AND I WAS INFORMED BY ALEXA THAT, NO, WE

2   HAD TO DESIGNATE, AND WE WOULD DEAL WITH THE REQUEST FOR A

3   CONTINUANCE TODAY.

4        SO WE REALLY HAD NO OPTION, AND WE WERE SORT OF

5   PLACED IN THAT SITUATION BASED ON THE COURT'S REQUIREMENT

6   THAT WE SO DESIGNATE.  SO IT WAS NOT PART OF OUR PLAN OR

7   INTENTION, BUT WE DIDN'T WANT TO WAIVE OUR RIGHT TO

8   DESIGNATE.

9        THE COURT:  NO.  AND SHE PROPERLY INSTRUCTED YOU SO.

10  AND I SEE NO HARM, NO FOUL IN DESIGNATING EXPERTS.

11       OKAY.  WELL, IF ANYBODY WANTS TO SAY ANYTHING ELSE,

12  YOU CAN DO IT RIGHT NOW.  OTHERWISE, I'M GOING TO TAKE THIS

13  UNDER SUBMISSION, THINK ABOUT IT, CRUNCH SOME DATES HERE AND

14  COME OUT WITH A DECISION VERY QUICKLY.

15       ANYBODY WANT TO ADD ANYTHING BEFORE WE END THIS

16  HEARING?

17       MR. CADENA:  YEAH.  JUST ONE OTHER POINT, YOUR

18  HONOR.  WITH REGARD TO OBTAINING A COPY OF THE CLASS LIST,

19  WHAT WOULD THE COURT ADVISE THAT WE DO, GIVEN THAT OUR EX

20  PARTE WAS TAKEN OFF CALENDAR?

21       THE COURT:  YOU ARE COMING AT ME FROM LEFT FIELD ON

22  THIS ONE, MR. CADENA.  I DEALT WITH A CURATIVE NOTICE.  I

23  THINK THE WHOLE POINT OF THE CURATIVE NOTICE WAS TO SEND TO

24  THE WHOLE ENTIRE CLASS A LIST -- I MEAN, THE CURATIVE NOTICE

25  SO EVERYBODY GETS IT.  AND I THINK IT WAS THE DEFENSE THAT

1    WAS GOING TO SEND IT OUT.

2         MR. CADENA:  THAT'S CORRECT.  AND WHAT I'M SAYING IS

3    THAT WHEN WE DIDN'T GET ANY NOTICE FROM ANYBODY, WHETHER IT

4    HAD BEEN SENT OUT OR NOT, I CONTACTED THE COURT'S CHAMBERS

5    AND WAS ADVISED THAT WE WOULD FIND OUT WHEN IT WAS MAILED,

6    WHEN THE COURT ADVISED US PRESUMABLY THROUGH SOME SORT OF

7    ELECTRONIC NOTIFICATION.

8         AND SO I REQUESTED AN UPDATE, AND I WAS INFORMED

9    THAT THE DEFENDANTS WERE WORKING AS HARD AS THEY COULD,

10   BECAUSE THEY DIDN'T HAVE THE ENTIRE CLASS LIST ASSEMBLED.

11   AND SO WHAT WE CURRENTLY HAVE, IF THEY DIDN'T HAVE THE CLASS

12   LIST ASSEMBLED, AND THEY KNEW THIS WAS COMING, THEN WHAT WE

13   HAVE NOW IS NOT A COMPLETE CLASS LIST, WHICH THEY HAVE

14   REPRESENTED THAT THEY HAVE PRODUCED.  AND THAT'S SOMETHING

15   THAT WE WOULD LIKE TO ADDRESS.

16        THE CLERK:  HAVE YOU GUYS MET AND CONFERRED ON THAT

17   AND ASKED THEM TO SUPPLEMENT THE LIST AS ITS MOST CURRENT

18   VERSION?  BECAUSE IT SOUNDS LIKE THAT'S JUST A GENERAL

19   RULE 26 DISCLOSURE THAT THE DEFENDANTS NEED TO SUPPLEMENT.

20   AND BEFORE IT WOULD BE AN ACTUAL MOTION, IT WOULD NEED TO BE

21   MEET AND CONFER AND YOU WOULD NEED TO DO A FORMAL REQUEST TO

22   THEM OR NOT.  IT'S JUST THEIR ONGOING DUTY TO SUPPLEMENT.

23        MR. CADENA:  WE REQUESTED NUMEROUS TIMES FOR THE

24   CLASS LIST, AND IT'S ALWAYS BEEN DENIED.  AND WE'VE BEEN TOLD

