1  L. TRACEE LORENS (150138) tracee@lorenslaw.com
   WAYNE ALAN HUGHES (48038) waynecloud@aol.com
2  LYNN M. BEEKMAN (149325) lynn@lorenslaw.com
   **LORENS & ASSOCIATES, APLC**
3  701 "B" Street, Suite 1400
   San Diego, CA 92101
4  Telephone: 619.239.1233
   Facsimile: 619.239.1178
5
   RAUL CADENA (185787) rcadena@cadenachurchill.com
6  NICOLE R. ROYSDON (262237) nroysdon@cadenachurchill.com
   **CADENA CHURCHILL, LLP**
7  701 "B" Street, Suite 1400
   San Diego, CA 92101
8  Telephone: 619.546.0888
   Facsimile:  619.923.3208
9
   Attorneys for Plaintiffs and all others similarly situated
10

11                  **UNITED STATES DISTRICT COURT**

12              **SOUTHERN DISTRICT OF CALIFORNIA**

13

14  SABRINA LAGUNA, an individual; CARLOS )   Case No.: 09-cv-02131-JM-BGS
    ACEVEDO, an individual; TERESA SALAS, an )
15  individual; and ROES 3-50 on behalf of themselves )   (*Assigned to Hon. Jeffrey T. Miller and*
    and in a representative capacity for all others )   *Hon. Bernard G. Skomal)*
16  similarly situated                        )
                                              )
17              Plaintiffs,                   )   **PLAINTIFFS' OPPOSITION TO**
                                              )   **DEFENDANTS COVERALL NORTH**
18                                            )   **AMERICA, INC., CNA HOLDING**
    v.                                        )   **CORPORATION, AND TED**
19                                            )   **ELLIOTT'S MOTION TO: (1)**
                                              )   **COMPEL ARBITRATION OF**
20  COVERALL NORTH AMERICA, INC., a)   **PLAINTIFFS LAGUNA AND SALAS'**
    Delaware Corporation; ALLIED CAPITAL)   **CLAIMS AND STAY THIS ENTIRE**
21  CORPORATION, a Maryland Corporation; ARES)   **ACTION PENDING ARBITRATION;**
    CAPITAL CORPORATION, a Maryland)   **AND (2) STRIKE ALL CLASS**
22  Corporation; CNA HOLDING CORPORATION, a)   **ALLEGATIONS IN THE FOURTH**
    Delaware Corporation; TED ELLIOTT, an)   **AMENDED COMPLAINT AS TO**
23  individual; and DOES 5 through 50 inclusive )   **PLAINTIFFS LAGUNA AND SALAS**
                                              )
24              Defendants.                   )   Date: August 8, 2011
                                              )   Time: 10:00 a.m.
25                                            )   Courtroom: 16
                                              )
26                                            )   Complaint Filed: August 8, 2008
                                              )   Trial Date: February 27, 2012
27  _____)

28

# TABLE OF CONTENTS

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   FACTUAL AND PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.  THE COURT SHOULD DENY DEFENDANTS' MOTION . . . . . . . . . . . . . . . . . . . . . 6

      A.  Defendants Have Waived their Right to Arbitrate. . . . . . . . . . . . . . . . . . . . . . . . .7

      B.  Plaintiffs' Claims are Not Within the Scope of the Arbitration Agreement. . . . . . . . .10

      C.  The Arbitration Agreement is Unconscionable.  . . . . . . . . . . . . . . . . . . . . . . . . . 11

          1.  The Arbitration Agreement is Procedurally Unconscionable. . . . . . . . . . . . . 11

          2.  The Arbitration Agreement is Substantively Unconscionable. . . . . . . . . . . . 13

              a.  Limitation of Remedies. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

              b.  Lack of Mutuality. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

              c.  Statute of Limitations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

              d.  Excessive Fees and Costs. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

              e.  No Knowing and Voluntary Waiver of Right to Jury Trial. . . . . . . . 22

      D.  The Arbitration Agreement Fails Due to Lack of Consent. . . . . . . . . . . . . . . . . . 23

          1.  Plaintiffs Should have Been Afforded an Opportunity to Conduct
              Limited-Arbitration Related Discovery Prior to Filing This Opposition. . . . . 23

IV.   THE COURT SHOULD DENY DEFENDANTS' MOTION TO STRIKE THE CLASS
      ALLEGATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

V.    THE COURT SHOULD DENY DEFENDANTS' MOTION TO STAY THE
      PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

VI.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

# TABLE OF AUTHORITIES

## SUPREME COURT CASES

*AT&T Mobility, LLC v. Concepcion,*
  131 S.Ct. 1740 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## FEDERAL CASES

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
  460 U.S. 1, 25 n.32 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Doctor's Assocs., Inc. v. Casarotto,*
  517 U.S. 681, 686 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Buckeye Check Cashing, Inc. v. Cardegna,*
  546 U.S. 440, 444-446 (2006)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*First Options of Chicago, Inc. v. Kaplan,*
  514 U.S. 938, 945 (1995)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Avedon Eng'g, Inc. v. Seatex,*
  126 F.3d 1279, 1287 (10th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Ticknor v. Choice Hotels Int'l, Inc.,*
  265 F.3d 931, 936-37 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,18

*Davis v. O'Melveny & Myers,*
  485 F.3d 1066, 1072 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . 7,10,18,19

*Van Ness Townhouses v. Mar Indus. Corp.,*
  862 F.2d 754, 758-759 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Fisher v. A.G. Becker Paribas Inc.,*
  791 F.2d 691, 694 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Park Place Assocs., Ltd.,*
  563 F.3d 907, 921(9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Cox v. Ocean View Hotel Corp.,*
  533 F.3d 1114, 1119-1121 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Hooper v. Advance America, Cash Advance Centers of Missouri, Inc.,*

ii

589 F.3d 917, 921 (8th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Lewallen v. Green Tree Servicing, L.L.C.,

    487 F.3d 1085, 1090, 1092 (8th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . 8

Kelly v. Golden,

    352 F.3d 344, 349-350 (8th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Laster v. AT&T Mobility LLC,

    584 F.3d 849 (9th Cir. 2009 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Smith v. Americredit Financial Services, Inc.,

