1   L. TRACEE LORENS (150138) tracee@lorenslaw.com
    WAYNE ALAN HUGHES (48038) waynecloud@aol.com
2   LYNN M. BEEKMAN (149325) lynn@lorenslaw.com
    **LORENS & ASSOCIATES, APLC**
3   701 "B" Street, Suite 1400
    San Diego, CA 92101
4   Telephone: 619.239.1233
    Facsimile:  619.239.1178
5
    RAUL CADENA (185787) rcadena@cadenachurchill.com
6   NICOLE R. ROYSDON (262237) nroysdon@cadenachurchill.com
    **CADENA CHURCHILL, LLP**
7   701 "B" Street, Suite 1400
    San Diego, CA 92101
8   Telephone: 619.546.0888
    Facsimile:  619.923.3208
9
    Attorneys for Plaintiffs and all others similarly situated
10

11                    **UNITED STATES DISTRICT COURT**

12                    **SOUTHERN DISTRICT OF CALIFORNIA**

13

14   SABRINA LAGUNA, an individual; CARLOS        Case No.: 09-cv-02131-JM-BGS
     ACEVEDO, an individual; TERESA SALAS, an)
15   individual; and ROES 3-50 on behalf of themselves)   (*Assigned to Hon. Jeffrey T. Miller and*
     and in a representative capacity for all others)   *Hon. Bernard G. Skomal*)
16   similarly situated                          )
                                                 )
17              Plaintiffs,                       )   **PLAINTIFFS'   OPPOSITION   TO**
                                                 )   **ALLIED  CAPITAL  CORP.'S  AND**
18                                               )   **ARES  CAPITAL  CORP.'S  MOTION**
     v.                                          )   **TO COMPEL ARBITRATION AND**
19                                               )   **STAY THIS ACTION UNDER THE**
                                                 )   **FEDERAL ARBITRATION ACT, &**
20   COVERALL   NORTH   AMERICA,   INC.,   a)   **JOINDER IN COVERALL NORTH**
     Delaware   Corporation;   ALLIED   CAPITAL)   **AMERICA,   INC.'S   MOTION   TO**
21   CORPORATION, a Maryland Corporation; ARES)   **COMPEL ARBITRATION**
     CAPITAL    CORPORATION,    a    Maryland)
22   Corporation; CNA HOLDING CORPORATION, a)   Date: August 8, 2011
     Delaware   Corporation;   TED   ELLIOTT,   an)   Time: 10:00 a.m.
23   individual; and DOES 5 through 50 inclusive   )   Courtroom: 16
                                                 )
24              Defendants.                       )   Complaint Filed: August 8, 2008
                                                 )   Trial Date: February 27, 2012
25                                               )
                                                 )
26                                               )
                                                 )
27   _____ )

28

# TABLE OF CONTENTS

I.      INTRODUCTION   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

II      FACTUAL AND PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . .   3

III.    THE   COURT   SHOULD   DENY   DEFENDANTS'   MOTION   TO   COMPEL

        ARBITRATION   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

        A.      Plaintiffs Should Have Been Afforded an Opportunity to Conduct Limited

                Arbitration-Related Discovery Prior to Filing This Opposition   . . . . . . . . . . . . . . . . .   7

        B.      Issues Concerning The Existence Of And Enforceability Of Arbitration Agreements

                Are For The Court's Determination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

        C.      The  Arbitration  Agreement  Specifically  Limits  Arbitration  Participants

                to Franchisees, Coverall, and its Officers, Directors, Agents, and

                Employees   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

                1.      Ares is Not an Agent of Coverall   . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

                2.      Ares' Equitable Estoppel Argument Fails   . . . . . . . . . . . . . . . . . . . . . .   14

        D.      Defendants Have Waived their Right to Arbitrate   . . . . . . . . . . . . . . . . . . . . . .   16

        E.      Plaintiffs' Claims are Not Within the Scope of the Arbitration

                Agreement   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

        F.      The Arbitration Agreement is Unconscionable   . . . . . . . . . . . . . . . . . . . . . . .   19

        G.      The Arbitration Agreement Fails Due to Lack of Consent   . . . . . . . . . . . . . . .   19

IV.     THE   COURT   SHOULD   DENY   DEFENDANTS'   MOTION   TO   STAY   THE

        PROCEEDINGS   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

V.      CONCLUSION   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

-i-

**Pltfs' Opposition to Allied/Ares' Motion to Compel Arbitration**
**& Joinder in Coverall's Motion to Compel Arbitration**
**Case No.: 09-cv-02131-JM-BGS**

## TABLE OF AUTHORITIES

**Supreme Court Cases**

*AT&T Mobility LLC v. Concepcion*,

    131 S.Ct. 1740 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6, 11, 17, 18

*Granite Rock Co. v. International Brotherhood of Teamsters*,

    130 S. Ct. 2847, 2856 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l. Corp.*,

    130 S.Ct. 1758, 1773-74 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11

**Federal Cases**

*Amisil Holdings, Ltd. v. Clarium Capital Management, LLC*,

    2006 WL 3949332, 14 (N.D.Cal.2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Avedon Eng'g, Inc. v. Seatex*,

    126 F.3d 1279, 1287 (10th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Blair v. Scott Specialty Gases*,

    283 F.3d 595, 608-610 (3d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Britton v. Co-Op Banking Corp.*,

    4 F.3d 742, 746 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Brown v. General Steel Domestic Sales, LLC*

    2008 WL 2128057 *7 (C.D.Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Buckeye Check Cashing, Inc. v. Cardegna*,

    546 U.S. 440, 444-446 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Carney v. Verizon Wireless Telecom, Inc.*,

    2010 U.S. Dist. LEXIS 77636 (S.D. Cal. Aug. 2, 2010) . . . . . . . . . . . . . . . . . . . . . 18

-ii-

**Pltfs' Opposition to Allied/Ares' Motion to Compel Arbitration**
**& Joinder in Coverall's Motion to Compel Arbitration**
**Case No.: 09-cv-02131-JM-BGS**

**TABLE OF AUTHORITIES**
**(CONT.)**

*Comer v. Micor, Inc.,*

　　　436 F.3d 1098, 1101 (9th Cir.2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Cox v. Ocean View Hotel Corp.,*

　　　533 F.3d 1114, 1119-1121 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Davis v. O'Melveny & Myers,*

　　　485 F.3d 1066, 1072 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Doctor's Assocs., Inc. v. Casarotto,*

　　　517 U.S. 681, 686 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Dun Shipping Ltd. v. Amerada Hess Shipping Corp.*

　　　234 F.Supp.2d 291, 293 (S.D.N.Y.,2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*E.g. First Options of Chicago, Inc. v. Kaplan,*

