UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SABRINA LAGUNA, et al.,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>COVERALL NORTH AMERICA, INC.; et al.,<br><br>　　　　　　　　　　Defendants. | Civil No.   09cv2131-JM (BGS)<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR ARBITRATION DISCOVERY**<br><br>**[Doc. No. 212]** |

　　　Before the Court is Plaintiffs' motion for leave to serve limited arbitration related discovery. (Doc. No. 212.)  Plaintiffs seek to conduct this discovery for the purpose of opposing Defendants' motions to compel arbitration.  Pursuant to Civil Local Rule 7.1(d)(1), this motion is suitable for disposition on the papers submitted.

### I.     RELEVANT BACKGROUND

　　　Plaintiffs filed this putative class action against Defendants based on a purported franchise agreement between the parties for the provision of janitorial and cleaning services.[1]  (Doc. No. 147.)  Plaintiffs' Fourth Amended Complaint ("FAC") states the following twelve causes of action: (1) breach

---

[1] Plaintiffs have a motion for class certification pending before the Hon. Jeffrey T. Miller.  (Doc. No. 75.)

of contract; (2) misleading advertising in violation of CAL. BUS. & PROF. CODE § 17500 et seq.;[2] (3) failure to pay minimum wage in violation of CAL. LAB. CODE §§ 1194, 1194.2 & 1197; (4) failure to pay overtime compensation in violation of CAL. LAB. CODE §§ 510 & 1194 et seq.; (5) failure to provide rest periods or compensation in lieu thereof in violation of CAL. LAB. CODE § 226.7 and relevant California Industrial Wage Commission ("IWC") orders; (6) failure to provide meal periods or compensation in lieu thereof in violation of CAL. LAB. CODE §§ 226.7 & 512 and relevant IWC orders; (7) failure to reimburse for reasonable business expenses in violation of CAL. LAB. CODE § 2802; (8) unlawful deductions from wages in violation of CAL. LAB. CODE §§ 221 & 223; (9) conversion; (10) unfair business practices under CAL. BUS. & PROF. CODE § 17200 et seq.; (11) theft of labor in violation of CAL. LAB. CODE §§ 216, 553 & 1199 and CAL. PENAL CODE §§ 484 & 532; and (12) injunctive relief.

Plaintiffs Laguna and Salas each signed arbitration provisions when they entered into their Janitorial Franchise Agreements ("JFA") with Coverall North America, Inc. (Doc. No. 205-2, Exs. A-B.) The arbitration clause requires the parties to submit their disputes to binding arbitration on an individual basis. (*Id*.) The relevant portions of the arbitration provision state:

> A.   <u>Arbitration</u>. Except as otherwise provided in Paragraphs 21A(14) and 21B, all controversies, disputes or claims between Coverall, its officers, directors, agents and/or employees (in their respective capacities ) and Franchisee (and Franchisee's owners, officers, directors, and/or any guarantors of this Agreement) arising out of or related to the relationship of the parties, this Agreement or the validity of this Agreement, any related agreement between the parties, and/or any specification, standard or operating procedure of Coverall, including those set forth in the Coverall Policy and Procedure Manual, which controversies, disputes, or claims are not resolved in accordance with Paragraph 20, shall be submitted promptly for arbitration.
>    (1)   Arbitration shall be subject to the Federal Arbitration Act and not any state arbitration law and, except as otherwise provided in this Agreement or agreed upon by the parties in writing, the then current Rules of the American Arbitration Association for Commercial Arbitration.
>    * * *
>    (6)   The arbitrator or appointed arbitrators shall not alter or otherwise reform the terms of this Agreement, or award any relief or grant any remedy not provided for in this Agreement or specifically excluded by this Agreement.
>    * * *
>    (11)   Franchisee and Coverall agree that arbitration shall be conducted on an individual, not a class wide basis, which restriction shall be enforceable to the fullest extent permitted by law. An arbitration

---

[2]Defendants Coverall North America, Inc., CNA Holding Corporation, and Ted Elliott have a motion to dismiss Plaintiffs' claim for misleading advertising pending before Judge Miller. (Doc. No. 162.)

