```
COOLEY LLP
MICHELLE C. DOOLIN (179445) (doolinmc@cooley.com)
MAZDA K. ANTIA (214963) (mantia@cooley.com)
BENJAMIN F. CHAPMAN (234436) (bchapman@cooley.com)
4401 Eastgate Mall
San Diego, CA  92121
Telephone:    (858) 550-6000
Facsimile:    (858) 550-6420

Attorneys for Defendant
Allied Capital Corporation and Ares Capital Corporation
```

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SABRINA LAGUNA, an individual; CARLOS ACEVEDO, an individual; TERESA SALAS, an individual; and ROES 3 - 50 on behalf of themselves and in a representative capacity for all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COVERALL NORTH AMERICA, INC., a Delaware Corporation; ALLIED CAPITAL CORPORATION, a Maryland Corporation; ARES CAPITAL CORPORATION, a Maryland Corporation; CNA HOLDING CORPORATION, a Delaware Corporation; TED ELLIOT, and individual; and DOES 5 through 50, inclusive,<br><br>Defendants. | Case No.  09-cv-02131-JM-BGS<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS ALLIED CAPITAL CORP.'S AND ARES CAPITAL CORP.'S MOTION TO COMPEL ARBITRATION AND STAY THIS ACTION UNDER THE FEDERAL ARBITRATION ACT AND JOINDER IN DEFENDANT COVERALL NORTH AMERICA, INC.'S REPLY MEMORANDUM**<br><br>Date:          August 8, 2011<br>Time:         10:00 a.m.<br>Courtroom: 16 |

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

REPLY MEMO IN SUPPORT OF ALLIED/ARES'
MOTION TO COMPEL ARBITRATION
09-CV-02131-JM-BGS

## I. INTRODUCTION

Plaintiffs Sabrina Laguna and Teresa Salas do not deny they willingly entered into Janitorial Franchise Agreements ("JFAs"), that the JFAs contain binding arbitration agreements, and that their claims against non-signatories Allied Capital Corporation & Ares Capital Corporation originate from and have their genesis in the JFAs. Plaintiffs also do not dispute that the principles of agency, alter ego, or equitable estoppel – all present herein – allow a non-signatory to compel arbitration with a signatory to an arbitration agreement. Yet, to avoid arbitration, Plaintiffs make the following three arguments: (1) the JFAs do not contemplate arbitration with non-signatories; (2) Allied/Ares must "prove" agency, alter ego, or equitable estoppel before it can compel arbitration; and (3) Allied/Ares waived its right to seek arbitration.[1] But under clearly established law, Plaintiffs' three arguments should be rejected. First, Plaintiffs confuse silence with exclusion; the JFAs do not exclude arbitration with non-signatories. Indeed, it is well established that arbitration is required where a signatory plaintiff alleges agency, alter ego or interdependent conduct between the non-signatory and the other signatory to the contract containing an arbitration agreement. Second, because Plaintiffs allege agency, alter ego and intertwined conduct, Allied/Ares is not required to demonstrate that these (meritless) theories are actually true to compel arbitration. Plaintiffs do not cite a single case in support of this argument. Third, the United States Supreme Court's decision in *AT&T Mobility v. Concepcion*, -- U.S. ---, 131 S.Ct. 1740, (2011), fundamentally changed the law on the enforcement of arbitration agreements prohibiting class-wide arbitration. Thus, as numerous district courts have recently held, Defendants, by waiting to file their motion until after *Concepcion* was issued, did not waive their right to compel arbitration. Accordingly, arbitration should be ordered as to Plaintiffs Laguna and Salas and the case should be stayed pending the resolution of the arbitrations.

## II. PLAINTIFFS' ALTER EGO, AGENCY, AND INTERDEPENDENT CONDUCT ALLEGATIONS REQUIRE THEM TO ARBITRATE THEIR CLAIMS AGAINST ALLIED/ARES

Plaintiffs do not contest that courts – including this Court - have consistently recognized that a non-signatory can compel arbitration where the signatory alleges claims of alter ego,

---

[1] Allied/Ares hereby join in Defendant Coverall North America, Inc.'s Reply briefing (Dkt 222).