25   THAT IT WAS PRODUCED A LONG TIME AGO, AS IN LAST YEAR.  AND

1    SO WE'RE TROUBLED THAT IT TOOK TWO WEEKS TO PUT TOGETHER THIS

2    CLASS LIST BECAUSE IT APPARENTLY HADN'T BEEN COMPILED.  AND

3    THAT'S WHY WE'RE CONCERNED THAT WE DON'T HAVE A COMPLETE

4    CLASS LIST.

5            IF MS. SIMS WILL AGREE TO PRODUCE THAT, THEN I THINK

6    THAT THIS ISSUE IS RESOLVED.

7            THE COURT:  MS. SIMS.

8            MS. SIMS:  I WOULD LIKE TO BE HEARD ON THIS ISSUE,

9    WHICH IS THIS IS THE FIRST TIME I'VE HEARD OF ANYTHING ABOUT

10   A REQUEST FOR A CLASS LIST FOR ABOUT CLOSE TO A YEAR, AT

11   LEAST SIX OR EIGHT MONTHS.  AT THAT TIME, MS. LORENS ASKED

12   FOR IT; WE DID FORWARD A COPY TO HER AT THAT POINT.  AND I

13   HAVE NOT HEARD ANY NEW REQUESTS FOR IT.

14           I'M HAPPY TO MEET AND CONFER WITH MR. CADENA.  IF HE

15   WISHES TO CONTACT ME AFTER THE CALL, I'M HAPPY TO DISCUSS IT

16   WITH HIM.

17           THE COURT:  ARE YOU HAPPY TO -- ARE YOU HAPPY TO

18   GIVE HIM A COPY OF THE LIST?

19           MS. SIMS:  WELL, YOUR HONOR, WE'VE PROVIDED LISTS IN

20   THE PAST, AND WE DON'T HAVE ANY ISSUE PROVIDING IT.  SO THIS

21   IS JUST THE FIRST TIME I'VE HEARD ABOUT IT.

22           THE COURT:  WILL YOU GIVE MR. CADENA A COPY OF THE

23   CLASS LIST?

24           MS. SIMS:  YES.  WE'LL BE GLAD TO.  AND, IN FACT,

25   YOUR HONOR, HE ACTUALLY ALREADY HAS IT, JUST TO BE CLEAR.

1   BECAUSE THE DOCUMENTS ARE PUBLIC AND SO HE DOES HAVE COPIES

2   OF IT THAT WE'VE ALREADY PRODUCED, AND THERE IS -- IT'S IN

3   THE PUBLIC DOMAIN.

4            MR. CADENA:  I DO NOT HAVE IT, YOUR HONOR.

5            THE COURT:  OKAY.  WELL, JUST A COURTESY COPY THEN,

6   MS. SIMS, PLEASE.

7            MS. SIMS:  YES.  THAT'S FINE, YOUR HONOR.

8            THE COURT:  MR. CADENA, ARE YOU SATISFIED?

9            MR. CADENA:  YES, YOUR HONOR.

10           THE COURT:  ANYTHING ELSE?  MR. CADENA, ANYTHING

11  ELSE?

12           MR. CADENA:  I THINK THAT'S IT FOR NOW, YOUR

13  HONOR.

14           THE COURT:  MS. SIMS?

15           MS. SIMS:  NOTHING ELSE, YOUR HONOR.  THANK YOU FOR

16  YOUR TIME.

17           THE COURT:  THANK YOU VERY MUCH.  EVERYONE HAVE A

18  NICE DAY.

19           THIS HEARING IS NOW CONCLUDED.

20           MR. CADENA:  THANK YOU.

21           THE COURT:  THANK YOU.

22           (PROCEEDINGS CONCLUDED.)

23                    -- OOOOO --

24

25

COMPUTER-AIDED TRANSCRIPTION

37

1        I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT

2   FROM THE ELECTRONIC SOUND RECORDING OF THE PROCEEDINGS IN THE

3   ABOVE-ENTITLED MATTER.

4

5   /S/CAMERON P. KIRCHER              2-18-11
    TRANSCRIBER                        DATE
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

COMPUTER-AIDED TRANSCRIPTION