    2009 U.S. Dist. LEXIS 115767 (S.D. Cal. Dec. 11, 2009) . . . . . . . . . . . . . . . . . . . 9,10

Carney v. Verizon Wireless Telecom, Inc.,

    2010 U.S. Dist. LEXIS 77636 (S.D. Cal. Aug. 2, 2010) . . . . . . . . . . . . . . . . . . . 10

Circuit City Stores, Inc. v. Mantor,

    335 F.3d 1101, 1106 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Circuit City Stores, Inc. v. Adams,

    279 F.3d 889, 893-895 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14,20

Soltani v. Western & Southern Life Ins. Co.,

    258 F.3d 1038, 1042-1045 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . 19

Green Tree Fin'l Corp.-Alabama v. Randolph,

    531 U.S. 79, 90 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Morrison v. Circuit City Stores, Inc.,

    317 F.3d 646, 668 (6th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Adams v. Philip Morris, Inc.,

    67 F.3d 580, 583 (6th cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Walker v. Ryan's Family Steakhouses, Inc.,

    400 F.3d 370 (6th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Wren v. RGIS Inventory Specialists,

    256 F.R.D. 180, 201 (N.D. Cal. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Bureerong v. Uvawas,

922 F.Supp. 1450, 1478 (C.D. Cal. 1996) ......................................... 24

*McPhail v. First Command Financial Planning, Inc.,*

247 F.R.D. 598, 604 (S.D. Cal. 2007) ........................................... 24

*Platte Anchor Bolt, Inc. v. IHI, Inc.,*

352 F.Supp.2d 1048, 1057 (N.D. Cal. 2004) ..................................... 24

*McLeod v. Ford Motor Co.,*

2005 U.S. Dist. LEXIS 17188, *2 (C.D. Cal. Apr. 14, 2005) ...................... 25

## STATE CASES

*Sonic-Calabasas, Inc. v. Moreno,*

51 Cal.4th 659, 694-695 (2011) ................................................ 6

*Cable Connection, Inc. v. DIRECT-TV., Inc.,*

44 Cal.4th 1334, 1358 (2008) ................................................. 6

*Romo v. Y-3 Holdings,*

87 Cal.App.4th 1153, 1158 (2001) ............................................. 6

*Parada v. Sup. Ct.,*

176 Cal.App.4th 1554, 1566 (2009) ........................................... 7,21

*Baker v. Osborne Development Corp.,*

159 Cal.App.4th 884, 893-894 (2008) .......................................... 7

*Dream Theater, Inc. v. Dream Theater,*

124 Cal.App.4th 547, 552 (2004) .............................................. 7

*Hunt v. Sup. Ct.,*

81 Cal.App.4th 901, 909 (2000) ............................................... 7

*Greenspan v. LADT, LLC,*

185 Cal.App.4th 1413, 1440 (2010) ............................................ 7

*Discover Bank,*

36 Cal.4th 148, 162 (2005) ................................................... 9

*Platt Pacific, Inc., v. Andelson,*

6 Cal.4TH 307 (1993) ........................................................ 9

*Cruz v. PacifiCare Health Sys., Inc.*,

    30 Cal.4th 303, 315-316 (2003) ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Brown v. Ralph's Grocery Company*,

    2011 Cal.App. LEXIS 902, *19-21 (Cal.Ct.App. July 12, 2011) . . . . . . . . . . . . . . . 10, 11

*Armendariz v. Foundation Health Psychcare Services, Inc.*,

    24 Cal.4th 83, 113 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,13,14,17,20

*Stirlen v. Supercuts, Inc.*

    (1997) 51 Cal.App.4th 1519, 1531 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,17

*24 Hour Fitness, Inc. v. Sup. Ct.*

    (1998) 66 Cal.App.4th 1199, 1212-1213. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Mercuro v. Sup. Ct.*

    (2002) 96 Cal.App.4th 167, 174-175. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,14,17

*A & M Produce Co. v. FMC Corp.*,

    135 Cal.App.3d 473, 491 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*California Grocers Assn. v. Bank of America*,

    22 Cal.App.4th 205, 214 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Szetela v. Discover Bank*

    (2002) 97 Cal.App.4th 1094, 1100 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Martinez v. Master Protection Corp.*

    (2004) 118 Cal.App.4th 107, 114. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Crippen v. Central Valley RV Outlet, Inc.*,

    124 Cal.App.4th 1159, 1165 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Abramson v. Juniper Networks, Inc.*,

    115 Cal.App.4th 638, 663 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Fitz v. NCR Corp.*,

    118 Cal.App.4th 702, 721 (2004) ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13,18

*Little v. Auto Stiegler, Inc.*

    (2003) 29 Cal.4th. 1064, 1071 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Lhotka v. Geographic Expeditions, Inc.*

 (2010) 181 Cal.App.4th 816, 824-826 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Higgins v. Sup. Ct.,*

 140 Cal.App.4th 1238, 1246 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14,18

*Nyulassy v. Lockheed Martin Corp.,*

 120 Cal.App.4th 1267, 1287 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17,18,19

*California Teachers Association v. State of California,*

 20 Cal.4th 327, 355-356 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**FEDERAL STATUTES**

*9 U.S.C. § 1* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*9 U.S.C. § 2.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,7

**OTHER AUTHORITY**

California Code of Civil Procedure § 1670.5. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Code of Civil Procedure *§ 337(1)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

B&P Code *§ 17208)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Labor Code section 1194.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Civ. Code § 1550.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## I.    INTRODUCTION

Almost three years after this case was brought and forty-four days after the U.S. Supreme Court's ruling in *AT&T Mobility, LLC v. Concepcion*, 131 S.Ct. 1740 (2011), Defendants have moved to compel arbitration of Laguna and Salas' claims.[1] Between the time that *Concepcion* was issued and the date Defendants filed this motion (even though stating they would immediately file this motion) Plaintiffs were required to (1) respond to fourteen briefs filed by Defendants in response to Plaintiffs' class certification reply, consisting of 206 pages, including declarations and exhibits; and (2) prepare an extensive and time consuming motion establishing due diligence by Plaintiffs' counsel during the pendency of this action, consisting of 160 total pages (Doc. No.199), to which Defendants filed their opposition of 50 pages on June 1, 2011 (Doc. No.221), after which Plaintiffs filed their reply of 84 pages (Doc. No. 204)[2]. In addition, Defendants participated in ongoing litigation regarding discovery, which included numerous meet and confer hearings with Magistrate Skomal's clerk, as well as nearly daily communications regarding discovery and other matters between the issuance of *Concepcion* and Defendants' filing of the Motion to Compel on June 10, 2011. If Defendants had not waived their right to compel arbitration between the filing of Plaintiffs' Complaint and the date of the *Concepcion* decision, they certainly waived their right to compel arbitration by allowing this litigation to continue at the level that it did **following the** ***Concepcion* decision.** Although Defendants argue it would have been futile to bring a motion to

---

[1] Notably, Defendants claim that they "do not presently seek to compel arbitration of the claims of Plaintiff Carlos Acevedo, as Acevedo has not produced a copy of his written Janitorial Franchise Agreement with Coverall, and Coverall does not have in its possession a written agreement to arbitrate with Acevedo." Motion, p. 1:26-28, n.1. **This statement is so misleading as to be an intentional misrepresentation to this Court.** It implies Defendants sought Acevedo's Janitorial Franchise Agreement ("JFA") and that Plaintiffs are withholding evidence. In fact, Defendants have Acevedo's JFA, and previously lodged it with their Request For Judicial Notice in Support of Motion to Dismiss Plaintiffs Third Amended Complaint (Doc. No. 78). That agreement does not contain an arbitration clause.

[2] Defendants submit no evidence whatsoever to explain why they waited three years to file this Motion, or why this Motion is timely after allowing 500 pages of briefing to occur post-*Concepcion*, causing Plaintiffs to incur an additional estimated $341,866.00 in attorneys' fees and costs.

-1-

1    compel arbitration earlier in the case[3], the body of law that existed in California prior to

2    *Concepcion* regarding class action waivers explicitly recognized that not all class action waivers

3    were *per se* unconscionable. They even filed a Sur Reply regarding the class certification motion

4

5    (which had been taken off-calendar months earlier) **after** filing the instant motion (Doc. No. 208).

6        More importantly, Defendants have not submitted any evidence establishing the threshold

7    issue of whether or not the parties agreed to arbitrate this case. *See Avedon Eng'g, Inc. v. Seatex*,

8    126 F.3d 1279, 1287 (10th Cir. 1997). Here, Defendants refuse to produce copies of the arbitration

9    agreements for the putative class, while at the same time seeking to stay the action for the <u>entire</u>

10

11   putative class, *as well as* strike <u>all</u> class allegations in the Fourth Amended Complaint ("FAC").

12   "The existence of an agreement to arbitrate is a threshold matter which must be established before

13   the FAA can be invoked." *Avedon*, 126 F.3d at 1287. Defendants refuse to produce any evidence

14   they have arbitration agreements with anyone beyond Ms. Laguna and Ms. Salas (the Court should

15   note Defendants do not even submit declarations or affidavits to the effect that they have arbitration

16

17   agreements with anyone beyond Ms. Laguna and Ms. Salas) and have not submitted any evidence

18   to meet their burden of proving that arbitration agreements exist for any other putative class

19   member. Plaintiffs sought limited discovery, to include production of the arbitration agreements

20   for the putative class, in June 2011, pursuant to a long line of cases allowing for such discovery.

21   (Doc. No. 212). However, that discovery request has not yet been ruled on. Nonetheless, it is

22   undisputed that the defendants have failed to produce arbitration agreements for anyone other than

23

24   Laguna and Salas, yet seek to strike all class allegations and Stay the action for the entire putative

25   class. Their Motion must be denied on that basis alone, as the <u>existence</u> of the arbitration

26   agreements is a statutory <u>prerequisite</u> to granting the Motion. Furthermore, the arbitration

27

28

---

[3] This assertion is, unsupported by any declaration from defense counsel.

1 | agreements, as to Laguna and Salas, are invalid, unenforceable, and unconscionable.