　　　514 U.S. 938, 944 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

*E.g., Green Tree Fin. Corp. v. Randolph,*

　　　531 U.S. 79, 91-92 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Fisher v. A.G. Becker Paribas Inc.,*

　　　791 F.2d 691, 694 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Hooper v. Advance America, Cash Advance Centers of Missouri, Inc.,*

　　　589 F.3d 917, 921 (8th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re TFT-LCD (Flat Panel) Antitrust Litigation,*

　　　2011 WL 1753784, *5 (N.D.Cal. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*JLM Indus., Inc. v. Stolt–Nielsen SA,*

　　　387 F.3d 163, 178 (2d Cir.2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

-iii-

**Pltfs' Opposition to Allied/Ares' Motion to Compel Arbitration**
**& Joinder in Coverall's Motion to Compel Arbitration**
**Case No.: 09-cv-02131-JM-BGS**

## <u>TABLE OF AUTHORITIES</u>
### <u>(CONT.)</u>

*Kelly v. Golden*,

    352 F.3d 344, 349-350 (8th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

*Laster v. AT&T Mobility LLC*,

    584 F.3d 849 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

*Lewallen v. Green Tree Servicing, L.L.C.*,

    487 F.3d 1085, 1090, 1092 (8th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

*Livingston v. Assocs. Fin. Inc.*,

    2001 U.S. Dist. LEXIS 8678, *10 (N.D. Ill. June 25, 2001) . . . . . . . . . . . . . . . . . . . .   8

*Livingston v. Assoc. Fin. Inc.*,

    339 F. 3d 553 (7th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

*McLeod v. Ford Motor Co.*,

    2005 U.S. Dist. LEXIS 17188, *2 (C.D. Cal. Apr. 14, 2005) . . . . . . . . . . . . . . . . . . .   20

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,

    460 U.S. 1, 25 n.32 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

*Quinn v. Syracuse Model Neighborhood Corp.*,

    613 F.2d 438, 445 (2d Cir.1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

*Ross v. American Express Company*,

    547 F.3d 137, 148 (2nd Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

*Simula, Inc. v. Autoliv, Inc.*,

    175 F.3d 716, 726 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

*Smith v. Americredit Financial Services, Inc.*,

    2009 U.S. Dist. LEXIS 115767 (S.D. Cal. Dec. 11, 2009) . . . . . . . . . . . . . . . . . . . . .   17

-iv-

**Pltfs' Opposition to Allied/Ares' Motion to Compel Arbitration**
**& Joinder in Coverall's Motion to Compel Arbitration**
**Case No.: 09-cv-02131-JM-BGS**

1

**TABLE OF AUTHORITIES**
**(CONT.)**

2

*Ticknor v. Choice Hotels Int'l, Inc.*,

265 F.3d 931, 936-37 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Park Place Assocs., Ltd.*,

563 F.3d 907, 921(9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Valueselling Associates, LLC v. Temple*

2009 WL 3736264 * 6 (S.D.Cal. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

*Van Ness Townhouses v. Mar Indus. Corp.*,

862 F.2d 754, 758-759 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Westmoreland v. Sadoux*,

299 F.3d 462, 465 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Wolf v. Langemeier*,

2010 WL3341823 * 4 (E.D. Cal 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**State Cases**

*Baker v. Osborne Development Corp.*,

159 Cal.App.4th 884, 893-894 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Cable Connection, Inc. v. DIRECT-TV., Inc.*,

44 Cal.4th 1334, 1358 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Condee v. Longwood Mgmt. Corp.*,

88 Cal.App. 4th 215, 218 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Discover Bank v. Sup. Ct.*,

36 Cal.4th 148 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 17, 18

Pltfs' Opposition to Allied/Ares' Motion to Compel Arbitration
& Joinder in Coverall's Motion to Compel Arbitration
Case No.: 09-cv-02131-JM-BGS

**TABLE OF AUTHORITIES**
**(CONT.)**

*Dream Theater, Inc. v. Dream Theater*,

    124 Cal.App.4th 547, 552 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Freeman v. State Farm Mut. Auto Ins. Co.*,

    14 Cal.3d 473, 479 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Greenspan v. LADT, LLC*,

    185 Cal.App.4th 1413, 1440 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Hunt v. Sup. Ct.*,

    81 Cal.App.4th 901, 909 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Parada v. Sup. Ct.*,

    176 Cal.App.4th 1554, 1566 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Platt Pacific, Inc. v. Andelson,

    6 Cal.4th 307 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Romo v. Y-3 Holdings*,

    87 Cal.App.4th 1153, 1158 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

*Rosenthal v. Great Western Fin. Securities Corp.*

    14 Cal.4th 394, 413 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Sonic-Calabasas, Inc. v. Moreno*,

    51 Cal.4th 659, 694-695 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Spear v. California State Auto. Assn.*,

    2 Cal.4th 1035, 1040 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**Federal Statutes**

9 U.S.C. § 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

-vi-

**Pltfs' Opposition to Allied/Ares' Motion to Compel Arbitration**
**& Joinder in Coverall's Motion to Compel Arbitration**
**Case No.: 09-cv-02131-JM-BGS**

1

**<u>TABLE OF AUTHORITIES</u>**
**<u>(CONT.)</u>**

2

9 U.S.C. § 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6, 10

3

9 U.S.C. § 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

4

9 U.S.C. § 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Pltfs' Opposition to Allied/Ares' Motion to Compel Arbitration**
**& Joinder in Coverall's Motion to Compel Arbitration**
**Case No.: 09-cv-02131-JM-BGS**

## I.      **INTRODUCTION**

Almost two years after Allied Capital Corporation ("Allied") was added as a defendant in this matter and forty-eight days after the United States Supreme Court's ruling in *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740 (2011), Allied and Ares Capital Corporation ("Ares") (collectively, "Defendants") have moved to compel arbitration of Laguna's and Salas' claims. Between the time that *Concepcion* was issued and the date Defendants filed this motion, Plaintiffs were required to prepare an extensive and time consuming motion to re-open fact discovery and establish due diligence by Plaintiffs' counsel during the pendency of this action, consisting of 160 total pages (Doc. No. 199), to which Defendants filed their opposition of 100 pages on June 1, 2011 (Doc. No. 200), after which Plaintiffs filed their reply of 84 pages (Doc. No. 204).[1]  In addition, Defendants participated in ongoing litigation regarding discovery, which included numerous meet and confer hearings with Magistrate Judge Skomal's clerk, as well as nearly daily communications regarding discovery and other matters between the issuance of *Concepcion* and Defendants' filing of the Motion to Compel Arbitration on June 14, 2011.  If Defendants had not waived their right to compel arbitration between the filing of Plaintiffs' complaint adding them to the case and the date of the *Concepcion* decision, they certainly waived their right to compel arbitration by allowing this litigation to continue at the level that it did **following the *Concepcion* decision**.  Defendants offer no reason explaining why they did not earlier move for an order compelling arbitration, except to state that *Concepcion* "clarified that the arbitration provisions in the JFAs are enforceable" (Motion, p. 1:14-16).  However, the body of law that existed in California prior to *Concepcion* regarding class action waivers explicitly recognized that not all

---

[1] Defendants submit no evidence whatsoever to explain why they waited two years to file this Motion, or why this Motion is timely after allowing hundreds of pages of briefing to occur **post-*Concepcion***, causing Plaintiffs to incur an additional estimated $341,866.00 in attorneys' fees and costs.