> between Coverall and Franchisee shall not be consolidated with any other proceeding between Coverall and any other Franchisee. Only Coverall (and its officers, directors, agents and/or employees) and Franchisee (and Franchisee's owners, officers, directors, and/or any guarantors) may be parties to any arbitration proceeding described in this Paragraph 21.A.

(Doc. No. 205-2, Exs. A & B, § 21.)  Plaintiff Laguna signed her JFA September 28, 2006 and Plaintiff Salas signed her JFA August 24, 2006.  (*Id*. at Exs. A & B)  Plaintiffs Laguna and Salas have never disputed that they entered into a JFA or that the agreements do not contain an arbitration provision specifically barring Plaintiffs from arbitrating their claims on a class wide basis.  (Doc. No. 205-1 at 10.)  Additionally, section 28 of the JFA contains a severability clause.  The clause states: "If any term, provision, covenant, or condition of this Agreement is held by a *court of competent jurisdiction* to be invalid, void, or unenforceable, the remainder of the provisions shall remain in full force and effect and shall in no way be affected, impaired, or invalidated."  (Doc. No. 205-2, Exs. A & B, § 28.)  (emphasis added.)

      Recently, the Supreme Court issued its decision in *AT & T Mobility LLC v. Concepcion,* — U.S. —, 131 S.Ct. 1740, — L.Ed.2d — (2011).  The Court held that the Federal Arbitration Act ("FAA") preempts California's unconscionability law regarding exemption of certain claims from arbitration, at least for actions in federal court.  *Concepcion* declared that states cannot refuse to enforce arbitration agreements based on public policy.  131 S.Ct. at 1746, 1752 (holding that the rule set forth in *Discover Bank v. Superior Court*, 36 Cal.4th 148 (2005), is preempted by the FAA because it is inconsistent with the FAA's purposes, despite "its origins in California's unconscionability doctrine and California's policy against exculpation").  Prior to *Concepcion*, the *Discover Bank* rule was consistently applied to render any consumer contract of adhesion containing a class-action waiver unconscionable.  Under California law, courts may refuse to enforce any contract deemed "unconscionable at that time it was made," or may "limit the application of any unconscionable clause."  Cal. Civ. Code § 1670.5.  Thus, courts would not enforce arbitration agreements that contained class-action waivers.  *See Concepcion*, 131 S.Ct. at 1746.  Accordingly, *Concepcion* drastically altered the law governing arbitration agreements in California.

///
///

As a result of the change in law, on June 10, 2011, Defendants Coverall North America, Inc., CNA Holding Corporation, and Ted Elliott (collectively "Coverall Defendants") filed a motion to: (1) compel arbitration of Plaintiffs Laguna and Salas' claims and stay this action pending arbitration; and (2) strike all class allegations in the FAC as to Laguna and Salas.[3]  (Doc. No. 205.)  On June 14, 2010, Defendants Allied Capital Corporation and Ares Capital Corporation (herein "Allied/Ares") filed a motion to compel arbitration and stay this action under the FAA.  (Doc. No. 207.)[4]

In response to Defendants' motions to compel arbitration, Plaintiffs filed the instant motion for leave to conduct limited discovery regarding the existence, formation, and application of the arbitration agreements.  (Doc. No. 212.)  Specifically, Plaintiffs seek discovery regarding the enforceability of the arbitration agreements.  (*Id.* at 4.)  In order to explore whether the agreements are enforceable, Plaintiffs request leave to take "two or three Federal Rule of Civil Procedure 30(b)(6) depositions.  (*Id.*)  At least one of the Rule 30(b)(6) depositions will be directed to Allied/Ares.  (*Id.*)  Plaintiffs also want to propound Requests for Production of Documents to ascertain whether written arbitration agreements exist for the entire putative class.  (*Id.* at 3.)

## II.   DISCUSSION

### A.   Extending Time

When a motion is made after time has expired, the court may extend the time "if the party failed to act because of excusable neglect."  Fed. R. Civ. P. 6(b)(1)(B).  The Supreme Court has instructed courts to determine the issue of excusable neglect within the context of a particular case and to weigh a number of equitable factors in determining whether an extension is appropriate.  *See Pincay v. Andrews*, 389 F.3d 853, 859 (9th Cir. 2004) (referring to *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993)).  The United States Court of Appeals for the Ninth Circuit applies a four factor test to determine whether neglect is excusable.  The factors are: "(1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith."  *Bateman v. U.S. Postal*

---

[3] At this time Defendants do not seek to compel arbitration against the other named plaintiff, Carlos Acevedo, because neither party is able to locate his signed JFA. (Doc. No. 205-1 at n.1.)