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

1

REPLY MEMO IN SUPPORT OF ALLIED/ARES'
MOTION TO COMPEL ARBITRATION
09-CV-02131-JM-BGS

agency or interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract containing an arbitration agreement. *Valueselling Assocs., LLC v. Temple*, No. 09-CV-1493-JM, 2009 WL 3736264 (S.D. Cal. Nov. 5, 2009) (Miller, J.); (Ares' Motion, Dkt. No. 207-1 at 8:2-9:2.) Plaintiffs do not cite any law to the contrary. Instead, Plaintiffs argue Allied/Ares' Motion should be denied because: (1) the JFAs "limit" participants to franchisees, Coverall, and Coverall's officers, directors, agents, and/or employees to the <u>exclusion</u> of any non-signatories; and (2) Allied/Ares must provide <u>evidence</u> proving they are the agent or alter ego of Coverall or that they acted in concert with Coverall. (Opp. at pp. 11-16.) Both arguments fail.[2]

First, Plaintiffs do not cite a single case supporting their novel position that the JFA's arbitration provision precludes application of the agency/alter ego or equitable estoppel doctrines, because the arbitration provision did not contemplate arbitration with non-signatories. (Opp. at pp. 11-13.)[3] Rather, the agency, alter ego and equitable estoppel doctrines provide that while a signatory plaintiff may not have consented to arbitration with a non-signatory at the time it executed the contract, a plaintiff's allegations of alter ego, agency or intertwined conduct permit a non-signatory defendant to compel the plaintiff to arbitration. This is because it would be unfair for a plaintiff to enforce a contract's provisions against a non-signatory defendant by alleging alter ego, agency, or interdependent conduct, while simultaneously denying the non-signatory defendant the right to enforce an arbitration provision in the same contract. In other words, a signatory plaintiff must accept the contract's benefits as well as its burdens (i.e. the arbitration provision). *See, e.g., Valueselling*, 2009 WL 3736264, at *6 ("Under this theory [equitable estoppel], a plaintiff cannot invoke an agreement and claim the benefit of its status under it while attempting to escape its consequences."); *Am. Bankers Ins. Group Inc. v. Long*, 453 F.3d 623, 627

---

[2] As detailed in Coverall's reply brief, Plaintiffs agreed that questions regarding the validity of their arbitration agreements would be resolved by the arbitrator. Thus, the Court need only address the arguments made by Plaintiff if it believes it, rather than the arbitrator, should decide these issues.

[3] In fact, the arbitration provision here does <u>not</u> expressly exclude "non-signatories" from arbitration. Rather, as Plaintiffs admit, the JFA's arbitration provision expressly <u>includes</u> agents of Coverall. (Opp. at 11:19.)

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

2

REPLY MEMO IN SUPPORT OF ALLIED/ARES'
MOTION TO COMPEL ARBITRATION
09-CV-02131-JM-BGS

(4th Cir. 2006) ("The legal principle [underlying equitable estoppel] rests on a simple proposition: it is unfair for a party to rely on a contract when it works to its advantage, and repudiate it when it works to its disadvantage.") (quotation omitted); *Washington Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 267-68 (5th Cir. 2004) (holding party cannot "hav[e] it both ways" by "suing based upon one part of a transaction that she says grants her rights while simultaneously attempting to avoid other parts of the same transaction that she views as a burden—namely, the arbitration agreement"). Indeed, the case Plaintiffs rely on acknowledges this principle. *See, e.g., Amisil Holdings, Ltd. v. Clarium Capital Mgmt., LLC*, No. C-06-5255 MJJ (EMC), 2006 WL 3949332, *14 (N.D. Cal. Dec. 21, 2006) ("[Plaintiff] cannot use the Agreement as a sword and at the same time choose to ignore it as a shield.").

Plaintiffs assert alter ego, agency, and joint employer theories of liability against Allied/Ares, and contend that Allied/Ares engaged in a concerted and unified joint scheme with Coverall to defraud Plaintiffs. (4AC ¶¶ 12, 14-20.) In fact, Plaintiffs' claims against Allied/Ares depend entirely on such allegations since Plaintiffs admit they "have no relationship and no contract with [Allied/Ares]." (Opp. at 16:1-2; *see also id.* at 15:16-17 ("[Allied/Ares] had no direct contact with any Franchisees either during the JFA negotiations or thereafter.").)[4] Thus, whether the JFA contemplates arbitration with a non-signatory or whether Plaintiffs lack an arbitration agreement with Allied/Ares is simply irrelevant.