## II.    FACTUAL AND PROCEDURAL BACKGROUND[4]

Plaintiffs original complaint was filed on August 8, 2008.   (See "Lorens Decl.").   On October 3, 2008, Coverall demurred and filed a Motion to Strike. *See id.* The demurrer was decided on December 12, 2008. Plaintiffs filed a First Amended Complaint on January 9, 2009. Coverall answered on February 13, 2009, and did not raise the existence of the arbitration agreement as an affirmative defense. See **Exhibit 1** to Plaintiffs' RJN. In the meantime, Plaintiffs served discovery requests, including interrogatories, document requests, and requests for admissions, to which Coverall responded. Lorens Decl. On February 27, 2009, Plaintiffs and Coverall appeared for a CMC, prior to which both parties filed CMC statements. *See id.*

Plaintiffs deposed Coverall's Person(s) Most Qualified ("PMQs") on March 4 and 5, 2009. *See id.* On May 26 and 27, 2009, Coverall deposed Plaintiff Sabrina Laguna. *See id.* On August 20, 2009, Plaintiffs filed their Second Amended Complaint ("SAC") adding Allied Capital Corporation ("Allied") as a defendant. *See id.* Coverall had met and conferred with Plaintiffs regarding filing the SAC and the parties had stipulated Plaintiffs could file the SAC without the need for a noticed motion. *See id.*

Allied removed this action to this Court on September 29, 2009. (Doc. No. 1.) Shortly after its removal, Allied filed a motion to dismiss Plaintiff's SAC (Doc. No. 4), but did not raise arbitration as an issue, which this Court denied on December 18, 2009. (Doc. No. 10.) Allied answered Plaintiffs' SAC in January 2010, and, like Coverall, never raised arbitration as an affirmative defense. (Doc. No. 11.) On April 16, 2010, Plaintiffs, Coverall, and Allied appeared for an ENE conference (Doc. No. 22.).   On May 24, 2010, Plaintiffs, Coverall, and Allied

---

[4] **Defendants' summary of the status of litigation omits much of the litigation in which Defendants engaged.**

exchanged Rule 26 disclosures. *See id.* In the meantime, Plaintiffs served discovery on Coverall and Allied, the majority of which Coverall and Allied objected to, and met and conferred with Coverall and Allied for several months. *See id.* Plaintiffs and Coverall also met and conferred for approximately five months regarding scheduling PMQ depositions. *See id.*

On July 23, 2010, the parties filed a Joint Motion for Determination of Discovery Dispute Regarding the Miya Deposition (Doc. No. 28). On August 4, 2010, Plaintiffs filed a Motion for Leave to File Third Amended Complaint. (Doc. No. 34.) Plaintiffs sought to add Ares Capital Corporation ("Ares"), CNA Holding Corporation ("CNA Holding"), and Ted Elliott ("Mr. Elliott") as defendants, Carlos Acevedo and Teresa Salas as class representatives, two new causes of action, and a joint employer/joint enterprise theory of liability. The Court granted this Motion in its entirety on October 15, 2010. (Doc. No. 60.) Neither Coverall nor Allied ever raised arbitration in their opposition to Plaintiffs' Motion to Amend.

On August 18, 2010, Plaintiffs filed a Motion for Curative Notice. (Doc. No. 35.) On August 27, 2010, Coverall moved *ex parte* for a continuance of the deadline for filing their opposition to the Motion for Curative Notice (Doc. No. 36), which the Court granted on September 3, 2010. (Doc. No. 44.) On November 20, 2010, the Court granted Plaintiffs' Motion for Curative Notice in its entirety. (Doc. No. 88.) On September 1, 2010, Coverall and Allied took the deposition of Claire Mount, a putative class member, and on September 16, 2010, Coverall and Allied took the deposition of Edgar Bilbao, another putative class member. See Lorens Decl.

On August 31, 2010, Plaintiffs, Coverall, and Allied filed a Joint Motion regarding the Class Certification Briefing Schedule and for Approval of a Revised Scheduling Order (Doc. No. 39), which the Court granted on September 10, 2010. (Doc. No. 48.) On September 10, 2010, Plaintiffs and Coverall filed a Joint Motion to Resolve Discovery Dispute, (Doc. No. 51), which was granted in part and denied in part on October 15, 2010. (Doc. No. 59.)

-4-

On September 16, 2010, Plaintiffs filed an Objection to Order on Discovery Dispute regarding Miya Deposition. (Doc. No. 55.) On October 25, 2010, Plaintiffs filed their TAC. (Doc. No. 147.) Plaintiffs filed their Motion for Class Certification on November 15, 2010. (Doc. No. 75.) Coverall and CNA Holding filed a motion to dismiss the TAC on the same day, as did Allied and Ares (Doc. Nos. 76-77). On November 29, 2010, Ted Elliott moved *ex parte* for an extension of time to respond to the TAC (Doc. No. 86), which the Court granted on December 10, 2010. (Doc. No. 94.) On December 20, 2010, Mr. Elliott moved to dismiss the TAC. (Doc. No. 96.) None of the defendants raised arbitration in these motions to dismiss. On February 14, 2011, the Court granted the motions to dismiss in part and denied them in part. (Doc. No. 132.)

On December 1, 3, and 6, 2010, Defendants took the depositions of Teresa Salas, Carlos Acevedo, and Sabrina Laguna again, respectively. *See id.* Defendants and Allied/Ares also propounded 443 discovery requests on the class representatives. *See id.*

On December 2, 2010, Defendants requested *ex parte* that they be given additional time to file their opposition to Plaintiffs' motion for class certification (Doc. No. 89), which the Court granted on December 10, 2010. (Doc. No. 95.) On January 21, 2011, Defendants sent a subpoena to Disneyland requesting Teresa Salas' time records and job application, which Plaintiffs moved to quash on January 28, 2011. On January 27, 2011, the parties filed a Joint Motion to Resolve Dispute Regarding Issues "Attendant" to Issuance of Curative Notice. (Doc. No. 111.)

Plaintiffs took the deposition of Ted Elliott in February 2011 in Florida. Lorens Decl. Plaintiffs filed their Fourth Amended Complaint ("FAC") on March 7, 2011 (Doc. No. 147), which Defendants moved to dismiss on March 24, 2010. (Doc. No. 162.) They again failed to raise arbitration as an issue. On March 18, 2011, Defendants filed their opposition to Plaintiffs' class certification motion (Doc. No. 158), and on April 1, 2011, Plaintiffs filed their reply. (Doc. No. 168.) On April 18, 2011, Defendants filed fourteen briefs, including evidentiary objections and

-5-

1  motions to strike, in response.  (Doc. Nos. 174-186.)  Plaintiffs filed thirteen responses to

2  Defendants' fourteen briefs. (Doc. Nos. 188-198, 206.)[5]  On May 19, 2011, Plaintiffs filed a

3
4  Motion for Limited Fact Discovery and to Re-Open and Complete the Deposition of Ted

5  Elliott(Doc. No. 199), which Defendants opposed on June 1, 2011 (Doc. No. 201.).

6  Since Defendants filed this Motion on June 10, 2011 (Doc. No. 205), they have continued

7  litigating this case by filing a sur-reply to Plaintiffs' request for judicial notice in support of their

8  class certification motion (Doc. No. 208) on June 15, 2011.

9
   **III.    THE COURT SHOULD DENY DEFENDANTS' MOTION**
10
11  The FAA governs arbitration agreements in contracts involving transactions in interstate

12  commerce. *9 U.S.C. § 1*; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25

13  n.32 (1983). Pursuant to *Section 2* of the FAA, arbitration agreements "shall be valid, irrevocable,

14  and enforceable, save upon such grounds that exist at law or in equity for the revocation of any

15  contract." *9 U.S.C. § 2.*  In the absence of a contract consenting to arbitrate, there is no basis to

16  compel arbitration. *Stolt-Nielsen S.A. v. AnimalFeeds Intl. Corp.*, 130 S.Ct. 1758, 1773-74 (2010).