Pltfs' Opposition to Allied/Ares' Motion to Compel Arbitration
& Joinder in Coverall's Motion to Compel Arbitration
Case No.: 09-cv-02131-JM-BGS

class action waivers were *per se* unconscionable.  In *Discover Bank v. Sup. Ct.*, 36 Cal.4th 148 (2005), the California Supreme Court held a waiver of class wide arbitration in a consumer contract of adhesion *may* be unconscionable under certain circumstances.  However, the Court also concluded, "**we do not hold that all class action waivers are necessarily unconscionable.**"  *Id.* at 162 (emphasis added.)

More importantly, Defendants have not submitted any evidence establishing the threshold issue of whether or not the parties agreed to arbitrate this case.  *See Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1287 (10th Cir. 1997).  Here, Defendants refuse to produce copies of the arbitration agreements for the putative class, while at the same time seeking to stay the action for the <u>entire</u> putative class.  "The existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked."  *Id.* at 1287.  Defendants refuse to produce any evidence that arbitration agreements exist for anyone besides Ms. Laguna and Ms. Salas (the Court should note Defendants do not even submit declarations or affidavits to the effect that there are arbitration agreements with anyone beyond Ms. Laguna and Ms. Salas) and have not submitted any evidence to meet their burden of proving that arbitration agreements exist for any other putative class member.  Plaintiffs are entitled to limited arbitration-related discovery pursuant to a long line of cases (*see* Plaintiffs' Motion For Limited Arbitration Discovery, Doc. No. 212), as it is undisputed that the <u>existence</u> of the arbitration agreement is a statutory <u>prerequisite</u> to granting the Motion.  Thus, Defendants' Motion must be denied in its entirety on that basis alone.  Furthermore, and as more fully discussed below, the arbitration agreements Defendants rely upon, as to Laguna and Salas, are invalid, unenforceable, and  unconscionable.

-2-

**Pltfs' Opposition to Allied/Ares' Motion to Compel Arbitration
& Joinder in Coverall's Motion to Compel Arbitration
Case No.: 09-cv-02131-JM-BGS**

## II.     FACTUAL AND PROCEDURAL BACKGROUND[2]

Plaintiffs filed their original wage and hour class action complaint against Coverall North America, Inc. ("Coverall") in San Diego Superior Court on August 8, 2008.  See Lorens Decl.  On August 20, 2009, Plaintiffs filed their Second Amended Complaint ("SAC") in San Diego Superior Court, adding Allied Capital Corporation ("Allied") as a defendant.  *See id.*  Allied removed this action to this Court on September 29, 2009.  (Doc. No. 1.)  Shortly after its removal, Allied filed a motion to dismiss Plaintiff's SAC in its entirety (Doc. No. 4), but did not raise arbitration as an issue, which this Court denied on December 18, 2009.  (Doc. No. 10.)  Allied answered Plaintiffs' SAC in January 2010, but did not raise the existence of the arbitration agreement as an affirmative defense.  (Doc. No. 11.)  In fact, Allied pled  affirmative defenses which would only apply to class action litigation.  Clearly, Allied/Ares, as well as the Coverall defendants, withheld all evidence from Plaintiffs that they might ever seek regarding arbitration in this case.

On April 16, 2010, Plaintiffs, Coverall, and Allied appeared for an ENE conference[3].  (Doc. No. 22.)  On May 24, 2010, Plaintiffs, Coverall, and Allied exchanged Rule 26 disclosures.  See Lorens Decl.  In the meantime, Plaintiffs served discovery on Coverall and Allied, the majority of which Coverall and Allied objected to, and met and conferred with Coverall and Allied for several months. *See id.*[4]

/ / /

---

[2] Defendants' summarization of the status of this litigation omits all of the litigation in which Defendants engaged.

[3]  While it later came to Plaintiffs' attention that Allied had merged with Ares prior to the ENE, that information was withheld from Plaintiffs' counsel and the Court.  However, Plaintiffs' counsel sought to add Ares as a defendant once they were made aware that Ares had subsumed Allied.

[4] For a more detailed factual outline of the litigation history in this action, to date, please see Declaration of L. Tracee Lorens, filed in support of Motion for Limited Fact Discovery and to Re-Open and Complete the Deposition of Ted Elliott (Doc. 199).

**Pltfs' Opposition to Allied/Ares' Motion to Compel Arbitration**
**& Joinder in Coverall's Motion to Compel Arbitration**
**Case No.: 09-cv-02131-JM-BGS**

On August 4, 2010, Plaintiffs filed a Motion for Leave to File Third Amended Complaint. (Doc. No. 34.)  Plaintiffs sought to add Ares, CNA Holding Corporation ("CNA Holding"), and Ted Elliott ("Mr. Elliott") as defendants, Acevedo and Salas as class representatives, two new causes of action, and a joint employer/joint enterprise theory of liability.  The Court granted this Motion to Amend in its entirety on October 15, 2010.  (Doc. No. 60.)  Neither Coverall nor Allied ever raised arbitration in their opposition to Plaintiffs' Motion to Amend.  In fact, while Defendants Allied and Ares have four attorneys representing them in this matter, and have been present at all depositions since they were named in the action in August 2009, they have never once uttered the word "arbitration."  They did not ask any of the class representatives during their deposition about arbitration clauses (of course, Mr. Acevedo does not have an arbitration clause) nor did they question any of the class representatives or absent class members deposed regarding whether they had an arbitration agreement in their JFA, whether they had read that agreement, whether they had ever discussed that agreement with anyone, whether they had consented to that agreement,  whether they were aware that agreement existed in at least two contracts, whether they understood the agreement, or whether the agreement was even in a language that they could understand.

On August 31, 2010, Plaintiffs, Coverall, and Allied filed a Joint Motion for Determination of Discovery Dispute regarding the Class Certification Briefing Schedule and for Approval of a Stipulation for Revised Scheduling Order (Doc. No. 39), which the Court granted on September 10, 2010.  (Doc. No. 48.)   On September 1, 2010, Coverall and Allied took the deposition of Claire Mount, a putative class member, and on September 16, 2010, Coverall and Allied took the deposition of Edgar Bilbao, another putative class member.  Lorens Decl.  On October 25, 2010, Plaintiffs filed their TAC.  (Doc. No. 147.)  Plaintiffs filed their Motion for Class Certification on

-4-

Pltfs' Opposition to Allied/Ares' Motion to Compel Arbitration
& Joinder in Coverall's Motion to Compel Arbitration
Case No.: 09-cv-02131-JM-BGS

November 15, 2010.  (Doc. No. 75.)  Allied and Ares filed a motion to dismiss the TAC on the same day, as did Coverall and CNA Holding (Doc. Nos. 76-77). None of the defendants raised arbitration in these motions to dismiss. On February 14, 2011, the Court granted the motions to dismiss in part and denied them in part.  (Doc. No. 132.)