[4] Plaintiffs claims against Allied/Ares are solely based on alter ego, joint enterprise, and joint employer theories of liability.  *See* Doc. Nos. 132, 147.

*Service*, 231 F.3d 1220, 1223-24 (9th Cir. 2000) (citing *Pioneer*, 507 U.S. at 395).

The deadline for the completion of fact discovery was February 1, 2011. (Doc. No. 48.) Defendants did not move to compel arbitration until June 10 and June 14, 2011. (Doc. Nos. 205, 207.) Therefore, Plaintiffs were not on notice that arbitration related discovery may be necessary until well after the close of fact discovery. Defendants filed the motions to compel arbitration well into the case, and should have known that as a result, Plaintiffs might need to conduct limited discovery to investigate the enforceability of the arbitration clause. Therefore, there is no danger of prejudice to Defendants in reopening discovery for this narrow purpose. Additionally, any delay that may ensue if the Court allows Plaintiffs discovery narrowly tailored to opposing the motions to compel arbitration will not adversely impact the proceedings. Finally, Plaintiffs acted in good faith by requesting leave to conduct this discovery soon after Defendants filed their motions to compel arbitration. *See Bateman*, 231 F.3d at 1223-24. Accordingly, the Court finds that Plaintiffs' neglect is excusable, and therefore, the request to reopen discovery in order to oppose the motions to compel arbitration is timely.

### B. Motions to Compel Arbitration

Pursuant to the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The court's only role is to determine whether a valid arbitration agreement exists and whether the scope of the parties' dispute falls within that agreement. *Id.* at §4; *Chiron Corp. v. Ortho Diognostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "Under § 4 of the FAA, a district court must issue an order compelling arbitration if the following two-pronged test is satisfied: (1) a valid agreement to arbitrate exists; and (2) that agreement encompasses the dispute at issue." *United Computer Systems, Inc. v. AT & T Corp.*, 298 F.3d 756, 766 (9th Cir. 2002); *see also Chiron*, 207 F.3d at 1130 (citing 9 U.S.C. § 4; *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719–20 (9th Cir.1999)).

///
///
///
///
///
///

In certain circumstances, however, the court must first consider whether the parties' agreement reserved for the arbitrator questions regarding the validity and/or enforceability of the arbitration agreement itself. *See e.g. Awuah v. Coverall N. Am., Inc.,* 554 F.3d 7, 11 (1st Cir. 2009); accord *Terminix Int'l Co. v. Palmer Ranch Ltd.,* 432 F.3d 1327, 1332-33 (11th Cir. 2005); *Contec Corp. v. Remote Solution, Co.,* 398 F.3d 205, 208 (2d Cir. 2005); *Bailey v. Ameriquest Mortgage Co.,* 346 F.3d 821, 822-23 (8th Cir. 2003). This initial consideration is referred to as a "gateway" question. The Supreme Court recognizes that parties may agree to arbitrate 'gateway' questions of 'arbitrability.'[5] *Rent-A-Center West v. Jackson*, 130 S.Ct. 2772, 2777 (2010). Before a court submits the question of arbitrability to the arbitrator, the court must first determine that the parties' agreement to arbitrate arbitrability is clear and unmistakable. *Id.; see also First Options*, 514 U.S. at 944-45; *Rodriquez v. American Tech., Inc.*, 136 Cal.App.4th 1110, 1123 (2006); *Greenspan v. LADT, LLC*, 185 Cal.App.4th 1413 (2010). Furthermore, the cases hold that where the agreement to arbitrate includes an agreement to follow a particular set of arbitration rules— such as the Commercial AAA Rules—that provide for the arbitrator to decide questions of arbitrability, the gateway question is decided by the arbitrator." *Visa USA, Inc. v. Maritz Inc.*, 2008 WL 744832, *4 (N.D. Cal. March 18, 2008); *see also, e.g., Poponin v. Virtual Pro, Inc.*, 2006 WL 2691418, *9 (N.D. Cal. Sept. 20, 2006); *Anderson v. Pitney Bowes, Inc.*, 2005 WL 1048700, *2-4 (N.D. Cal. May 4, 2005); *Terminix*, 432 F.3d at 1332.