Second, Plaintiffs' creative theory that Allied/Ares must "prove" Plaintiffs' own allegations of agency, alter ego, and interdependent conduct in order to compel arbitration lacks any legal support. (Opp. at pp. 12-15.) Instead, courts have consistently recognized that the agency, alter ego and equitable estoppel doctrines permit Allied/Ares to invoke the arbitration provision without admitting or proving that Plaintiffs' allegations of agency, alter ego, or concerted conduct are true. *See, e.g., Valueselling Assocs.*, 2009 WL 3736264, at *6 ("Plaintiffs aver in the complaint that ESG is both the agent and alter ego of Temple.... Thus, the only way ESG could be liable is as a result of actions by Temple. Therefore, ESG can compel arbitration.")

---

[4] Plaintiffs' admission that Allied/Ares had no contact with them or any Franchisees demonstrates that their claims against Allied/Ares are meritless.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

3

REPLY MEMO IN SUPPORT OF ALLIED/ARES'
MOTION TO COMPEL ARBITRATION
09-CV-02131-JM-BGS

(emphasis added); *see also id.* at *3 ("[I]n determining whether a claim falls within the scope of an arbitration provision, a court will examine the factual <u>allegations</u> of a complaint."); *Long*, 453 F.3d at 628 ("[E]stoppel is appropriate if in substance [the signatory's] complaint [is] based on the [non-signatory's] alleged breach of the obligations and duties assigned to it in the agreement."); *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000) ("[A]pplication of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract."); *Brown v. Gen. Steel Domestic Sales, LLC*, CV-08-00779-MMM, 2008 WL 2128057, at *7 (C.D. Cal. May 19, 2008) ("It is appropriate to compel arbitration where claims <u>allege</u> 'substantially interdependent and concerted misconduct' by a signatory and non-signatory.") (emphasis added). Moreover, courts have routinely rejected signatories' attempts to "escape the consequences" of their allegations when opposing a non-signatory's motion to compel arbitration. *See, e.g., Denney v. BDO Seidman, L.L.P.*, 412 F.3d 58, 70 (2d Cir. 2005) ("Having alleged ... that the [signatory and non-signatory] defendants acted in concert to defraud plaintiffs ... plaintiffs cannot now escape the consequences of those allegations by arguing that the [signatory and non-signatory] defendants lack the requisite close relationship."); *Rowe v. Exline*, 153 Cal. App. 4th 1276, 1288 (2007) ("It is [plaintiff] who, by the manner in which he crafted his claims in the litigation, subjected himself to the arbitration of those claims.").[5]

The cases Plaintiffs rely on in support of their argument that Allied/Ares must "prove" Plaintiffs' own allegations of agency or alter ego do not support their position. In *Brown*, the district court – while granting the petition to compel arbitration on the basis of equitable estoppel – rejected the non-signatory defendants' "agency" theory on the basis that the plaintiff's allegations did not clearly state that the non-signatories and signatories were agents of each other.

---

[5] The Federal Arbitration Act does not even permit courts to consider factual issues on deciding a motion to compel arbitration except for those issues relating to the "making and performance of an agreement to arbitrate." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967); *see also Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir. 1999). Whether Allied/Ares acted as an alter ego or agent of Coverall and whether the Defendants acted interdependently in carrying out allegedly unlawful conduct is <u>irrelevant</u> to whether Plaintiffs and Coverall formed an agreement to arbitrate.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