17  The enforceability of an arbitration agreement is dependent on the consent of the parties thereto.

18
19  *Sonic-Calabasas, Inc. v. Moreno*, 51 Cal.4th 659, 694-695 (2011); *Cable Connection, Inc. v.*

20  *DIRECT-TV., Inc.*, 44 Cal.4th 1334, 1358 (2008). Thus, when presented with a motion to compel

21  arbitration, a court's first task is to determine whether, in fact, the parties have agreements to

22  arbitrate the dispute. *See, e.g. Romo v. Y-3 Holdings*, 87 Cal.App.4th 1153, 1158 (2001). Here,

23
24  while the existence of the agreement is a statutory prerequisite to granting a motion to compel

25  arbitration, and a defendant bears the burden of proving the existence of the agreements,

26

27
   [5] The *Concepcion* decision was issued on April 27, 2011, and while Defendants kept threatening to move to
28  compel arbitration, they simultaneously refused to stay this litigation (although Plaintiffs made numerous requests for
   a stay due to ongoing settlement negotiations) and forced the litigation to continue for another six weeks.

1  Defendants have produced only two arbitration agreements, i.e., for Laguna and Salas.

2       Federal courts rely on state law when addressing issues of contract validity and

3  enforceability. *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 936-37 (9th Cir. 2001). Thus,

4  generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied

5  to invalidate arbitration agreements without contravening *Section 2* of the FAA. *Id.* at 937 *citing*

6  *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686 (1996). Issues concerning the existence of

7  an enforceable arbitration agreement are for the court's decision. *See Buckeye Check Cashing, Inc.*

8  *v. Cardegna*, 546 U.S. 440, 444-446 (2006); *see also Davis v. O'Melveny & Myers*, 485 F.3d 1066,

9  1072 (9th Cir. 2007) ("When the crux of the complaint is not the invalidity of the contract as a

10  whole, but rather the arbitration provision itself, then the federal courts [as opposed to the

11  arbitrator] must decide whether the arbitration provision is invalid and unenforceable under 9

12  U.S.C. § 2." (brackets in original; internal quotes omitted)).[6]

13  **A.**   **Defendants Have Waived their Right to Arbitrate.**

14       The right to compel arbitration arises from the parties' contract and, as with other

---

[6] Plaintiffs anticipate Defendants will argue the arbitration agreement altered the Court's authority to determine issues of arbitrability, as they have taken such a position in their opposition to Plaintiffs' request for limited arbitration discovery. However, the arbitration agreements here do not meet the heightened standard that must be satisfied to vary the rule that the court decides the gateway issue of arbitrability. The JFA's (see Exhibits A & B to Defendants' Request for Judicial Notice, ¶ 21(A) (Doc. No. 205-2)) upon which Defendants rely contain a severability clause that uses the phrase "court of competent jurisdiction," rather than the term "arbitrator," which establishes the Court has the authority to decide whether the arbitration agreement is unenforceable. (JFA, ¶ 28.) Because there is ambiguity within the arbitration agreement, the court must decide the arbitrability issue, especially since ambiguities should be construed against Defendants, the drafter of the agreement. *See Parada v. Sup. Ct.*, 176 Cal.App.4th 1554, 1566 (2009) *quoting Baker v. Osborne Development Corp.*, 159 Cal.App.4th 884, 893-894 (2008) ("'Although one provision of the arbitration agreement stated that issues of enforceability or voidability were to be decided by the arbitrator, another provision indicated that the court might find a provision unenforceable.'"); *see also Dream Theater, Inc. v. Dream Theater*, 124 Cal.App.4th 547, 552 (2004) *citing First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995); *Hunt v. Sup. Ct.*, 81 Cal.App.4th 901, 909 (2000); *Greenspan v. LADT, LLC*, 185 Cal.App.4th 1413, 1440 (2010) *citing First Options*, 514 U.S. at 943-945 (finding that parties may reserve to the arbitrator the exclusive authority to determine gateway issues, but only if there is clear and unmistakable evidence of such an agreement, and when a contract is ambiguous regarding the arbitrator's power to determine such issues, it cannot satisfy the clear and unmistakable standard). Furthermore, in their Motion, Defendants specifically state "a motion to compel arbitration requires this Court to determine: (1) whether there is a valid  agreement to arbitrate . . ." Motion, p. 7:14-15. Defendants are equitably estopped from now asserting a contradictory argument.

contractual rights, is subject to waiver. *See Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 758-759 (9th Cir. 1988). Such waiver may be express or implied from the parties' conduct. *See Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986). A party seeking to prove waiver of a right to arbitration must demonstrate "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 921(9th Cir. 2009). It is for the court to decide whether a party has waived its right to arbitrate. *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119-1121 (9th Cir. 2008). "A party acts inconsistently with its right to arbitrate if the party 'substantially invokes the litigation machinery before asserting its arbitration right.'" *Hooper v. Advance America, Cash Advance Centers of Missouri, Inc.*, 589 F.3d 917, 921 (8th Cir. 2009) (finding that defendant substantially invoked litigation machinery where it filed extensive and exhaustive motion to dismiss in which it asserted plaintiffs had failed to state claims for relief and sought a final decision from the district court upon the parties' entire dispute) *quoting Lewallen v. Green Tree Servicing, L.L.C.*, 487 F.3d 1085, 1090, 1092 (8th Cir. 2007) (finding a request to dispose of a case on the merits before reaching arbitration "is inconsistent with resolving the case through arbitration."). "Although prejudice manifests itself in myriad ways, '[p]rejudice results when . . . parties . . . litigate substantial issues on the merits, or when compelling arbitration would require a duplication of efforts.'" *Hooper*, 589 F.3d at 923 *quoting Kelly v. Golden*, 352 F.3d 344, 349-350 (8th Cir. 2003).

Defendants knew of their right to compel arbitration, as they assert in their Motion they "chose not to file an earlier motion to compel arbitration of Plaintiffs' claims." Motion, p. 1:17-19. Yet, Defendants offer no evidence regarding their reasons for failing to file the Motion earlier in the litigation. This Court should not rely on their unsupported claim that they thought it would

be futile to move for arbitration, especially because the law as it existed would not have conclusively rendered the arbitration agreements at issue unenforceable. In fact, in claiming it would have been futile for them to move to compel arbitration prior to *Concepcion*, Defendants fundamentally mischaracterize California's *Discover Bank* rule. In *Discover Bank*, the California Supreme Court held a waiver of class wide arbitration in a consumer contract of adhesion *may* be unconscionable under certain circumstances. Specifically, the court concluded, "**We do not hold that all class action waivers are necessarily unconscionable.**" *Discover Bank*, 36 Cal.4th 148, 162 (2005) (emphasis added). The principle that not all class action waivers are unconscionable and, thus, unenforceable was further fleshed out in *Smith v. Americredit Financial Services, Inc.*, 2009 U.S. Dist. LEXIS 115767 (S.D. Cal. Dec. 11, 2009), where defendant's motion to compel arbitration, despite the fact that the arbitration clause contained a class action waiver, was granted. To wit:

> [U]nder *Discover Bank*, **arbitration provisions that contain class action waivers are not *per se* unconscionable.** *Smith*, 2009 U.S. Dist. LEXIS 115767 at *17-18 (emphasis added).

The *Smith* decision is crucially important because it came <u>after</u> the Ninth Circuit's holding in *Laster v. AT&T Mobility LLC*, 584 F.3d 849 (9th Cir. 2009) that the FAA did not preempt California law, specifically the *Discover Bank* rule. Notably, the Ninth Circuit's decision in *Laster* did not come down until October 27, 2009, <u>more than a year after this case was originally filed</u> in state court in August 2008.[7]

---

[7] The California Supreme Court in *Platt Pacific, Inc., v. Andelson*, 6 Cal.4TH 307 (1993) held that by failing to file a demand for arbitration within the time specified in the arbitration agreement, the parties forfeit their right to arbitrate the dispute. Here, defendants arbitration agreement states. . ."All controversies, disputes or claims. . .shall be submitted promptly for arbitration." (JFA, ¶21(A).) At ¶22 of the JFA, the contract states the claims ". . .shall be commenced within two years from the occurrence of the facts giving rise to such claim or action, or such claim or action shall be barred." Defendants did not comply with the terms of their own arbitration agreement by either "promptly" or "within two years" petitioning for arbitration. Pursuant to *Platt* when the parties agreed that a demand for arbitration must be made within a certain time, that demand is a condition precedent that <u>must be performed before the contractual duty to submit to arbitration arises</u>. *Platt*, 6 Cal.4th at 313-314

-9-

Moreover, once the Supreme Court granted certiorari of *Laster* in *Concepcion*, 130 S.Ct. 3322, on May 24, 2010, Defendants should have at a minimum moved to stay the proceedings. *See, e.g., Carney v. Verizon Wireless Telecom, Inc.*, 2010 U.S. Dist. LEXIS 77636 (S.D. Cal. Aug. 2, 2010) (granting motion to stay proceedings pending the outcome of *Concepcion*). This would have given Plaintiffs notice Defendants intended to arbitrate if the decision in *Concepcion* was in their favor. Instead, Defendants allowed Plaintiffs to incur significant fees preparing for class certification (strong evidence of waiver, as the Defendants "substantially invoked" the litigation machinery), a procedural mechanism they now wish to abate altogether.