On December 1, 3, and 6, 2010, Defendants and Coverall took the depositions of Teresa Salas, Carlos Acevedo, and Sabrina Laguna, again, respectively.  Lorens Decl.  Defendants and Coverall also propounded 443 discovery requests on the class representatives, which consisted of interrogatories and document requests.  *See id.*  At no time during the depositions of any of the class representatives (and Ms. Laguna was deposed on three separate days over a 2 year time period, as recently as December 11, 2010) did the Defendants ever even utter the word "arbitration."  They did not inquire of the Plaintiffs, or the absent class members who they deposed, as to whether or not an arbitration agreement existed in their contracts, or whether they had consented to any such arbitration agreement.  There is just absolutely no evidence whatsoever that arbitration agreements exist for anyone other than Ms. Laguna and Ms. Salas.  As to their agreements, the contract itself states that arbitration must be sought "promptly" or at least, "within two years."  (See JFAs lodged with Defendants' moving papers at ¶¶ 21(A) and 22, respectively). Thus, pursuant to *Platt Pacific, Inc. v. Andelson*, 6 Cal.4th 307 (1993), Defendants' arbitration demands as to the <u>only two</u> arbitration agreements that the evidence shows exist must be denied as untimely, as well as because the agreements are unenforceable based on procedural unconscionability, substantive unconscionability, and waiver.

Plaintiffs filed their Fourth Amended Complaint ("FAC") on March 7, 2011 (Doc. No. 147), which Defendants moved to dismiss on March 24, 2010. (Doc. No. 163.)  They again failed to raise arbitration as an issue. On March 18, 2011, Defendants filed their opposition to Plaintiffs'

-5-

Pltfs' Opposition to Allied/Ares' Motion to Compel Arbitration
& Joinder in Coverall's Motion to Compel Arbitration
Case No.: 09-cv-02131-JM-BGS

class certification motion (Doc. No. 159), and on April 1, 2011, Plaintiffs filed their reply.  (Doc.

No. 168.)  On May 19, 2011, Plaintiffs filed a Motion for Limited Fact Discovery and to Re-Open

and Complete the Deposition of Ted Elliott(Doc. No. 199), which Defendants opposed on June 1,

2011. (Doc. No. 201.)[5]

## III.   THE COURT SHOULD DENY DEFENDANTS' MOTION TO COMPEL ARBITRATION

The FAA governs arbitration agreements in contracts involving transactions in interstate

commerce.  *9 U.S.C. § 1*; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25

n.32 (1983).  Pursuant to *Section 2* of the FAA, arbitration agreements "shall be valid, irrevocable,

and enforceable, save upon such grounds that exist at law or in equity for the revocation of any

contract." *9 U.S.C. § 2*.  In the absence of a contract consenting to arbitrate, there is no basis to

compel arbitration.  *Stolt-Nielsen S.A. v. AnimalFeeds Int'l. Corp.*, 130 S.Ct. 1758, 1773-74

(2010). The enforceability of an arbitration agreement is dependent on the consent of the parties

thereto. *Sonic-Calabasas, Inc. v. Moreno*, 51 Cal.4th 659, 694-695 (2011); *Cable Connection, Inc.*

*v. DIRECT-TV., Inc.*, 44 Cal.4th 1334, 1358 (2008).  Thus, when presented with a motion to

compel arbitration, a court's first task is to determine whether, in fact, the parties have agreements

to arbitrate the dispute. *See, e.g. Romo v. Y-3 Holdings*, 87 Cal.App.4th 1153, 1158 (2001).  Here,

while the existence of the agreement is a statutory prerequisite to granting a motion to compel

arbitration, and a defendant bears the burden of proving the existence of the agreements,

Defendants have produced only two arbitration agreements, i.e., for Laguna and Salas.

/ / /

---

[5] The *Concepcion* decision was issued on April 27, 2011, yet Defendants refused to stay this litigation (although Plaintiffs made numerous requests for a stay due to ongoing settlement negotiations) and forced the litigation to continue for another six weeks, thus forcing Plaintiffs to incur another merely $350,0000 in fees and costs, before they brought this motion.

-6-
**Pltfs' Opposition to Allied/Ares' Motion to Compel Arbitration**
**& Joinder in Coverall's Motion to Compel Arbitration**
**Case No.: 09-cv-02131-JM-BGS**

**A.**     **Plaintiffs Should Have Been Afforded an Opportunity to Conduct Limited Arbitration-Related Discovery Prior to Filing This Opposition.**

"The FAA provides for discovery and a full trial in connection with a motion to compel arbitration only if 'the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be an issue.' *9 U.S.C. § 4*." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir. 1999). "A proceeding to compel arbitration is in essence a suit in equity to compel specific performance of a contract." *Condee v. Longwood Mgmt. Corp.,* 88 Cal.App. 4th 215, 218 (2001); *Freeman v. State Farm Mut. Auto Ins. Co.*, 14 Cal.3d 473, 479 (1975); *Spear v. California State Auto. Assn.*, 2 Cal.4th 1035, 1040 (1992). Here, Plaintiffs sought copies of arbitration agreements for the putative class because Defendants seek to stay the action for the <u>entire putative class.</u>[6]

Plaintiffs sought via meet and confers with defense counsel, and thereafter a hearing with Magistrate Judge Skomal which was followed by a motion which was filed on June 24, 2011, to obtain copies of any and all arbitration agreements in existence with the putative class. Plaintiffs also sought several depositions to establish the validity and enforceability of those agreements, and the relationship between the signatories to the agreements and the non-signatories to those agreements. (Doc. No. 215). As of 12:00 p.m. on July 25, 2011 (the day that this opposition is due for filing), there has not been a ruling on that motion. Plaintiffs did file an *ex-parte* request to continue the briefing schedule on this motion, so that they could obtain the above-described discovery, but were advised that a decision on their *ex-parte* request would not be issued until after

---

[6] They make this request even though they know that Carlos Acevedo is an adequate class representative, does not have an arbitration agreement, and could prosecute the class case on behalf of any persons without valid arbitration agreements, without regard to how this motion is decided. Further, the motion for class certification could easily be heard concurrently with this motion in that, the Court could easily create a sub-class for any individuals whom the Defendants finally produce valid arbitration agreements for, if any, thereby allowing Mr. Acevedo to continue to prosecute the class action for any putative class members who do not have valid and enforceable arbitration agreements in existence.