The AAA Commercial Rules provide that: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." AAA Commercial Rule R-7(a). By explicitly incorporating the AAA rules, courts routinely hold that the parties clearly and unmistakably agreed that questions of arbitrability would be submitted to arbitration for resolution. *See, e.g., Contec*, 398 F.3d at 208; *Terminix*, 432 F.3d at 1332 (holding that "by incorporating the AAA rules, including [Rule 7], into their agreement, the parties clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid"); *Dream Theater, Inc. v. Dream Theater*, 124 Cal.App.4th 547, 557 (2004) (holding that a contract containing language stating that binding arbitration will be conducted in accordance with the

---

[5]"Arbitrability" is a term of art. Abitrability is defined as the ability to be arbitrated. Throughout this order arbitrability concerns the preliminary question of whether an arbitral tribunal has jurisdiction over the dispute.

AAA Commercial Arbitration Rules is clear and unmistakable evidence of the parties' intent that the arbitrator will decide any dispute over arbitrability).

When the contract clearly and unmistakably reserves issues of arbitrability for the arbitrator, the question becomes whether the provision delegating that gateway question is enforceable. *Rent-A-Center West*, 130 S.Ct. at 2778. The court may only intervene if a party solely challenges the delegation provision and not the validity and/or enforceability of the entire arbitration agreement. *See id.* at 2778-79.

A few California cases have held that when read together, an arbitration provision and a severability provision in an agreement may create an ambiguity regarding who determines the gateway question of validity and/or enforceability. *See Parada v. Superior Court*, 176 Cal.App.4th 1554, 1565 (2009); *Baker v. Osborne Devel. Corp.*, 159 Cal.App.4th 884, 891-894 (2008); *Hartley v. Superior Court,* 2011 WL 2535582 *5 (Cal.App. 4 Dist. June 28, 2011). Where one section of the agreement states that the issues of enforceability or voidability are to be decided by the arbitrator, but another provision of the agreement indicates that a *court* might find a provision unenforceable, the arbitration agreement does not necessarily "clearly and unmistakably" reserve to the arbitrator the gateway question of arbitrability. *Id*. If the court decides that an ambiguity exists and that as a result the delegation provision is not clear and unmistakable, the court rather than the arbitrator will be tasked with deciding gateway questions of enforceability and/or validity.

Defendants argue that because the JFA's arbitration clause reserves for the arbitrator all questions regarding its validity and/or enforceability, Plaintiffs' request for discovery into the arbitration clause's enforceability should be directed to the arbitrator. (Doc. No. 216 at 2-3.) Plaintiffs appear to argue that because the JFA contains a severability clause, the court, rather than the arbitrator, will decide the gateway question of arbitrability. (Doc. No. 218 at 2; *see also id*. at Ex. 1.) The arbitration clause specifically provides that "all controversies, disputes or claims . . . arising out of or related to the relationship of the parties, this Agreement or the validity of this Agreement, any related agreement between the parties, and/or any specification, standard or operating procedure . . . shall be submitted promptly for arbitration." (Doc. No. 205-2, Exs. A & B, § 21.) The agreement further states that "[ar]bitration shall be subject to the Federal Arbitration Act and not any state arbitration law and, except as otherwise provided in this Agreement or agreed upon by the parties in writing, the then current Rules

1  of the American Arbitration Association for Commercial Arbitration." (*Id.*)  Nonetheless, the JFA also
2  contains a severability clause stating: "If any term, provision, covenant, or condition of this Agreement
3  is held by a *court of competent jurisdiction* to be invalid, void, or unenforceable, the remainder of the
4  provisions shall remain in full force and effect and shall in no way be affected, impaired, or
5  invalidated." (*Id.* at § 28.) (emphasis added.)