4

REPLY MEMO IN SUPPORT OF ALLIED/ARES'
MOTION TO COMPEL ARBITRATION
09-CV-02131-JM-BGS

2008 WL 2128057, at *7. Here, by contrast, Plaintiffs clearly allege, "At all times mentioned herein, <u>each and every Defendant</u> ... was the agent ... of <u>each and every other Defendant</u>." (4AC ¶14 (emphasis added); *see also id.* at ¶12 ("each Defendant acted in all respects pertinent to this action as the agent of the other Defendant...").) Thus, Plaintiffs clearly allege that the non-signatory (Allied/Ares) and signatory (Coverall) defendants are each other's agents.[6] And, *Dun Shipping, Ltd. v. Amerada Hess Shipping Corp.*, 234 F. Supp. 291 (S.D.N.Y. 2002) is also irrelevant as it does not even involve the doctrines of agency/alter ego. There, a <u>non-signatory</u> plaintiff (Dun Shipping) tried to compel a <u>non-signatory</u> defendant (Hovensa) to arbitration based on an agreement between a signatory non-party (Knock Tankers) and a signatory co-defendant (Hess Shipping). *Id.* at 294-96. Here, by contrast, Allied/Ares is attempting to enforce an arbitration provision contained in the JFA, an agreement Plaintiffs signed and which they concede is enforceable. In contrast to the defendant in *Dun Shipping*, Allied/Ares is a willing non-signatory, seeking to compel signatory Plaintiffs to arbitration based on Plaintiff's own allegations.[7]

Nor do Plaintiffs' cases demonstrate that Allied/Ares is required to provide "evidence" that the equitable estoppel doctrine applies. For example, *Ross v. Am. Express Co.*, 547 F.3d 137 (2d Cir. 2008) is inapposite because that court did not address whether a non-signatory defendant must "prove" interrelated or concerted conduct to compel arbitration. Rather, it held that a non-signatory defendant cannot compel arbitration under equitable estoppel without either (1) a

---

[6] Likewise, the fact that the non-signatories in *Wolf v. Langemeier*, No. 2:09-CV-03086-GEB-EFB, 2010 WL 3341823 (E.D. Cal. Aug. 24, 2010), and *Britton v. Co-Op Banking Corp.*, 4 F.3d 742 (9th Cir. 1993) (Opp. at 13:1-4), <u>chose</u> to present "evidence" of an agency or successor-in-interest relationship in declarations is irrelevant. In *Wolf*, the court reaffirmed that "[n]onsignatory successors and <u>alleged</u> alter egos are entitled to compel arbitration under clauses signed by the corporations whose liabilities they are <u>alleged</u> to have assumed." 2010 WL 3341823, at *4 (quoting *Prograph*, 928 F. Supp. at 991). And in *Britton*, plaintiffs had not specifically alleged that the non-signatory defendant had acted as an agent of the signatory defendants in order to enforce a contract against the non-signatory. 4 F.3d at 747-48.

[7] To the extent Plaintiffs rely on *Dun Shipping* to support their argument that arbitration-related discovery must be permitted, they are wrong as there the court only permitted discovery to determine whether any agreement to arbitrate had been formed between two non-signatories, Dun Shipping and Hovensa. *Id.* at 294-96. It did not permit discovery to determine whether the agency or alter ego doctrines applied, which is the relevant question here.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

5

REPLY MEMO IN SUPPORT OF ALLIED/ARES'
MOTION TO COMPEL ARBITRATION
09-CV-02131-JM-BGS

corporate relationship with a signatory defendant or (2) a contention (from plaintiff) that the non-signatory defendant needed to perform under a contract containing an arbitration provision. *Id.* at 144-45. Based on Plaintiffs' own allegations, both conditions exist here.

### III. DEFENDANTS HAVE NOT WAIVED THEIR RIGHT TO COMPEL ARBITRATION

Plaintiffs argue Allied/Ares waived its right to compel arbitration by waiting until after the United States Supreme Court's decision in Concepcion to file its Motion. (Opp. at pp. 16-19.) Plaintiffs' argument should be rejected. "Waiver of a contractual right to arbitration is not favored. Any examination of whether the right to compel arbitration has been waived must be conducted in light of the strong federal policy favoring enforcement of arbitration agreements." *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986) (citation omitted). Thus, "any party arguing waiver of arbitration bears a heavy burden of proof." *Id.* (quotation marks and citation omitted); *see also AT&T Corp. v. Vision One Sec. Sys.*, 914 F. Supp. 392, 396 (S.D. Cal. 1995) ("Because of the strong federal policy favoring enforcement of arbitration agreements, waiver is disfavored, and the party attempting to prove a waiver bears a 'heavy burden of proof.'") (quoting *Fisher*, 791 F.2d at 694). Plaintiffs, as the party asserting waiver, must satisfy three factors: (1) Allied/Ares had "knowledge of an existing right to compel arbitration"; (2) Allied/Ares "acted inconsistently with that existing right"; and (3) Plaintiffs suffered "prejudice … resulting from such inconsistent acts." *Fisher*, 791 F.2d at 694; *see also United States v. Park Place Assocs.*, 563 F.3d 907, 921 (9th Cir. 2009) (applying three factor *Fisher* test in rejecting waiver claim).[8] Plaintiffs cannot establish any of these factors.