Further, Defendants have acted inconsistently with their right to arbitrate by engaging in vigorous litigation, even after the *Concepcion* Decision. Due to Defendants' inconsistent acts, Plaintiffs will be substantially prejudiced if Defendants' Motion is granted.[8]

**B.     Plaintiffs' Claims are Not Within the Scope of the Arbitration Agreement.**

Plaintiffs' claims for permanent injunctive relief that will benefit the general public are not arbitrable. Claims for injunctive relief under California's *B&P §§17200* and *17500* are designed to protect the public at large from further deceptive business practices are not arbitrable. *Cruz v. PacifiCare Health Sys., Inc.*, 30 Cal.4th 303, 315-316 (2003); *Smith*, 2009 U.S. Dist. LEXIS 115767, *22-23. "Actions seeking public injunctions cannot be subject to arbitration even under a valid arbitration clause." *Davis*, 485 F.3d at 1080. Claims seeking public injunctions for the benefit of the general public do not conflict with the purposes of the FAA. *See, e.g., Brown v.*

---

[8]Defendants claim even though CNA Holding and Ted Elliott are not signatories to the JFA, they still may compel arbitration of Laguna's and Salas' claims against them. Motion, p. 10:20-28. However, Defendants are judicially estopped from positing that argument because they took a contradictory position in their opposition to Plaintiffs' motion for class certification by arguing that "[t]he JFAs are solely between Coverall and the franchisees – neither Ted Elliott, CNA Holding, Allied nor Ares are parties to the agreements." (Doc. No. 158, p. 4, n.4.) Furthermore, the JFA's specifically provide that "[o]nly Coverall (and its officers, directors, agents and/or employees) and Franchisee . . . may be parties to any arbitration proceeding described in this Paragraph 21.A." (JFA, ¶21(A)(11).)

*Ralph's Grocery Company*, 2011 Cal.App. LEXIS 902, *19-21 (Cal.Ct.App. July 12, 2011).

In the FAC, Plaintiffs seek to permanently enjoin Defendants' misleading advertising and unfair business practices "on behalf of all members of the general public who are, have been, or may be subjected to these unlawful, unfair and fraudulent business acts and practices. (FAC, ¶ 124; see also FAC, ¶¶ 169, 173, 174, and the prayer.) Accordingly, Plaintiffs' requests for public injunctive relief are not subject to arbitration and must remain before this Court.

### C.     The Arbitration Agreement is Unconscionable.

Notwithstanding Defendants' clear waiver of their right to arbitrate and the fact that certain of Plaintiffs' claims are not within the scope of the arbitration agreement, the arbitration agreement is also invalid and unenforceable because it is unconscionable.  Under California law, courts may refuse to enforce any contract found "to have been unconscionable at the time it was made," or may "limit the application of any unconscionable clause." *Cal. Civ. Code § 1670.5.*

The unconscionability analysis begins with an inquiry into whether the contract is one of adhesion. *See Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83, 113 (2000). An adhesion contract is a "standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Id.* at 113 (citation omitted).  An adhesion contract is unconscionable when both procedural and substantive unconscionability are present. *Id.* at 114; *see also Stirlen v. Supercuts, Inc.* (1997) 51 Cal.App.4th 1519, 1531; *24 Hour Fitness, Inc. v. Sup. Ct.* (1998) 66 Cal.App.4th 1199, 1212-1213.  Procedural and substantive unconscionability, however, "need not be present in the same degree." *Armendariz*, 24 Cal.4th at 114.   When great substantive unconscionability is present, less procedural unconscionability is required before the agreement will be invalidated. *Id.; see also Mercuro v. Sup. Ct.* (2002) 96 Cal.App.4th 167, 174-175.

### 1.     The Arbitration Agreement is Procedurally Unconscionable.

-11-

Procedural unconscionability concerns the manner in which the contract was negotiated and the parties' circumstances at that time. *A & M Produce Co. v. FMC Corp.*, 135 Cal.App.3d 473, 491 (1982). Procedural unconscionability focuses on two factors, oppression and surprise. *Id.* at 486. The oppression component arises from an inequality of bargaining power and an absence of real negotiation or a meaningful choice on the part of the weaker party. *California Grocers Assn. v. Bank of America*, 22 Cal.App.4th 205, 214 (1994). "When the weaker party is presented the clause and told to 'take it or leave it' without the opportunity for meaningful negotiation, oppression, and therefore procedural unconscionability, are present." *Szetela v. Discover Bank* (2002) 97 Cal.App.4th 1094, 1100; *Martinez v. Master Protection Corp.* (2004) 118 Cal.App.4th 107, 114. A "meaningful opportunity" to negotiate or reject the terms of a contract requires, at a minimum, that a party have "reasonable notice of (the) opportunity to negotiate or reject the terms of a contract, and . . . an actual, meaningful, and reasonable choice to exercise that discretion." *Circuit City Stores, Inc. v. Mantor*, 335 F.3d 1101, 1106 (9th Cir. 2003). "Surprise involves the extent to which the terms of the bargain are hidden in a 'prolix printed form' drafted by a party in a superior bargaining position." *Crippen v. Central Valley RV Outlet, Inc.*, 124 Cal.App.4th 1159, 1165 (2004) (citation omitted).  When a contract is found to be oppressive, awareness of its terms, or lack of surprise, does not preclude a finding of procedural unconscionability. *Abramson v. Juniper Networks, Inc.*, 115 Cal.App.4th 638, 663 (2004).

In the present case, the arbitration agreement constitutes an adhesion contract and is highly unconscionable from a procedural standpoint. Both Laguna and Salas are native Spanish speakers, with very limited ability to speak or read English, and yet both of their JFA's, including the arbitration provisions contained therein, are in English. In fact, Defendants had to place "X's" on pages 1 and 24 of the JFA to show Plaintiff Laguna where to sign because she could not read the document! Also, all putative class members deposed in this case have required translators.

-12-

Furthermore, the arbitration agreement is imposed as a condition of purchasing a "franchise" and is non-negotiable in that it is presented on a take it or leave it basis. The arbitration agreement is at almost the very end of a twenty-four page document, and is in extremely small typeface. There is nothing to set the arbitration agreement apart from the other provisions of the JFA, nor is there anything about the arbitration agreement that would bring it to the attention of a potential "franchisee" such that he/she would be aware that he/she was waiving important rights. In fact, the arbitration agreement is not even its own paragraph, nor does it have a conspicuous heading in larger typeface. Rather, it is contained in 10-point font within the Additional Remedies for Breach section.

Moreover, the arbitration agreement is unconscionable because it provides the arbitration shall be subject to "the then current Rules of the American Arbitration Association for Commercial Arbitration." (JFA, ¶ 21(A)(1).) However, Defendants did not attach a copy of these rules to the arbitration agreement or to the JFA, thereby putting the burden on the "franchisee" to obtain the rules and determine what they provide. *See Fitz v. NCR Corp.*, 118 Cal.App.4th 702, 721 (2004) (determining that arbitration agreements that incorporate the rules of an arbitration service provider, such as AAA, may be procedurally unconscionable if the adhering party is not provided a copy of the rules in advance, because the adhering party is then forced to go to another source to learn the full ramifications of the arbitration agreement). Therefore, the arbitration agreement is procedurally unconscionable and should not be enforced.