-7-

**Pltfs' Opposition to Allied/Ares' Motion to Compel Arbitration
& Joinder in Coverall's Motion to Compel Arbitration
Case No.: 09-cv-02131-JM-BGS**

Magistrate Judge Skomal issued an order on Plaintiffs' motion for arbitration-related discovery.

Thus, it is Plaintiffs' position that they have done everything possible to ascertain the existence of arbitration agreements, a prerequisite necessary for Defendants' motion to be granted, and that there is not any evidence of arbitration agreements with anyone other than Ms. Laguna and Ms. Salas. In addition, Defendants did not file any affidavits or declarations with their moving papers providing evidence that arbitration agreements exist for any other members of the putative class. Plaintiffs fear that Defendants may attempt to create a record of other agreements or file declarations or affidavits in that regard along with their reply papers. This would be the ultimate in lack of due process and any such evidence, filed with a reply brief, should be stricken. Clearly, Plaintiffs have tried at every juncture to ascertain whether other agreements exist and have been thwarted not only by Defendants herein, but have been unable to obtain rulings from the Magistrate Judge allowing them to even **serve** discovery in that regard.

Plaintiffs should also have been afforded an opportunity to conduct limited arbitration related discovery prior to filing their opposition herein because if Defendants do establish that arbitration agreements exist (such as the two agreements in evidence regarding Ms. Laguna and Ms. Salas), Plaintiffs have the burden of proving that the arbitration agreements are invalid, and "must be given an opportunity to pursue discovery related to the issue that [they have] the burden to prove.) *Livingston v. Assocs. Fin. Inc.*, 2001 U.S. Dist. LEXIS 8678, *10 (N.D. Ill. June 25, 2001) *rev'd on other grounds by Livingston v. Assoc. Fin. Inc.*, 339 F. 3d 553 (7th Cir. 2003).

Under established precedent, the determination of whether the parties have entered into a valid, enforceable arbitration agreement is controlled by state law. *E.g. First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Romo v. Y-3 Holdings,* 87 Cal.App.4th 1153, 1158 (2001). Here, Defendants are prematurely asking the Court to rule on the validity of the arbitration

-8-

**Pltfs' Opposition to Allied/Ares' Motion to Compel Arbitration**
**& Joinder in Coverall's Motion to Compel Arbitration**
**Case No.: 09-cv-02131-JM-BGS**

agreement, without the benefit of a fully developed factual record as required by applicable state and federal law.  Given the fact-intensive nature of this inquiry, the validity of the agreement should not be resolved on the pleadings alone.  *See Granite Rock Co. v. International Brotherhood of Teamsters,* 130 S. Ct. 2847, 2856 (2010).

Because Plaintiffs were ordered by Magistrate Judge Skomal to withdraw the arbitration-related discovery they served, and await a ruling on a motion in that regard, there is no evidentiary record with respect to arbitration as Plaintiffs have not had the opportunity to even <u>serve</u> discovery, let alone to conduct discovery on a limited basis regarding Defendants' motion to compel arbitration.  Since Defendants raised this issue for the very first time on June 10, 2011, even though the case had been pending for three years, it seems highly prejudicial that the Plaintiffs have been precluded from even <u>serving</u> arbitration-related discovery.  There is no substantive record upon which the Court can base its decision (other than that there are two arbitration agreements relating to Ms. Laguna and Ms. Salas and that they are unenforceable because the Defendants failed to perform pursuant to those arbitration agreements and move to compel arbitration "promptly" (as required in ¶21(A) or "within two years" (as required in ¶22)) and, thus, no reasonable inferences can be drawn therefrom.  Furthermore, issues like waiver and whether arbitration agreements exist for the putative class go to the very heart of whether or not the parties consented to arbitration.  Arbitration discovery is routinely granted.  *E.g., Green Tree Fin. Corp. v. Randolph,* 531 U.S. 79, 91-92 (2000); *Blair v. Scott Specialty Gases,* 283 F.3d 595, 608-610 (3d Cir. 2002).

/ / /

/ / /

/ / /

-9-

**B.**     **Issues Concerning The Existence Of And Enforceability Of Arbitration Agreements Are For The Court's Determination.**

Federal courts rely on state law when addressing issues of contract validity and enforceability. *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 936-37 (9th Cir. 2001).  Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening *Section 2* of the FAA.  *Id.* at 937 *citing Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686 (1996).  Issues concerning the existence of an enforceable arbitration agreement are for the court's decision.  *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444-446 (2006); *see also Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1072 (9th Cir. 2007) ("When the crux of the complaint is not the invalidity of the contract as a whole, but rather the arbitration provision itself, then the federal courts [as opposed to the arbitrator] must decide whether the arbitration provision is invalid and unenforceable under 9 U.S.C. § 2." (brackets in original; internal quotes omitted)).[7]

/ / /

/ / /

/ / /

---

[7] In the event that Defendants claim that the arbitration agreement altered the Court's authority to determine issues of arbitrability, the arbitration agreements here do not meet the heightened standard that must be satisfied to vary the rule that the court decides the gateway issue of arbitrability.  See Exhibits A & B to Coverall's Request for Judicial Notice, Janitorial Franchise Agreements ("JFA"), ¶ 21(A). (Doc. No. 205-2.)  The JFA's upon which Defendants rely contain a severability clause that uses the phrase "court of competent jurisdiction," rather than the term "arbitrator," which indicates that the court has the authority to decide whether the arbitration agreement is unenforceable.  (JFA, ¶ 28.) Because there is ambiguity within the arbitration agreement, the court should decide the arbitrability issue. *See Parada v. Sup. Ct.*, 176 Cal.App.4th 1554, 1566 (2009) *quoting Baker v. Osborne Development Corp.*, 159 Cal.App.4th 884, 893-894 (2008) ("'Although one provision of the arbitration agreement stated that issues of enforceability or voidability were to be decided by the arbitrator, another provision indicated that the court might find a provision unenforceable.'"); *see also Dream Theater, Inc. v. Dream Theater*, 124 Cal.App.4th 547, 552 (2004) *citing First Options*, 514 U.S. at 945; *Hunt v. Sup. Ct.*, 81 Cal.App.4th 901, 909 (2000); *Greenspan v. LADT, LLC*, 185 Cal.App.4th 1413, 1440 (2010) *citing First Options*, 514 U.S. at 943-945 (finding that parties may reserve to the arbitrator the exclusive authority to determine gateway issues of arbitrability, but only if there is clear and unmistakable evidence of such an agreement, and when a contract is ambiguous regarding the arbitrator's power to determine such issues, it cannot satisfy the clear and unmistakable standard).