6       "The issue of who should decide arbitrability turns on what the parties agreed in their contract."
7  *First Options,* 514 U.S. at 943; *Dream Theater,* 124 Cal.App.4th at551.  When deciding this issue,
8  courts generally apply ordinary state-law principles governing contract formation.  *Dream Theater,* 124
9  Cal.App.4th at552.  California Civil Code section 1643 provides: "The words of a contract are to be
10 understood in their ordinary and popular sense, rather than according to their strict legal meaning; unless
11 used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which
12 case the latter must be followed."  When a contract is capable of two different reasonable
13 interpretations, the contract is ambiguous.  *See Harvey v. Landing Homeowners Ass'n*, 162 Cal.App.4th
14 809, 817 (2008).

15      Because contract interpretation is a matter of law, Judge Miller will decide whether the
16 severability clause in the JFA creates an ambiguity such that the contract does not clearly and
17 unmistakably reserve for the arbitrator questions of validity and/or enforceability.  To make this
18 determination, the court will conduct a "facial and limited" review of the contract in order to decide
19 whether the parties "have in fact clearly and unmistakably agreed to commit the question of arbitrability
20 to the arbitrator." *Anderson*, 2005 WL 1048700, *4 (citations omitted).

21              **C.    Discovery In Connection with Motions to Compel Arbitration**
22      Although the Federal Rules generally allow for broad discovery in civil actions, discovery in
23 connection with a motion to compel arbitration is limited under the FAA.  The Ninth Circuit has
24 explained that the FAA provides for discovery in connection with a motion to compel arbitration only if
25 "'the making of the arbitration agreement . . . be in issue.'"  *Simula,* 175 F.3d at 726 (citing *Prima Paint*
26 *Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967)).  Moreover, a court must limit
27 discovery when "the burden or expense of the proposed discovery outweighs its likely benefit, taking
28 into account the needs of the case, the amount in controversy, the parties' resources, the importance of
   the issues at stake in the litigation, and the importance of the proposed discovery in resolving the

issues." Fed. R. Civ. P. 26(b)(2)(C)(iii); *see also Playboy Enterprises, Inc. v. Welles*, 60 F. Supp.2d 1050, 1054 (S.D. Cal. 1999). The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1). *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995). In turn, the party opposing discovery has the burden of showing that discovery should not be allowed, and also has the burden of clarifying, explaining and supporting its objections with competent evidence. *DirectTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002).

### 1. Rule 30(b)(6) Depositions to Conduct Discovery Regarding the Enforceability of the Arbitration Clause

#### a. Deposition of Coverall Defendants

Unless Judge Miller determines that the severability provision creates an ambiguity, the determination of whether the arbitration clause is enforceable will be set before the arbitrator. Accordingly, unless an ambiguity exists, all discovery relating to the enforceability of the arbitration agreement will take place in the arbitration context. At this stage, the necessity for discovery is unclear. Therefore, the burden and expense of permitting discovery into issues that may not materialize far outweighs the potential benefit of allowing the discovery. *See* Fed. R. Civ. P. 26(b)(2)(C)(iii).

If Judge Miller does determine that the severability provision creates an ambiguity such that he will decide arbitrability questions, Plaintiffs may be entitled to limited discovery. At that time, Plaintiffs may request a reasonable opportunity to conduct discovery into "the making and performance of the agreement to arbitrate." *Simula,* 175 F.3d at 726 (citing *Prima Paint*, 388 U.S. at 403-04). Because the FAA only permits limited discovery when a motion to compel arbitration is pending, Plaintiffs' discovery must be narrowly tailored to determining whether the arbitration clause is enforceable under California law. *See Coneff v. AT&T Corp.*, 2007 WL 738612, *9 (W.D. Wash. Mar. 9, 2007); *see also Hamby v. Power Toyota Irvine*, 11-cv-544-BTM, Doc. No. 25 (S.D. Cal. July 18, 2011); *Toppings v. Meritech Mortgage Services, Inc.*, 140 F. Supp.2d. 683, 685 (S.D. W.Va. 2001). At this time, however, the request for a Rule 30(b)(6) deposition of the Coverall Defendants is **DENIED without prejudice**.