As to the first two *Fisher* factors, the *Fisher* decision itself is directly analogous to this case, and is fatal to plaintiffs' waiver argument. In *Fisher*, the plaintiffs established three accounts with the defendant and each contained an arbitration provision. 791 F.2d at 693. In 1981, the plaintiffs sued for mismanagement of the accounts and for the next three and half years,

---

[8] In *Cox. v. Ocean View Hotel Corp.*, 533 F.3d 1114 (9th Cir. 2008), the Ninth Circuit articulated a similar, six factor test. *Id.* at 1124. A close analysis shows that these six factors substantially overlap with the three factor *Fisher* test. *See, e.g., Rose v. SMS.AC, Inc.*, No. 10CV2163 DMS (AJB), 2011 WL 2292960, at *2 (S.D. Cal. June 8, 2011) (acknowledging district courts "may also consider" the factors set forth in *Cox*, but applying the *Fisher* three factor test).

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

6

REPLY MEMO IN SUPPORT OF ALLIED/ARES'
MOTION TO COMPEL ARBITRATION
09-CV-02131-JM-BGS

both parties "filed pretrial motions and engaged in extensive discovery." *Id.* In 1985, the Supreme Court decided *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985), where it rejected the intertwining doctrine, which held that when it was impossible to separate nonarbitrable and arbitrable claims, a court should deny arbitration in order to preserve its exclusive jurisdiction over federal securities claims. *Fisher*, 791 F.2d at 693. The defendant then filed a motion to compel arbitration, which the district court denied. *Id.* at 693. On appeal, the Ninth Circuit examined whether the defendant's decision not to seek arbitration prior to the decision in *Byrd* constituted wavier. 791 F.2d at 695. Prior to *Byrd*, the Ninth Circuit Court had approved of the intertwining doctrine, as had "a number of federal courts." *Id.* at 694-95. Based on this law, the Ninth Circuit noted that the defendant "properly perceived that it was futile to file a motion to compel arbitration until *Byrd* was decided." *Id.* at 695. Thus, because the arbitration agreement was unenforceable before *Byrd*, the Ninth Circuit held the defendant did not act inconsistently with a known existing right to compel arbitration and had not waived its right to arbitration. *See id.* at 697 ("Until the Supreme Court's decision in *Byrd*, the arbitration agreement in this case was unenforceable. Therefore, the [plaintiffs] have failed to demonstrate that [the defendant] acted inconsistently with a known existing right to compel arbitration.").

This is the exact scenario that exists here. "[U]ntil the Supreme Court announced its decision in *[]. Concepcion* on April 27, 2011, California law made class action bans in arbitration agreements unenforceable." *Quevedo v. Macy's Inc.*, No. CV 09-1522 GAF MANX, 2011 WL 3135052, at *4 (C.D. Cal. June 16, 2011) (granting motion to compel arbitration in wage and hour class action brought post-*Concepcion*, and rejecting plaintiff's waiver argument). Now, post-*Concepcion*, "class action waivers in arbitration agreements are enforceable." *Id.* at *5. Only after *Concepcion* "did it become clear" that Defendants "had the right to enforce its arbitration agreement as written and to defend" Plaintiffs' claims "in arbitration on an individual basis." *Id.*; *see also Bryant v. Serv. Corp. Int'l*, No.08-01190 SI, 2011 WL 2709643, at *4-5 (N.D. Cal. July 12, 2011) (analogizing *Concepcion's* change in law regarding arbitration agreements to *Fisher* and finding no waiver because "[t]he arbitration agreement that plaintiffs are seeking to enforce in this case appears not to permit class action arbitration, and therefore until recently would not

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

7

REPLY MEMO IN SUPPORT OF ALLIED/ARES'
MOTION TO COMPEL ARBITRATION
09-CV-02131-JM-BGS

1  have been enforceable according to its terms"); *In re Cal. Title Ins. Anti-Trust Litig.*, No. 08-
2  01341 JSW, 2011 WL 2566449, at *3 (N.D. Cal. June 27, 2011) (finding no waiver as right to
3  compel arbitration pre-*Concepcion* would have been futile.); *Villegas v. U.S. Bancorp*, No. C 10-
4  1762 RS, 2011 WL 2679610, at *1 (N.D. Cal. June 20, 2011) (same). Thus, Plaintiffs can not
5  satisfy the first two *Fisher* factors.