### 2.    The Arbitration Agreement is Substantively Unconscionable.

Substantive unconscionability focuses on the terms of the agreement and whether those terms are "overly harsh" or "one-sided." *See Armendariz*, 24 Cal.4th at 114; *Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th. 1064, 1071; *Lhotka v. Geographic Expeditions, Inc.* (2010) 181 Cal.App.4th 816, 824-826 (finding that arbitration provision was substantively unconscionable for

-13-

numerous reasons, including limits on damages, indemnity provision calling for payment of company's legal fees in certain circumstances, absence of agreement as to sharing of arbitration costs, and lack of mutuality).  As stated above, where there is a high level of procedural unconscionability, a court need not find much substantive unconscionability to find an agreement to arbitrate unenforceable, and vice versa.  *Armendariz*, 24 Cal.4th at 114; *Mercuro*, 96 Cal.App.4th at 174-175. Here, the arbitration agreement is substantively unconscionable because it limits Laguna's and Salas' remedies, it shortens their statute of limitations, it prohibits injunctive relief, it prohibits joinder (and thus when a husband and wife purchase a JFA, as two partners, they must arbitrate separately), it prohibits tolling, it lacks mutuality and is one-sided, and it requires them to incur excessive fees and costs that they would not incur in litigation. *See Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 893-895 (finding that a mandatory dispute resolution agreement was procedurally unconscionable because it was a "contract of adhesion," and substantively unconscionable because it forced the employee to arbitrate all employment-related claims with no such restriction on the employer, limited the relief available to the employee, required the employee to split the arbitrator's fees with the employer, and imposed a strict one-year statute of limitations on arbitrating claims).

### a.   Limitation of Remedies.

The arbitration agreement limits remedies solely to monetary relief, and in the event that Defendants fail to meet their obligations, Plaintiffs' sole remedy is a small portion of the price they paid, minus inflated deductions set by Coverall. (JFA, ¶ 8.) These restrictions on remedies render the arbitration agreement invalid as an adhesive contract. *See Armendariz*, 24 Cal.4th at 118; *see also Higgins v. Sup. Ct.*, 140 Cal.App.4th 1238, 1246 (2006) (finding arbitration agreement invalid where party drafting adhesive agreement could seek injunctive relief while adhering party was restricted to monetary damages). Paragraph 8 of the JFA provides the

-14-

sole remedy in the event Defendants default on their Initial Business obligations. Pursuant to Paragraph 8(A)(1), Defendants shall be obligated to refund amounts only as follows:

> The monthly dollar volume of Initial Business (I) not timely offered by Coverall to Franchisee under Paragraph 4A(I); or, (ii) not unreasonably refused by Franchisee under Paragraph 4A(ii); or (iii) not replaced by Coverall under Paragraph 4B, as the case may be, shall (a) be multiplied by three (3.0) - the resultant figure shall be referred to as "the Gross Recalculated Amount;" (b) The current replacement cost of Franchisee's starter kit shall be subtracted from the Gross Recalculated Amount - the resultant figure shall be the "Amount Payable to Franchisee."

However, most "franchisees" will not receive any refund at all. (JFA, ¶ 8(A)(2).) In fact, a refund may not even be available to "franchisees" who purchased a P-600, P-1000 (which Salas purchased), P-1500, or P-2000, because a $5,000.00 license fee is deducted and there may not be enough remaining funds from which a refund can be calculated. (JFA, ¶ 8©.) Because the arbitrator cannot alter the terms of the agreement under Paragraph 21(A)(6), the remedy provided by Paragraph 8 is all a "franchisee" can recover in arbitration. Paragraph 21(A)(7) provides that "[t]he arbitrator or appointed arbitrators shall have the right to grant monetary relief *only*" (emphasis added). *See also,* Lorens Declaration, filed herewith.

Here, enforcement of Paragraph 21(A)(6) and Paragraph 8 is unconscionable because it eviscerates almost all of the relief and remedies sought in Plaintiffs' FAC. Plaintiffs request injunctive relief and restitution in their second cause of action for misleading advertising, their tenth cause of action for unfair business practices, and their eleventh cause of action for injunctive relief, including a mandatory injunction ordering Defendants to make tax contributions on the unpaid wages in the form of FICA, Social Security, Medicare, Unemployment, etc. (FAC, ¶ 169 & prayer.) In addition, Plaintiffs request an injunction prohibiting Defendants from enforcing the twenty (20) year non-compete provisions in the JFA. (FAC, ¶ 99 & prayer.) However, the arbitration agreement specifically excludes injunctive relief. Paragraph 21(A)(7) prohibits the arbitrator from awarding anything but monetary relief, and then prohibits the arbitrator from

-15-

awarding the actual monetary losses suffered, or revising the JFA, and instead limits any monetary recovery to a small portion of the amount paid by the "franchisee," minus licensing fees and starter kit fees, which Defendants set, and which in most cases, will arbitrarily exceed the truncated amount of monetary damages Defendants allow an arbitrator to award in their contract of adhesion.

Plaintiffs request statutory relief for Labor Code violations that is also not provided for in the arbitration agreement.  Plaintiffs' third through sixth causes of action seek unpaid wages, premium pay compensation for missed meal/rest breaks, penalties, and interest.  In their seventh cause of action, Plaintiffs seek reimbursement for reasonable business expenses that were necessarily incurred in servicing Defendants' customers, such as vehicle related expenses for travel between client accounts (gasoline, maintenance, insurance, etc.), cleaning supplies and equipment, accidental injury insurance, etc. (FAC, ¶¶ 144-147.) In their eighth cause of action, Plaintiffs seek to recover unlawful deductions made from their wages including licensing fees, sales and marketing fees, premium account fees, royalty fees, management fees, performance bond fees, insurance fees, interest, and penalties.  (FAC, ¶¶ 148-160.)  None of these remedies or relief are "provided for in [this Agreement.]" (JFA, ¶ 21(A)(6).)

Plaintiffs' ninth cause of action for conversion seeks punitive damages, a remedy/relief that is precluded for in the JFA. (FAC, ¶¶ 161-166.) In fact, the arbitrator is prohibited from granting "any relief or . . . any remedy not provided for" in the JFA, and Plaintiffs have been unable to find any provisions in the JFA that specifically authorize the granting of monetary relief against Defendants that do not also specifically and drastically limit that relief as well.  Plaintiffs' first cause of action for breach of contract seeks damages for Defendants' continual sale of franchises when it did not have sufficient janitorial contracts to fulfill its Initial Business promises.  (FAC, ¶¶ 80-103.)   Defendants' pattern and practice of churning franchises caused purported "franchisees" to be damaged in amounts that far exceed the "sole remedy" refund provided for in

-16-

Paragraph 8 of the JFA.

The damages limitations provided in Paragraphs 8 and 21(A)(6) purposefully and unequivocally gut the remedies and relief sought in Plaintiffs' FAC. Such egregious limitations on remedies and relief is extremely unfair and renders the agreement substantively unconscionable.

### b. Lack of Mutuality.

As previously stated, the arbitration agreement requires Laguna and Salas to arbitrate all of their claims against Defendants and limits their remedies to truncated monetary relief, thereby precluding their ability to obtain the injunctive relief that they have requested. However, the arbitration agreement lacks mutuality, as Defendants are not required to arbitrate all of their claims and they are specifically permitted to seek relief, including injunctive relief, in a court of competent jurisdiction. (JFA, ¶¶ 21(A)(14) & 21(B).)

In assessing substantive unconscionability, the "paramount consideration" is mutuality of the agreement to arbitrate. *Nyulassy v. Lockheed Martin Corp.*, 120 Cal.App.4th 1267, 1287 (2004). Arbitration agreements that are so one-sided that they undermine the neutrality of the proceedings may be unenforceable. A "unilateral obligation to arbitrate is unconscionable." *Armendariz*, 24 Cal.4th at 117. Arbitration agreements that lack mutuality by restricting an employee's remedies otherwise available in court, such as damages, while placing no restriction on the employer, are unconscionable and unenforceable. *Id.* at 118. Similarly, arbitration clauses that require employees to arbitrate all claims, as well as limit their remedies, while allowing employers to litigate certain types of disputes, are unconscionable and unenforceable. *See Stirlen*, 51 Cal.App.4th at 1534; *Mercuro*, 96 Cal.App.4th at 175-176 (finding that arbitration agreement is substantively unconscionable where it compels arbitration of claims that employees are more likely to bring against the employer, such as contract or tort claims, but exempt from arbitration claims that the employer is most likely to bring against its employees, such as injunctive relief);

-17-

1   *Ticknor*, 265 F.3d at 940-941 (finding arbitration provision unconscionable where it allowed

2   franchisor to sue in court but required franchisee to arbitrate disputes).