**Pltfs' Opposition to Allied/Ares' Motion to Compel Arbitration
& Joinder in Coverall's Motion to Compel Arbitration
Case No.: 09-cv-02131-JM-BGS**

**C.     The Arbitration Agreement Specifically Limits Arbitration Participants to Franchisees, Coverall, and its Officers, Directors, Agents, and Employees.**

Parties may contractually agree to limit with whom they chose to arbitrate their disputes. *Concepcion*, 131 S.Ct. at 1743.  When enforcing or interpreting an arbitration clause courts are required to "give effect to ...contractual limitations, and...must not lose sight of the purpose of the exercise: to give effect to the intent of the parties."  *Stolt-Nielsen*, 130 S.Ct. at 1774-1775.  The parties' intentions control because the arbitrator derives her/his power from the consensual agreement of the parties.  *Id.*  "An arbitrator has no general charter to administer justice for a community which transcends the parties but rather is part of a system of self-government created by and confined to the parties."  *Id.* (internal quotation marks omitted).

Here, in two places in the JFA, Coverall and the Franchisees contractually limited the persons/entities that can participate in any arbitration.  In Paragraph 21 (A) of the JFA only "claims between Coverall, its officers, directors, agents and/or employees...and Franchisee..." are required to be "submitted promptly for arbitration."  Then, in paragraph 21 (A)(11), the parties *specifically excluded* any other persons/entities as follows :

> **Only Coverall (and its officers, directors, agents and/or employees)** and Franchisee (and Franchisee's owners, officers, directors and/or guarantors) **may be parties to the any arbitration proceeding** described in Paragraph 21 (A).

There is no dispute that Ares is not an officer, director or employee of Coverall.  Nor has Ares submitted any evidence reflecting that it is an agent of Coverall despite that such an admission is the most direct route to being included in the arbitration proceedings.  Indeed, had Ares come forward with evidence that it was an agent of Coverall, it would not have had to make the "non-signatory" arguments it now makes since agents are specifically included in the

-11-

arbitration provision.  Ares has purposefully not submitted any evidence in support of its Motion.[8]

The party seeking arbitration bears the burden of proving that there is an agreement to arbitrate between the parties by a preponderance of the evidence.  *Rosenthal v. Great Western Fin. Securities Corp.* 14 Cal.4th 394, 413 (1996).  By submitting no evidence, Ares failed to meet its burden of proving it is an agent of Coverall entitled to join in the arbitration proceedings.

### 1.    Ares is Not an Agent of Coverall.

General contract and agency principles apply in determining whether an arbitration clause can be enforced by or against a non-signatory, including incorporation by reference, assumption, agency, veil-piercing/alter ego, and estoppel.  *Comer v. Micor, Inc.,* 436 F.3d 1098, 1101 (9th Cir.2006); *Valueselling Associates, LLC v. Temple* 2009 WL 3736264 * 6 (S.D.Cal. 2009).  Based on these principles Ares contends that it may compel arbitration merely by referencing agency and alter ego allegations in Plaintiffs' FAC without further proof.  But Ares has not cited to any cases that contain *a specific <u>exclusionary provision</u> like the one contained in the Coverall agreement.*  Moreover, also under general contract principles, the intent of the contracting parties *controls* and here they agreed that agents could join in, but no one else.  As a reflection of that concept, boilerplate agency allegations in a signatory's complaint are not sufficient to allow a non-signatory to force arbitration.[9]  Other courts have required or relied upon evidence submitted by the non-signatory to prove it falls within a category allowed to enforce the

---

[8] It is also interesting that Ares does not contend it is entitled to enforce the arbitration clause as a successor in interest to Coverall (JFA¶ 30) or as an assignee (JFA ¶ 16).  This is because then Ares would have to provide detailed documentation about its transactions with Coverall demonstrating those legal relationships (the assignment and/or the successor corporate liability).  *See, e.g. Britton v. Co-Op Banking Corp.*, 4 F.3d 742, 746 (9th Cir. 1993).

[9]  The allegations in that case were very similar to the FAC  ¶¶ 12 & 14 where Plaintiff alleged that "each Defendant acted ...as the agent of the other Defendant.." and "each and every Defendant and entity named herein was the agent... of each and every other Defendant...".  *Brown v. General Steel Domestic Sales, LLC* 2008 WL 2128057 *7 (C.D.Cal. 2008).

-12-

Pltfs' Opposition to Allied/Ares' Motion to Compel Arbitration
& Joinder in Coverall's Motion to Compel Arbitration
Case No.: 09-cv-02131-JM-BGS

agreement.  *See, e.g. Wolf v. Langemeier*, 2010 WL3341823 * 4 (E.D. Cal 2010) (non-signatory submits declaration showing it was agent and successor in interest); *Britton*, 4 F.3d at 747 (non-signatory submits facts of agency and employment and to support its motion to compel arbitration).

Given the contractual language in this case, for Ares to be able to force arbitration it should have to provide evidence of agency or alter ego or, alternatively, provide Plaintiffs the opportunity to conduct discovery on this issue.  When parties dispute the arbitrability of a claim or whether a non-signatory is a party to the arbitration agreement and can enforce the same, limited discovery on those issues is permitted.  *Dun Shipping Ltd. v. Amerada Hess Shipping Corp.* 234 F.Supp.2d 291, 293 (S.D.N.Y.,2002).  In the *Dun* case the court allowed discovery between the parties about the relationships between the various Defendants, alter ego, agency, notice, knowledge and acquiescence.  *Id.* at 295-297.  As to the parties who claimed the non-signatory was not entitled to enforce the arbitration provision, the *Dun* court stated:

> Given the contested factual record, it is difficult to conclude, as a matter of law, that Plaintiff was or was not a party to the Charter Party and, as a result, can or cannot enforce the Charter Party arbitration provisions. The Court will allow limited further discovery on this issue by Defendants and requests that the Magistrate revisit this issue by evidentiary hearing (or upon submission) thereafter. *See, e.g., Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980) (a "complicated set of conflicting facts requires an evidentiary hearing .... it is the very purpose of the trial to establish which party's version of the contested circumstances best comports with reality.").  *Id.* at 295.

The *Dun* court referred the parties back to the magistrate judge for "the purpose of scheduling limited discovery as outlined [in its order] and ...revisiting the issue of arbitrability by hearing or upon submission in light of such discovery.  *Id.* at 297.

/ / /

-13-

Pltfs' Opposition to Allied/Ares' Motion to Compel Arbitration
& Joinder in Coverall's Motion to Compel Arbitration
Case No.: 09-cv-02131-JM-BGS

### 2.    Ares' Equitable Estoppel Argument Fails.

Ares claims that it is entitled to rely on equitable estoppel to force arbitration simply based on the allegations in the FAC and no further evidence; however, the equitable estoppel theory only applies in "certain limited circumstances". *Valueselling*, 2009 WL 3736264 * 6.[10]  Based on the specific contractual exclusion, this is not one of those limited circumstances.