#### b. Rule 30(b)(6) Deposition of Allied/Ares

Defendant Allied/Ares oppose Plaintiffs' request to conduct a Rule 30(b)(6) deposition to ascertain whether Allied/Ares is a party to the arbitration agreement. (Doc. No. 217 at 2.) Allied/Ares is named in the complaint under joint employer, joint enterprise, and alter ego theories of liability.

(FAC, Doc. No. 147 at ¶¶ 15-17; *See also* Doc. No. 132 at 3.)  Allied/Ares does not seek to compel arbitration on the basis that it is a party to the JFA, but rather because the doctrines of alter ego and equitable

estoppel permit a non-signatory defendant to compel signatory plaintiffs to arbitrate their claims.  (Doc. No. 217 at 4.)

Where plaintiffs would not otherwise have an independent right to recover against non-signatory defendants, even if the contract containing the arbitration clause was void, equitable estoppel will prevent plaintiffs from avoiding arbitration of their claims against non-signatory defendants. *See JLM Industries, Inc. v. Stolt-Nielsen SA*, 387 F.3d 163 (2nd Cir. 2004); *Bellizan v. Easy Money of Louisiana, Inc.*, 2002 WL 1066750 (E.D. La. 2002); *Bloxom v. Landmark Pub. Corp.*, 184 F. Supp.2d 578 (E.D. Tex. 2002).  Additionally, where the arbitration agreement reserves questions of arbitrability for the arbitrator, the issue as to whether a non-signatory to the arbitration agreement can compel arbitration is a question regarding the validity of the arbitration agreement that is reserved for the arbitrator. *Contec*, 398 F.3d 205.

For all of the reasons stated above with respect to the Coverall Defendants, discovery is inappropriate unless Judge Miller determines that the JFA does not reserve the gateway question of arbitrability for the arbitrator.  If the arbitrator is to determine the validity and/or enforceability of the arbitration provision, the arbitrator will also be charged with deciding the ability of Allied/Ares to enforce the arbitration clause. *See id*.  As such, it is not clear at this time that discovery will be permitted in this venue, thus, the burden and expense of the proposed deposition outweighs its benefit given the current context of the case. *See* Fed. R. Civ. P. 26(b)(2)(C)(iii).  Accordingly, the request for a 30(b)(6) deposition of Allied/Ares is **DENIED without prejudice**.

### 2. Plaintiffs' Request for Production of Arbitration Clauses for Putative Class Members

Defendants have produced the JFAs for both Laguna and Salas.  In fact, the agreements were attached to the Coverall Defendants' motion to compel arbitration.  (Doc. No. 205-2, Exs. A & B.)  Additionally, Laguna's JFA was attached as an exhibit to Plaintiffs' motion for class certification.  (*See* Doc. No. 75-27, Ex. 2.) Thus, Defendants have produced the arbitration clauses for each named Plaintiff that is currently subject to a motion to compel arbitration.  If Defendants eventually seek to compel

arbitration against the absent class members, at that time they will be required to produce a valid JFA containing an arbitration clause for each franchisee. Until then, there is no basis for the Court to require Defendants to produce the JFAs for absent class members. In fact, Defendants cannot move to compel arbitration against putative class members prior to certification of a class. *See Salah v. Titan* Corp., 353 F.Supp.2d 1087, 1091 (S.D. Cal. 2004); *see also In re TFT-LCD (Flat Panel) Antitrust Litigation*, 2011 WL 1753784, * 4 (N.D. Cal. May 9, 2011). Because no class has been certified, Plaintiffs' request for production of the written arbitration agreements for all putative class members is **DENIED**.

### III. CONCLUSION

Having reviewed the Plaintiffs' motion for leave to serve limited arbitration related discovery, the Court orders the following:

1. Plaintiffs' request for a 30(b)(6) deposition of the Coverall Defendants is **DENIED without prejudice**.
2. Plaintiffs' request for a 30(b)(6) deposition of Allied/Ares is **DENIED without prejudice**.
3. Plaintiffs' request for production of the written arbitration agreements for all putative class members is **DENIED**.

**IT IS SO ORDERED**.

Dated: **July 26, 2011**

**BERNARD G. SKOMAL**
United States Magistrate Judge