6  Moreover, since *Concepcion*, numerous district courts have enforced motions to compel
7  arbitration and rejected waiver arguments. *See, e.g., Bryant*, 2011 WL 2709643, at *4-5 (granting
8  plaintiffs' motion to compel arbitration in wage and hour class action brought post-*Concepcion*,
9  and rejecting waiver claim where case had been pending before district court for over three years
10 and plaintiffs' motion for class certification had already been denied); *In re California Title*, 2011
11 WL 2566449, at *2-4 (granting motion to compel arbitration post-*Concepcion*, and rejecting
12 waiver claim despite fact "case has been litigated for some time"); *Villegas*, 2011 WL 2679610,
13 at *1-2 (granting motion to compel arbitration post-*Concepcion*, and rejecting waiver claim
14 despite fact defendant did not move to compel arbitration until thirteen months after complaint
15 was filed); *Quevedo*, 2011 WL 3135052, at *4-7 (granting motion to compel arbitration in wage
16 and hour class action post-*Concepcion*, and rejecting waiver claim despite fact defendant filed a
17 motion to dismiss, which was granted in part, and plaintiff filed two motions for class
18 certification). Notably, Plaintiffs do not cite a single post-*Concepcion* case where a district court
19 has found that a defendant waived its right to enforce an arbitration provision containing a class
20 action waiver.[9]

21 Instead, Plaintiffs contend that under *Discover Bank v. Superior Court*, 36 Cal. 4th 148
22 (2005), arbitration agreements containing class-action waivers were not "conclusively

---

[9] Plaintiffs rely solely on *Hooper v. Advance Am., Cash Advance Ctrs. of Missouri, Inc.*, 589 F.3d 917 (8th Cir. 2009) in support of their claim that a party acts inconsistently with its right to arbitrate when the party litigates the matter before asserting its arbitration right. (Opp. at 16:18-21.) However, the Eight Circuit had no reason to consider, and did not consider, whether a Supreme Court decision gave the defendant an opportunity to enforce an arbitration provision that it previously could not enforce. On substantially similar facts to those here, the district court in *Quevedo* held the defendant did not substantially invoke the litigation machinery by filing a motion to dismiss, which was granted in part, and by successfully defended against two class certification motions before moving to compel. 2011 WL 3135052, at *6. In fact, Ares has not filed an answer to Plaintiffs' complaint given the pending motions to dismiss. Accordingly, *Hooper* does not help plaintiffs.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

8

REPLY MEMO IN SUPPORT OF ALLIED/ARES'
MOTION TO COMPEL ARBITRATION
09-CV-02131-JM-BGS

unenforceable," and, thus, Defendants could have sought arbitration earlier. (Opp. at pp. 17-18.) Plaintiffs reliance on *Discover Bank* is misplaced. As Plaintiffs concede, *Discover Bank* addressed "class wide arbitration in a consumer contract of adhesion." (*Id.* at 17:14-15.) But this case is a wage and hour and breach of contract class action asserting causes of action under California Labor Code §§ 500 et seq. and 1194. Accordingly, *Gentry v. Superior Court*, 42 Cal. 4th 443 (2007), where the California Supreme Court "clarified" its earlier decision in *Discover Bank* (*id.* at 452), and examined the enforceability of class action waivers in wage and hour cases under California Labor Code §§ 500 et seq. and 1194 (*id.* at 453-66), is the relevant authority here, not *Discover Bank*. In *Gentry*, the California Supreme Court specifically ***rejected*** Plaintiffs' argument:

> *Discover Bank* was not intended to suggest that consumer actions involving minuscule amounts of damages were the only actions in which class action waivers would not be enforced.... [The plaintiff] argues persuasively that class action waivers in wage and hour cases and overtime cases would ... undermine the enforcement of the statutory right to overtime pay.