3          An arbitration agreement that allows the drafter to seek an injunction but prohibits the other

4
5   party from seeking such relief is substantively unconscionable unless the drafter explained in the

6   clause why "business realities" create a special need for such advantage or the drafter factually

7   establishes the same in its motion to compel arbitration. *Higgins v. Sup. Ct.*, 140 Cal.App.4th

8   1238, 1254 n.12 (2006). Defendants have not met either burden. Because Defendants have not

9
    provided business justification requiring unilateral access to the courts for injunctive relief, this
10
11   Court is entitled to assume the provisions were designed to "maximize [their] advantage based on

12   the perceived superiority of the judicial forum." *Armendariz*, 24 Cal.4th at 120. Such provisions

13   are deemed unconscionable where there is no evidence showing a special need for unilateral access

14   to the courts. *Mercuro*, 96 Cal.App.4th at 175-178 & n.14; *Fitz*, 118 Cal.App.4th at 725-726.

15   Moreover, here the provision is so broad in scope that it gives Defendants the ability to select the

16   judicial forum to enforce any "provisions of the Agreement" or "any matter relating to the
17
18   ownership of the Franchise." (JFA, ¶ 21(B).) Clearly, this language is so broad that Defendants

19   have the ability to elect whether or not to choose the judicial forum or the arbitral forum for any

20   kind of specific enforcement action.

21               **c.   Statute of Limitations.**

22          The arbitration agreement shortens the statutes of limitations applicable to
23
24   Laguna's and Salas' claims, rendering the arbitration agreement substantively unconscionable. *See*

25   *Nyulassy*, 120 Cal.App.4th at 1283; *see also Davis*, 485 F.3d at 1076-1078. Paragraph 21(A)(9)

26   provides "[t]he parties agree to be bound by the provisions of any applicable limitation on the

27   period of time in which claims must be brought, including any set forth in this Agreement."

28   Paragraph 22 provides:

-18-

TIME TO ASSERT CLAIMS. Any and all claims and actions arising out of or relating to this Agreement, the relationship of the Franchisee and Coverall, or Franchisee's operation of its business, brought by any Party hereto against the other, shall be commenced within two years from the occurrence of the facts giving rise to such claim or action, or such claim or action shall be barred.

An arbitral limitations period shorter than the applicable statute of limitations is a factor in determining whether an arbitration contract was substantively unconscionable. *Nyulassy*, 120 Cal.App.4th at 1283; *see also Davis*, 485 F.3d at 1076-1078 (finding arbitration clause shortening the statute of limitations to one year for employment related statutory claims is unconscionable); *but cf. Soltani v. Western & Southern Life Ins. Co.*, 258 F.3d 1038, 1042-1045 (9th Cir. 2001) (finding a deadline six months after termination of employment was not substantively unconscionable because it did not depend on when the claim arose). Here, the arbitration agreement requires "franchisees," including Laguna and Salas, to bring "[a]ny and all claims" within *two years* of the time the claims arose, or else the claims will be barred *forever*. (JFA, ¶ 22 (emphasis added).)[9]  This shortens the applicable statute of limitations for essentially all of Plaintiffs' claims *by half*.  The applicable statute of limitations in California for Plaintiffs' first cause of action for breach of contract is four years (*Code of Civil Procedure § 337(1)*); however, Paragraph 22 reduces that by more than two years.  The applicable statute of limitations for Plaintiffs' second cause of action for misleading advertising is four years (*Business & Professions Code § 17208*); Paragraph 22 reduces that by two years. The statute of limitations for Plaintiffs' third through eighth causes of action for Labor Code violations is four years (in conjunction with *B& P Code § 17200*); Paragraph 22 reduces that by two years. The statute of limitations for Plaintiffs' ninth cause of action for conversion is normally three years (*CCP § 338©*); Paragraph

---

[9] Because Laguna's claims arose in 2008, if her claims were sent to arbitration, they would be barred because they were not brought in arbitration within two years pursuant to Paragraph 22.  The same can arguably be said for Salas' claims that arose prior to August 2011.

22 reduces that by one year. The statute of limitations for Plaintiffs' tenth cause of action for unfair business practices is four years (*B&P Code § 17208*); Paragraph 22 reduces that to two years. As such, because Paragraph 22 drastically reduces the statutes of limitations governing Plaintiffs' claims, the arbitration agreement is substantively unconscionable.

### d. Excessive Fees and Costs.

The arbitration agreement requires Laguna and Salas to pay excessive fees and costs they would not incur in litigation, which renders the arbitration agreement substantively unconscionable. Paragraph 21(A)(3) provides:

> The costs of the arbitration shall, subject to the provisions of Paragraph 21C of this Agreement, be shared equally by Franchisee and Coverall; further provided, if there is more than one arbitrator, each party shall, subject to the provisions of Paragraph 21C, be responsible for the fees of the arbitrator appointed by that party, and shall share equally the fees of the arbitrator appointed by the other arbitrators pursuant to Paragraph 21A(5). Coverall, however, reserves the right in its sole and exclusive discretion to assume responsibility for all of the costs of the arbitration.

The arbitration agreement also provides in the event that a claim involves $50,000.00 or less, there shall be one arbitrator, but if a claim involves more than $50,000.00, the arbitration shall be conducted before a panel of three arbitrators. (JFA, ¶ 21(A)(4) & (5).)

The cost of arbitration is an essential element of a fairness analysis in determining whether an arbitration agreement is enforceable. *See Armendariz*, 24 Cal.4th at 118. The Ninth Circuit has determined that requiring an employee to split the arbitrator's fee would render an arbitration agreement substantively unconscionable. *Adams*, 279 F.3d at 894. Furthermore, the U.S. Supreme Court has recognized that "the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum." *Green Tree Fin'l Corp.-Alabama v. Randolph*, 531 U.S. 79, 90 (2000).

Paragraph 21(A)(3) requires Plaintiffs to pay for one-half of the arbitration costs. This cost-sharing provision is completely unjustified and requires Plaintiffs to incur prohibitive costs. In

-20-

order to initiate a case before the AAA, Plaintiffs must pay an initial filing fee of $975.00 for claims between $10,000.00 and $75,000.00, as well as a $300.00 final fee that is incurred for cases that proceed to their first hearing, for a total of $1,275.00.[10]  See **Exhibit 3** to the RJN.  This is almost four times the amount it cost Plaintiffs to file this case in court.  Furthermore, for any case involving three or more arbitrators, the minimum fees are $2,800 for the initial filing fee, plus $1,250.00 for the final fee, for a total of $4,050.00 just to file the case!  *See id.*

Defendants' requirement three arbitrators must be used for claims over $50,000.00 is also unjustified and requires Plaintiffs to incur exorbitant fees they are in no position to pay.  The AAA does not provide information on its arbitrator's fees until a case is filed.  However, Plaintiffs estimate the fees would parallel those of a mediator, which are generally in the range of $10,000.00 per day.  If, for example, Laguna's case took three days before a three arbitrator panel, then it would cost $45,000.00-$90,000.00  just in fees for the arbitration, for which she would be responsible for $22,500.00-$45,000.00.  In the event that Laguna's claim was just barely over $50,000.00, she would thus be required to pay almost one-half of what her claim is worth in order to have her claim adjudicated, in addition to arbitration costs, as well as, her own attorney's fees.  There is no reason that Plaintiffs, or any other "franchisee" for that matter, should have to pay such exorbitant fees.  *See Parada*, 176 Cal.App.4th at 1560, 1581-1584.  As such, the fee-sharing provision completely erodes Plaintiffs' access to an adequate forum to adjudicate their claims.