In support of their equitable estoppel argument, Ares has failed to cite, and Plaintiffs have not located, any controlling case where the court applied the equitable estoppel theory and allowed a non-signatory to force arbitration despite a specific provision in the arbitration clause expressly excluding non-signatories.  The arbitration clauses that were the subject of *Valueselling* contained very simplistic one paragraph provisions with no additional exclusionary contract provisions.  See **Exhibit 1** to RJN.  In contrast, the parties here twice contractually limited the persons/entities that could participate in any arbitration.[11]

Equitable estoppel only applies if (1) Plaintiffs "must rely on the terms of the written agreement in asserting [their] claims against" Ares or (2) Plaintiffs raise "allegations of substantially interdependent and concerted misconduct" by both Ares "and one or more of the signatories to the contract." *Id.*  Because this theory is equitable in nature, the court has "considerable discretion to select a remedy that is appropriate under the circumstances." *Amisil Holdings, Ltd. v. Clarium Capital Management, LLC* 2006 WL 3949332, 14 (N.D.Cal.2006). Plaintiffs submit that since Plaintiffs have made a prima facie case of exclusion, Ares should now have the burden of proving that it meets the test without simply relying on Plaintiffs' FAC

---

[10]Some courts have even characterized the application of equitable estoppel as "rare". *See, e.g. Westmoreland v. Sadoux*, 299 F.3d 462, 465 (5th Cir. 2002).

[11]In their opposition to Plaintiffs' class certification motion, Coverall confirms that the JFAs are solely between Coverall and the Franchisees and that Ares is not a party.  (Doc. No. 158, pg.4, n.4.)

-14-

Pltfs' Opposition to Allied/Ares' Motion to Compel Arbitration
& Joinder in Coverall's Motion to Compel Arbitration
Case No.: 09-cv-02131-JM-BGS

allegations of alter ego, joint enterprise and joint employer.  Equitable estoppel should not be based exclusively on the allegations contained in the complaint, it should be granted when "the totality of the evidence supports an objective intention to agree to arbitrate," *See Ross v. American Express Company*, 547 F.3d 137, 148 (2nd Cir. 2008).  The burden should be on the nonsignatory defendant to show that the signatory plaintiff intended to submit to arbitration notwithstanding the absence of a formal agreement.  *In re TFT-LCD (Flat Panel) Antitrust Litigation*, 2011 WL 1753784, *5 (N.D.Cal. 2011).

There is a "black letter rule that the obligation to arbitrate depends on consent." *Id.*  The intent of the parties when entering into the JFA cannot be ignored in these circumstances.  The JFA provides for arbitration when the dispute arises "out of or [is] related to *the relationship of the parties*, this Agreement...any related agreement *between the parties*, and/or any specification, standard or operating procedure of Coverall."  Thus, when the Franchisees executed the JFA they agreed to arbitrate disputes arising out of *their relationship with Coverall and their contract with Coverall* - - - not Allied/Ares, entities that they had never met.  To Plaintiffs' knowledge, Ares had no direct contact with any Franchisees either during JFA negotiations or thereafter.[12]  When Franchisees entered into the JFA not one of them knew that he/she was entering into any kind of relationship with Ares and, therefore, could not have had the necessary intent to agree to arbitrate this dispute with Ares.  In such circumstances equitable estoppel does not apply.  *See Ross* at 143.

Whether estoppel applies depends "on the degree to which the merits are bound up with the contract and whether there is 'tight relatedness of the parties, contracts and controversies.'" *TFT-LCD, supra*, *citing JLM Indus., Inc. v. Stolt–Nielsen SA,* 387 F.3d 163, 178 (2d Cir.2004).

---

[12]Again, it bears noting that if Ares was to prove that it was a successor in interest to Coverall or an agent or an assignee, all of its non-signatory problems would dissolve since the law is clear that once a non-signatory makes such a showing, it is allowed to enforce the arbitration provision.

Pltfs' Opposition to Allied/Ares' Motion to Compel Arbitration
& Joinder in Coverall's Motion to Compel Arbitration
Case No.: 09-cv-02131-JM-BGS

As a matter of equity, the burden of proof in this regard has to be foisted onto Ares because Plaintiffs have no relationship and no contract with Ares.  More importantly, they have been precluded from conducting full discovery into the relationships between defendants, including alter ego discovery.  Ares' Motion should be denied, or, alternatively, Plaintiffs should be permitted to conduct discovery into the relationship between Ares and Coverall.

### D. Defendants Have Waived their Right to Arbitrate.

The right to compel arbitration arises from the parties' contract and, as with other contractual rights, is subject to waiver.  *See Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 758-759 (9th Cir. 1988).  Such waiver may be express or implied from the parties' conduct. *See Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986). A party seeking to prove waiver of a right to arbitration must demonstrate "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts."  *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 921(9th Cir. 2009).  It is for the court to decide whether a party has waived its right to arbitrate.  *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119-1121 (9th Cir. 2008).  "A party acts inconsistently with its right to arbitrate if the party 'substantially invokes the litigation machinery before asserting its arbitration right.'"  *Hooper v. Advance America, Cash Advance Centers of Missouri, Inc.*, 589 F.3d 917, 921 (8th Cir. 2009) (finding that defendant substantially invoked litigation machinery where it filed extensive and exhaustive motion to dismiss in which it asserted that the plaintiffs had failed to state claims for relief and sought a final decision from the district court upon the parties' entire dispute) *quoting Lewallen v. Green Tree Servicing, L.L.C.*, 487 F.3d 1085, 1090, 1092 (8th Cir. 2007) (finding that a request to dispose of a case on the merits before reaching arbitration "is inconsistent with resolving the case through

-16-

**Pltfs' Opposition to Allied/Ares' Motion to Compel Arbitration
& Joinder in Coverall's Motion to Compel Arbitration
Case No.: 09-cv-02131-JM-BGS**

1  arbitration.").  "Although prejudice manifests itself in myriad ways, '[p]rejudice results when . .

2  . parties . . . litigate substantial issues on the merits, or when compelling arbitration would require

3  a duplication of efforts.'" *Hooper*, 589 F.3d at 923 *quoting Kelly v. Golden*, 352 F.3d 344, 349-350

4  (8th Cir. 2003).

5

6         Defendants obviously knew of their right to compel arbitration, as they assert in their

7  Motion that *Concepcion* "clarified that the arbitration provisions in the JFAs are enforceable."

8  Motion, p. 1:14-16.  Yet, Defendants offer no evidence regarding their reasons for failing to file

9  the Motion earlier in the litigation.  Further, the law as it existed prior to *Concepcion* would not

10  have conclusively rendered the arbitration agreements at issue unenforceable.  In fact, in claiming

11  that *Concepcion* recently clarified the enforceability of the arbitration agreements in the JFA's,

12  Defendants fundamentally mischaracterize California's *Discover Bank* rule.  In *Discover Bank*,

13  36 Cal.4th 148 (2005), the California Supreme Court held that a waiver of class wide arbitration

14  in a consumer contract of adhesion *may* be unconscionable under certain circumstances.