*Id.* at 458. The California Supreme Court emphasized that "the statutory right to receive overtime pay embodied in [Labor Code] section 1194 is unwaivable." *Id.* at 456. Here, Plaintiffs seek to enforce their purported statutory right to overtime pay under this same statute. Thus, "[i]n light of *Gentry*," Defendants "reasonably concluded that it could not enforce the class action waiver in its arbitration agreement." *Quevedo*, 2011 WL 3135052, at *4-5 (rejecting waiver argument and finding that "in light of *Gentry*, a defendant had a good faith basis to believe that it would have been futile to bring a motion to compel arbitration at the outset of an action because the arbitration agreement was not enforceable under California law due to its class action waiver") (quotation marks and citation omitted). Accordingly, Defendants did not waive their right to compel arbitration.

Finally, Plaintiffs have failed to establish the third *Fisher* factor, prejudice to them. Plaintiffs contend they were "forced ... to spend millions of dollars preparing for class certification ... [which] cause [sic] them sever [sic] prejudice." (Opp. at 18:17-21.) But the *Fisher* court rejected this exact argument. *See* 791 F.2d at 697 (finding no prejudice, and

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

9

REPLY MEMO IN SUPPORT OF ALLIED/ARES'
MOTION TO COMPEL ARBITRATION
09-CV-02131-JM-BGS

rejecting argument that defendant's "late assertion of its right to compel arbitration was prejudicial because they expended time, money, and effort on responding to pretrial motions and in preparing for trial and conducted extensive discovery of the arbitrable claims"); *Britton v. Co-op Banking Group*, 916 F.2d 1405, 1413 (9th Cir. 1990) (finding no prejudice based on "time and resources" spent in "discovery activity and motions practice over a period of two years"); *St. Agnes*, 31 Cal. 4th at 1203 ("Because merely participating in litigation, by itself, does not result in a waiver, courts will not find prejudice where the party opposing arbitration shows only that it incurred court costs and legal expenses."). Instead, the Ninth Circuit concluded that the prejudice plaintiffs contend they suffered was a "self-inflicted wound" because the plaintiffs "were parties to an agreement making arbitration of disputes mandatory…. Any extra expense incurred as a result of the [plaintiffs] deliberate choice of an improper forum, in contravention of their contract, cannot be charged to [the defendant]." *Fisher*, 791 F.2d at 698; *see also Quevedo*, 2011 WL 3135052, at *7 ("The legal expenses that [plaintiff] has incurred do not suffice to show prejudice.").[10]  Notably, plaintiffs do not cite a single case in support of their claim of "prejudice." In sum, Plaintiffs have not meet their "heavy burden" to prove that Defendants waived their right to compel arbitration. *Fisher*, 791 F.2d at 694.[11]

Dated: August 1, 2011                           COOLEY LLP

/s/ Mazda K. Antia
Mazda K. Antia (214963)
Attorneys for Defendant Allied Capital
Corporation and Ares Capital Corporation

---

[10] Plaintiffs' contention that Allied/Ares waived its right to compel arbitration by delaying filing its motion after *Concepcion* was issued lacks merit. (Opp. at 1:7-21.) First, Plaintiffs do not cite a single case in support of this argument. Second, in *Quevedo*, the defendants filed their motion to compel on May 25, 2011. *Quevedo*, 2011 WL 3135052, at *1. The district court found that the defendants had "promptly moved" to compel arbitration after *Concepcion*. *Id.* at *5. Here, Defendants filed their motion to compel on June 10 and June 14, respectively (Dkt. Nos. 205 and 207), a time period similar to *Quevedo*, and within 60 days of *Concepcion*'s issuance.

[11] The Court should stay this action pursuant to 9 U.S.C. § 3 as considerations of judicial economy and consistency mandate a stay pending the outcome of the arbitrations. *See Bischoff, v. DirecTV*, 180 F. Supp. 2d 1097, 1114 (C.D. Cal. 2002) (staying action where only some of the plaintiffs signed arbitration agreements and stating "a stay of all issues, and as to all parties, is warranted when questions of fact common to all would be involved in both the litigation and the arbitration").

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

10

REPLY MEMO IN SUPPORT OF ALLIED/ARES'
MOTION TO COMPEL ARBITRATION
09-CV-02131-JM-BGS