In addition to requiring Plaintiffs to pay an excessive amount of arbitration fees and costs, the arbitration agreement also requires them to pay all of Defendants' attorneys' fees and costs in

---

[10] Paragraph 21(A)(1) provides that arbitration shall be subject to "the then current Rules of the American Arbitration Association for Commercial Arbitration."  Rule R-2 of the 2005-2007 AAA Commercial Arbitration Rules and Mediation Procedures provides: "When parties agree to arbitrate under these rules, . . . they thereby authorize the AAA to administer the arbitration."  See **Exhibit 2** to the RJN.  Because the arbitration agreement provides that the parties agree to arbitrate under the AAA rules, the arbitration agreement also requires that the parties arbitrate before the AAA.  Therefore, any filing fees and other costs that are required in order to arbitrate before the AAA are relevant in assessing the excessive fees and costs issue.

-21-

the event Plaintiffs are not successful in the arbitration. (JFA, ¶ 21©.)[11] This requirement is unconscionable because it prevents Plaintiffs from being able to adequately vindicate their statutory rights, as provided under the Labor Code, in the arbitral forum. *See California Teachers Association v. State of California*, 20 Cal.4th 327, 355-356 (1999). Furthermore, Paragraph 21© is unconscionable because it eliminates the fee-shifting provision that would apply to Plaintiffs' wage and hour claims in court. If Plaintiffs prevailed on their Labor Code claims in court, they would be entitled to recover the full amount of their attorney's fees from Defendants pursuant to *Labor Code section 1194*. However, *Section 1194* is a unilateral fee-shifting provision, which means Defendants are not entitled to the same relief in the event they prevail. By stripping Plaintiffs of the statutory relief that *Section 1194* provides, the arbitration agreement is substantively unconscionable and should not be enforced.

> **e.     No Knowing and Voluntary Waiver of Right to Jury Trial.**

The right to a jury trial is a fundamental constitutional right and according to *Morrison v. Circuit City Stores, Inc.,* 317 F.3d 646, 668 (6th Cir. 2003) *(en banc)* to evaluate whether a Plaintiff has knowingly and voluntarily waived the right to pursue employment claims in Federal Court, the following factors must be evaluated: (1) Plaintiff's experience, background and education; (2) the amount of time the Plaintiff had to consider whether to sign the waiver, including whether the employee had an opportunity to consult with a lawyer; (3) **the clarity of the waiver;** (4) consideration for the waiver; as well as (5) the totality of the circumstances.( Emphasis added) *Id.* (Quoting *Adams v. Philip Morris, Inc.,* 67 F.3d 580, 583 (6th cir. 1995). In *Walker v. Ryan's Family Steakhouses, Inc.,* 400 F.3d 370 (6th Cir. 2005) the court explored when disclosure

---

[11] Paragraph 21(C) provides that "[should either Party incur attorney's fees in order to enforce the terms and conditions of this Agreement, including post-term covenants, whether or not an arbitration proceeding is instituted, the prevailing party shall be entitled to reimbursement by the other party of all litigation costs, including attorneys' fees."

-22-

of the waiver of a right to jury trial in an arbitration agreement is explicit enough to constitute a waiver of a trial by jury, but in this case, since there was no disclosure whatsoever, arbitration cannot be ordered. *See* JFA.

### D.   The Arbitration Agreement Fails Due to Lack of Consent.

"It is essential to the existence of a contract that there should be: 1. Parties capable of contracting; 2. Their consent; 3. A lawful object; 4. A sufficient cause or consideration." *Civ. Code § 1550.* Here, Defendants seek to strike all class allegations referenced anywhere in the FAC and to stay the action as to the entire putative class, but refuse to produce arbitration agreements for anyone other than Laguna and Salas. It is Defendants' burden, as a prerequisite to the granting of this Motion, to prove the <u>existence</u> of the arbitration agreements. They must also prove the parties' <u>consent</u> to arbitrate. They have not produced an agreement for any putative class member other than Laguna and Salas and they have not produced signature lines for any other arbitration agreements, thereby failing to meet their burden to establish that the agreements exist or that the putative class members whose cases they wish to halt, consented to arbitrate. While Plaintiffs sought to obtain limited arbitration-related discovery prior to filing this Opposition brief, their motion in that regard has not yet been ruled on. (Doc. No. 212).

#### 1.   Plaintiffs Should have Been Afforded an Opportunity to Conduct Limited-Arbitration Related Discovery Prior to Filing This Opposition.

Plaintiffs hereby incorporate their arguments from their Opposition to Allied/Ares Motion to Compel Arbitration at p.7:1-9:24.

## IV.   THE COURT SHOULD DENY DEFENDANTS' MOTION TO STRIKE THE CLASS ALLEGATIONS

Pursuant to Federal Rule of Civil Procedure 12(f):

Upon motion made by a party before responding to a pleading or, if no responsive

-23-

pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

"[M]otions to strike under Rule 12 are generally disfavored." *Wren v. RGIS Inventory Specialists*, 256 F.R.D. 180, 201 (N.D. Cal. 2009); *see also Bureerong v. Uvawas*, 922 F.Supp. 1450, 1478 (C.D. Cal. 1996) ("Rule 12(f) motions are generally 'disfavored' because they are 'often used as delaying tactics, and because of the limited importance of pleadings in federal practice.'"). "'A motion to strike should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation. If there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion.'" *McPhail v. First Command Financial Planning, Inc.*, 247 F.R.D. 598, 604 (S.D. Cal. 2007) quoting *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F.Supp.2d 1048, 1057 (N.D. Cal. 2004).

Defendants have not produced any arbitration agreement, nor class action waiver, that Plaintiff Acevedo signed. As such, Acevedo can still properly assert the class action allegations, which are contained at Paragraphs 71-79 of the Fourth Amended Complaint ("FAC"). Furthermore, if the Court strikes all of the class allegations pursuant to Defendants' request, then it would gut the remainder this case and there would be no class allegations under which Acevedo would be able to proceed. Because the class allegations would bear heavily on the litigation, and are not immaterial or impertinent, Defendants cannot meet their burden under Rule 12(f). Accordingly, the Court should deny Defendants' Motion to Strike Class Allegations.

## V.    THE COURT SHOULD DENY DEFENDANTS' MOTION TO STAY THE PROCEEDINGS

"In deciding a motion to stay a proceeding pending arbitration, a court must determine '(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement

-24-

encompasses the dispute at issue.'" *McLeod v. Ford Motor Co.*, 2005 U.S. Dist. LEXIS 17188, *2 (C.D. Cal. Apr. 14, 2005). "Where some portions of an action are arbitrable and others are not, the decision to stay those claims not subject to arbitration is in the court's discretion." *Id.* at *2. "In deciding whether to stay non-arbitrable claims, a court considers economy and efficiency, the similarity of the issues of law and fact to those that will be considered during arbitration, and the potential for inconsistent findings absent a stay." *Id.* at *2.

Plaintiff Laguna's and Plaintiff Salas' arbitration agreements contain a provision that "[a] decision by the arbitrator . . . shall be confidential . . . and may not be collaterally used . . . in existing or subsequent litigation or arbitration involving any other franchisee or third party." ¶ 21(A)(14). This provision effectively eliminates any concerns regarding economy and efficiency or inconsistent findings because this Court cannot use any previous determination on the same issues of fact and/or law as collateral estoppel. Accordingly, there is no reason to stay this case because Acevedo's claims and those of the putative class members will be unaffected either way by any decision that the arbitrator reaches with regard to Laguna's and Plaintiff Salas' claims. Accordingly, this Court should deny Defendants' Motion to Stay the Proceedings.

## VI.   CONCLUSION

Based on the foregoing reasons, Plaintiffs respectfully request this Court deny Defendants' Motions in their entirety. In the alternative, if this Court Orders Plaintiffs Salas and Laguna to arbitrate their claims, they should allow Plaintiff Acevedo to prosecute the class claims. If this Court were to grant the defendants motions in their entirety, defendants should be Ordered to reimburse Plaintiffs for the fees and costs they have incurred litigating issues the arbitration agreement specifically excludes.

LORENS & ASSOCIATES, APLC
CADENA CHURCHILL, LLP

Dated: July 25, 2011             By: /s/ L. Tracee Lorens
                                 L. Tracee Lorens, Esq.

-25-