15  Specifically, the court concluded: "**We do not hold that all class action waivers are necessarily**

16  **unconscionable.**" *Id.* at 162-163 (emphasis added).  The principle that not all class action waivers

17  are unconscionable and, thus, unenforceable was further fleshed out in *Smith v. Americredit*

18

19  *Financial Services, Inc.*, 2009 U.S. Dist. LEXIS 115767 (S.D. Cal. Dec. 11, 2009), where

20  defendant's motion to compel arbitration was granted, despite the fact that the arbitration clause

21  contained a class action waiver.  To wit:

22

23         **[U]nder *Discover Bank*, arbitration provisions that contain class action**
         **waivers are not *per se* unconscionable**.  Instead, a class action bar is
24         unconscionable *only if* three factors are present: (1) the class action waiver is
         contained in a consumer contract of adhesion, (2) in which small amounts of
25         damages are at issue, and (3) it is alleged that the party with the superior
         bargaining power has carried out a scheme to deliberately cheat large numbers of
26         consumers out of individually small sums of money.  *Smith*, 2009 U.S. Dist.
27

28
                                            -17-
Pltfs' Opposition to Allied/Ares' Motion to Compel Arbitration
& Joinder in Coverall's Motion to Compel Arbitration
Case No.: 09-cv-02131-JM-BGS

LEXIS 115767 at *17-18 (emphasis added).

The *Smith* decision is crucially important because it came after the Ninth Circuit's holding in *Laster v. AT&T Mobility LLC*, 584 F.3d 849 (9th Cir. 2009) that the FAA did not preempt California law, specifically the *Discover Bank* rule, regarding the unconscionability of class action waivers in consumer contracts of adhesion. Notably, the Ninth Circuit's decision in *Laster* did not come down until October 27, 2009, two months after Defendants were added to this case in August 2009.

Moreover, once the Supreme Court granted certiorari of *Laster* in *Concepcion*, 130 S.Ct. 3322, on May 24, 2010, Defendants should have at a minimum moved to stay the proceedings pending the Supreme Court's decision. *See, e.g., Carney v. Verizon Wireless Telecom, Inc.*, 2010 U.S. Dist. LEXIS 77636 (S.D. Cal. Aug. 2, 2010) (granting motion to stay proceedings pending the outcome of *Concepcion*). This would have given Plaintiffs notice that Defendants intended to arbitrate the case if the decision in *Concepcion* was in their favor. Instead, Defendants allowed Plaintiffs to incur in excess of $3 million in attorneys fees, preparing for class certification, which is strong evidence of waiver, as Defendants "substantially invoked" the litigation machinery and forced the Plaintiffs to spend millions of dollars preparing for class certification, a procedural mechanism they now wish to abate altogether. The delay not only affected Plaintiffs, but misled them and cause them sever prejudice.

Further, Defendants have acted inconsistently with their right to arbitrate by engaging in vigorous litigation, even after the *Concepcion* decision. Due to Defendants' inconsistent acts, Plaintiffs will be substantially prejudice if Defendants' Motion is granted. Defendants have filed numerous motions to dismiss seeking to resolve this case on the merits in its entirety, filed a comprehensive Opposition to Plaintiffs' Motion for Class Certification, which required Plaintiffs'

-18-

Pltfs' Opposition to Allied/Ares' Motion to Compel Arbitration
& Joinder in Coverall's Motion to Compel Arbitration
Case No.: 09-cv-02131-JM-BGS

counsel to essentially shut down all other operations in order to research and brief the Reply, etc. In light of Defendants' inconsistent acts with their right to arbitrate and the substantial prejudice Plaintiffs will suffer, this Court should deny Defendants' Motion.

### E. Plaintiffs' Claims are Not Within the Scope of the Arbitration Agreement.

Plaintiffs hereby incorporate their arguments from their Opposition to Coverall's Motion to Compel Arbitration.

### F. The Arbitration Agreement is Unconscionable.

Plaintiffs hereby incorporate their arguments from their Opposition to Coverall's Motion to Compel Arbitration.

### G. The Arbitration Agreement Fails Due to Lack of Consent.

Plaintiffs hereby incorporate their arguments from their Opposition to Coverall's Motion to Compel Arbitration.

## IV. THE COURT SHOULD DENY DEFENDANTS' MOTION TO STAY THE PROCEEDINGS

Pursuant to *Section 3* of the FAA:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant is not in default in proceeding with such arbitration. *9 U.S.C. § 3.*

/ / /

/ / /

/ / /

-19-

**Pltfs' Opposition to Allied/Ares' Motion to Compel Arbitration
& Joinder in Coverall's Motion to Compel Arbitration
Case No.: 09-cv-02131-JM-BGS**

"In deciding a motion to stay a proceeding pending arbitration, a court must determine '(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *McLeod v. Ford Motor Co.*, 2005 U.S. Dist. LEXIS 17188, *2 (C.D. Cal. Apr. 14, 2005). "Where some portions of an action are arbitrable and others are not, the decision to stay those claims not subject to arbitration is in the court's discretion." *Id.* at *2. "In deciding whether to stay non-arbitrable claims, a court considers economy and efficiency, the similarity of the issues of law and fact to those that will be considered during arbitration, and the potential for inconsistent findings absent a stay." *Id.* at *2.

Laguna's and Salas' arbitration agreements contain a provision that "[a] decision by the arbitrator . . . shall be confidential . . . and may not be collaterally used . . . in existing or subsequent litigation or arbitration involving any other franchisee or third party."   (JFA, ¶ 21(A)(14).) This provision effectively eliminates any concerns regarding economy and efficiency or inconsistent findings because this Court cannot use any previous determination on the same issues of fact and/or law as collateral estoppel.  Accordingly, there is no reason to stay this case because Acevedo's claims and those of the putative class members will be unaffected either way by any decision that the arbitrator reaches with regard to Laguna's and Salas' claims. Accordingly, this Court should deny Defendants' Motion to Stay the Proceedings.

/ / /

/ / /

/ / /

/ / /

/ / /

-20-

**V.     CONCLUSION**

Based on the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion to Compel Arbitration and deny the Motion to Stay the Proceedings.


**LORENS & ASSOCIATES, APLC**
**CADENA CHURCHILL, LLP**

Dated: July 25, 2011                      By: /s/ L. Tracee Lorens
                                          L. Tracee Lorens, Esq.
                                          Attorney for Plaintiffs

-21-

**Pltfs' Opposition to Allied/Ares' Motion to Compel Arbitration**
**& Joinder in Coverall's Motion to Compel Arbitration**
**Case No.: 09-cv-02131-JM-BGS**